UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re Federal National Mortgage Association Securities, Derivative and ERISA Litigation** | MDL NO. 1668 |
| **In re Fannie Mae Securities Litigation** | Consolidated Civil Action No.: 1:04-CV-01639<br><br>Judge Richard J. Leon |

**DEFENDANT LEANNE SPENCER'S SUPPLEMENTAL BRIEF
IN SUPPORT OF HER MOTION TO DISMISS**

MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C. 20006
Tel. (202) 263-3000
Fax (202) 263-3300

*Counsel for Defendant
Leanne G. Spencer*

November 23, 2005

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.      Congress Enacted The PSLRA To Curb Strike Suits And To Protect Against Injury To Reputation ............................................................................... 2

    II.     The Factual Allegations In The Complaint And The OFHEO Report Do Not Permit A Strong Inference Of Scienter .......................................................... 3

            A.      The Complaint Must Be Dismissed Unless It Supports A Strong Inference That Spencer Acted With An Intent To Commit A Fraud ......... 3

            B.      Plaintiffs' Assertion During Oral Argument That Spencer Was A "Co-Author" Of The FAS 133 Policy Is Contradicted By The Complaint And The OFHEO Report .......................................................... 5

            C.      Spencer's Awareness Of "Practical Applications" Of GAAP Cannot Support A Fraud Claim. ............................................................... 7

            D.      The Only Barnes Allegations Relevant To Spencer That Are Pled With Particularity Involve The August 5, 2003 Memorandum ................. 8

            E.      Awareness Of "On-Top Adjustments" Does Not Create A Strong Inference Of Scienter ........................................................................... 9

    III.    Spencer's Position As Controller Does Not Establish Scienter .......................... 10

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542 (8th Cir. 2004) ......................................................2

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d. Cir. 1999) .....................................................10

*In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137 (3d Cir. 2004) ......................................................10

*Beck v. Prupis*, 529 U.S. 494 (2000) ...............................................................................................5

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
    270 F.3d 645 (8th Cir. 2001) .....................................................................................................4

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) .....................................................................4

*In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84
    (D.D.C. 2004) ............................................................................................................................4

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ..........................................................................5

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) ......................................................3

*Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) ..............................................................4

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002) ..................................4

*In re U.S. Office Prods. Sec. Litig.*, 326 F. Supp. 2d 68 (D.D.C. 2004) ..........................2, 6, 10, 11

**Statutes**

15 U.S.C. § 78u-4(b)(2) ...................................................................................................................3

15 U.S.C. § 78u-4(b)(3)(A) ..............................................................................................................3

Fed R. Civ. P. 9(b) ..................................................................................................................3, 4, 10

Fed R. Civ. P. 10(c) .........................................................................................................................5

Fed R. Civ. P. 12(b)(6) .................................................................................................................3, 4

**Congressional Materials**

H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N.
    730 ........................................................................................................................................2, 3

S. Rep. No. 104-98 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679 ............................................2

## INTRODUCTION

The Private Securities Litigation Reform Act ("PSLRA") mandates the dismissal of a complaint that does not plead with particularity facts giving rise to a strong inference of scienter. Taken as a whole, the facts alleged by plaintiffs do not create an inference—never mind a strong inference—that Spencer intended to defraud investors. Therefore, the Complaint in this case must be dismissed. Nothing plaintiffs said in oral argument negates that conclusion. However, this Supplemental Brief authorized by the Court addresses several claims plaintiffs made during oral argument regarding the facts they have actually alleged in their Complaint and the attached OFHEO Report.

Plaintiffs asserted that "we have factual arguments being advanced by the Defendants that are not in the record." Transcript of Motion Hearing Before the Honorable Richard J. Leon on November 9, 2005 ("Transcript") at 120. To the contrary, Spencer's motion is based entirely on factual allegations plaintiffs have placed before the Court. Similarly, plaintiffs claimed that Spencer is asking the Court to "take our word for it." Transcript at 121. Again, that is simply incorrect: Spencer asks the Court to take plaintiffs' words for it. It is plaintiffs' allegation that the Senior Vice President of Financial Standards, and not Spencer, had "responsibility for accounting policy decisions made by Fannie Mae that resulted in the improper application of SFAS 133." OFHEO Report, Complaint Exh. A, at 90. It is plaintiffs' allegation that "the processes as practiced rely heavily on the SVP of Financial Standards and the external auditor to determine compliance with GAAP." *Id.* at 155. Plaintiffs' allegations regarding the Senior Vice President of Financial Standards do not create an inference of fraudulent intent with respect to Spencer, let alone establish a strong inference of scienter. Plaintiffs not only fail to put forth facts showing that Spencer acted with scienter, they repeatedly allege facts that refute an inference that Spencer acted with fraudulent intent.

Rather than allege with particularity facts sufficient to establish a strong inference that Spencer had an intent to defraud investors, plaintiffs argue that the company's failure to follow GAAP and Spencer's title are all that is needed. But the case law is clear that neither satisfies the PSLRA. Consequently, the Complaint must be dismissed.

## ARGUMENT

**I.    Congress Enacted The PSLRA To Curb Strike Suits And To Protect Against Injury To Reputation.**

During oral argument, the Court inquired as to whether the legislative history sheds light on why Congress chose the "particularity" and "strong inference" terminology of the PSLRA. Transcript at 89. "Congress [was] prompted by significant evidence of abuse in private securities lawsuits to enact reforms to protect investors." H.R. Conf. Rep. No. 104-369, at 31 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 730; *see also In re U.S. Office Prods. Sec. Litig.*, 326 F. Supp. 2d 68, 75 (D.D.C. 2004) ("In 1995, Congress enacted the PSLRA to prevent abusive and meritless lawsuits.") (quotation marks omitted); *In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 547 (8th Cir. 2004) ("Congress adopted these special pleading standards in the Reform Act to curb abusive securities fraud litigation."). The "abusive practices" Congress designed the PSLRA to remedy "include[d]: (1) the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer," and "(2) the targeting of deep pocket defendants, including accountants, underwriters, and individuals who may be covered by insurance, without regard to their actual culpability." H.R. Conf. Rep. No. 104-369, at 31 (1995), *as reprinted in* 1995 U.S.C.C.A.N. at 730; *see also* S. Rep. No. 104-98, at 4 (1995), 1995 U.S.C.C.A.N. 679, 683 ("The Committee heard substantial testimony that today certain lawyers file frivolous 'strike' suits alleging violations of the Federal securities laws in the hope that defendants will quickly

2

settle to avoid the expense of litigation."). Congress appreciated that meritless strike suits were bad for everybody—the companies, the investors, and the courts. *See* H.R. Conf. Rep. No. 104-369, at 32, 1995 U.S.C.C.A.N. at 731 ("Investors always are the ultimate losers when extortionate 'settlements' are extracted from issuers.").

In particular, Congress aimed to protect individuals from unnecessarily suffering the severe implications of being accused of fraud in the public forum of the federal courts. "Naming a party in a civil suit for fraud is a serious matter. Unwarranted fraud claims can lead to serious injury to reputation for which our legal system effectively offers no redress." H.R. Conf. Rep. No. 104-369 at 41, 1995 U.S.C.C.A.N. at 740. Finding that Rule 9(b)'s requirement of pleading with particularity "has not prevented abuse of the securities law by private litigants," Congress enacted the PSLRA and its strong inference requirement to raise the pleading standards. *See id*. The PSLRA and its strong inference requirement were expressly intended by Congress to halt abusive securities litigation and to protect injury to reputation.

## II.     The Factual Allegations In The Complaint And The OFHEO Report Do Not Permit A Strong Inference Of Scienter.

### A.     The Complaint Must Be Dismissed Unless It Supports A Strong Inference That Spencer Acted With An Intent To Commit A Fraud.

The PSLRA mandates the dismissal of any securities fraud complaint that does not, for "each act or omission alleged," state "with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. §§ 78u-4(b)(2), 78u-4(b)(3)(A). Plaintiffs maintain that the "vast majority of the courts in the circuits all say the traditional rule 12(b)(6) analysis does not change." Transcript at 24. However, the opposite is the case. While the circuits use different articulations, the consensus is that the PSLRA significantly altered the Rule 12(b)(6) analysis.

The Sixth Circuit has straightforwardly held that the "strong inference requirement means that plaintiffs are entitled only to the most plausible of competing inferences." *PR Diamonds,*

3

*Inc. v. Chandler*, 364 F.3d 671, 682 (6th Cir. 2004) (quotation marks omitted). The Third Circuit explained that "unless plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the Reform Act, they may not benefit from inferences flowing from vague or unspecific allegations—inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002). The Eighth Circuit has summarized the juxtaposition by stating that "[w]hile under Rule 12(b)(6) all inferences must be drawn in plaintiffs' favor, [under the PSLRA] inferences of scienter do not survive if they are merely reasonable ⋯ Rather, inferences of scienter survive a motion to dismiss only if they are both reasonable and 'strong' inferences." *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001) (quotation marks omitted). The Ninth Circuit has made clear that under the PSLRA, courts consider "*all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (emphasis in original). The Tenth Circuit has reasoned that a plaintiff's suggested inferences must be evaluated "in the context of other reasonable inferences that may be drawn." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1188 (10th Cir. 2003).

  As the Court noted in oral argument, the D.C. Circuit has not yet addressed the issue. Transcript at 18. However, District Court opinions in this jurisdiction have recognized that the PSLRA "alters the normal operation of inferences under Fed. R. Civ. P. 12(b)(6)." *In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84, 89 (D.D.C. 2004) (quotation marks omitted). That is the only conclusion consistent with the Congressional intent to prevent strike suits and to protect the reputations of individuals, as well as the "longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that

4

statute meaningless or superfluous." *Beck v. Prupis*, 529 U.S. 494, 506 (2000); *see also Gompper*, 298 F.3d at 897 ("Because we believe Congress made it crystal clear that the PSLRA's pleading requirements were put in place so that only complaints with particularized facts giving rise to a strong inference of wrongdoing survive a motion to dismiss, we agree with the district court that when determining whether plaintiffs have shown a strong inference of scienter, the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.") (emphasis in original).

Plaintiffs cannot avoid the factual allegations in their Complaint and the attached OFHEO Report. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." FED R. CIV. P. 10(c). Plaintiffs agreed in oral argument that the OFHEO Report was part of their Complaint. *See* Transcript at 116-17("[I]s the 2004 OFHEO report part of our complaint? Absolutely, yes it is."). Not only must the facts in the OFHEO Report be taken as true, specific factual allegations in the OFHEO Report negate other conclusory assertions by plaintiffs. The Court should not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

### B. Plaintiffs' Assertion During Oral Argument That Spencer Was A "Co-Author" Of The FAS 133 Policy Is Contradicted By The Complaint And The OFHEO Report.

Plaintiffs stated during oral argument that "[o]ne of the things that we know is that Ms. Spencer, along with Mr. Howard, were the coauthors of the company's policy statement with regard to FAS-133." Transcript at 121. But that is contrary to what plaintiffs pled; indeed, it is specifically contradicted by the factual allegations of the Complaint and the OFHEO Report, which create an inference that Spencer did not intend to defraud investors.

5

The OFHEO Report is not ambiguous as to its conclusion regarding the identity of the "author" of Fannie Mae's FAS 133 policy; it repeats on multiple occasions that the company's policy was developed by the Financial Standards group, and particularly the group's head: (1) "Jonathan Boyles, Senior Vice President - Financial Standards & Corporate Tax, is the head of accounting policy formulation at Fannie Mae, and had primary responsibility for the DAG's[1] development." OFHEO Report, Complaint Exh. A, at 85; (2) "Accounting policy decisions are determined almost unilaterally by Jonathan Boyles and members of his Financial Standards team." *Id*. at 90; (3) "Based on information and testimony OFHEO has obtained, it appears that Jonathan Boyles has responsibility for accounting policy decisions made by Fannie Mae that resulted in the improper application of SFAS 133." *Id*.; and (4) "Testimony from various members of the Controller's organization and the Controller indicated that questions relating to the accounting for derivatives could only be answered by the Senior Vice President of the Financial Standards Group." *Id.* at 88. These are the facts plaintiffs have alleged; they cannot withdraw or change them in oral argument. The Complaint simply does not allege that Spencer authored the FAS 133 policy, and the OFHEO Report expressly contradicts such a notion. The facts plaintiffs have pled with respect to the development of the company's FAS 133 policy do not give rise to a strong inference of that Spencer had an intent to defraud investors.[2]

---

[1] DAG stands for the Derivatives Accounting Guidelines, which contained the company's accounting policies with respect to derivatives and FAS 133.

[2] In any event, authoring a policy that is later determined to be a misapplication of GAAP does not demonstrate fraudulent intent. *See U.S. Office Prods.*, 326 F. Supp. 2d at 77 ("mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter") (quotation marks omitted).

6

### C. Spencer's Awareness Of "Practical Applications" Of GAAP Cannot Support A Fraud Claim.

In a vain attempt to find some indicia of fraud in the nearly five hundred pages of the Complaint and its attachments, plaintiffs refer to Spencer's awareness of "practical applications" of GAAP and direct the Court's attention to page 85 of the OFHEO Report and its footnotes. *See* Transcript at 120-21. That section of the OFHEO Report demonstrates nothing close to fraudulent intent on Spencer's part. The OFHEO Report alleges that Spencer knew that employees of the company were working with its external auditors to apply a highly complex accounting standard to Fannie Mae's daily operations and periodically conducting "back-testing" to make sure the accounting was correct:

> In the interview, Ms. Spencer made reference to a "practical application" of GAAP: Q. Did KPMG ever request that you perform some ongoing measurement in order to determine whether a materiality threshold had been exceeded? A. We have had had [sic], over the course of time, we have had had [sic] situations where we've looked at GAAP, we've said, how do you take this technical literature and how do you apply it to how Fannie Mae's business runs, and made a judgment, not Fannie Mae making a lone judgment, but in working with our external auditors and their concurrence that what I recall my words are practical application, how you take a technical piece of literature, and you try to overlay it into how a company does business and that we have periodically have several areas where you do back-testing.

OFHEO Report, Complaint Exh. A, at 85 n.227. Such allegations of transparency and back-testing cannot support a strong inference of fraudulent intent; to the contrary, they are the antithesis of facts that suggest scienter.

The OFHEO Report also indicates that another member of Fannie Mae management described these practical applications as "known departures from GAAP." *Id.* at 85. However, the OFHEO Report nowhere alleges that this term was used by Spencer or to Spencer. *See id.* Moreover, the full description in the OFHEO Report shows complete transparency to the company's auditors:

7

> In the interview, Mr. Boyles stated, "We have several known departures from GAAP in our adoption of FAS 133. We have cleared those with our auditors. We have reported to our auditors on an annual basis the effect of those. And they were comfortable when we adopted them, and they were comfortable over the last several years when we reported the results of that work."

*Id.* at 85 n.226. Again, regardless of the terminology used by members of management other than Spencer, this is precisely the opposite of allegations sufficient to support a fraud claim.

### D. The Only Barnes Allegations Relevant To Spencer That Are Pled With Particularity Involve The August 5, 2003 Memorandum.

In oral argument, plaintiffs asserted that "[y]ou also have [Spencer] being the direct recipient of all those complaint[s] by Barnes." Transcript at 123. However, the only facts regarding Barnes and Spencer that are pled with particularity in the Complaint relate to August 5, 2003, when Barnes distributed to Spencer and others materials reflecting concerns about certain aspects of Fannie Mae's FAS 91 accounting. Barnes's submission resulted in investigations by internal and external experts, and a meeting on August 8, 2003, at which the attendees included the Vice President of Financial Standards, KPMG's enagement partner, the Office of Auditing, and the Office of Corporate Compliance; the investigations concluded that there were no GAAP violations. *See* Complaint ¶ 12; OFHEO Report, Complaint Exh. A, at 73-75. The fact that OFHEO later determined that the investigation reached an incorrect conclusion does nothing to change the fact that the most plausible inference from this set of facts is that Spencer believed any concerns to have been addressed and the accounting to be in accordance with GAAP.[3]

---

[3] The Complaint's other allegations with respect to Barnes almost uniformaly involve his communications with Fannie Mae personnel other than Spencer, which cannot raise a strong inference that Spencer possessed the requisite fraudulent intent. *See e.g.*, Complaint ¶ 121 ("Barnes said that in a meeting he told Juliane, and Janet Pennewell…"); Complaint ¶ 122 ("When Barnes continued to raise concerns about the legitimacy of the AIMS system, Pennwell, Juliane and Mary Lewers (director of Financial Accounting at Fannie Mae) told Barnes…"); Complaint ¶ 123 (Barnes "participated in a meeting with Ms. Lewers, Richard Stawarz, Director of Financial Reporting, and Mr. Juliane, to discuss…"); Complaint ¶ 124 ("Barnes complained to
(cont'd)

8

### E.     Awareness Of "On-Top Adjustments" Does Not Create A Strong Inference Of Scienter.

Plaintiffs relied on the existence of "on-top adjustments" when pressed by the Court for "other indicia" of fraud by Spencer. Transcript at 122-23; *see also id.* at 125. Plaintiffs thereby attempted to exploit the complexity of the accounting issues by introducing a new definition for an accounting term of art. Plaintiffs stated during oral argument that an "on-top adjustment, in accounting lingo, means we can just change the numbers to get the desired result we want." Transcript at 122.[4]

However, plaintiffs are bound to the definitions in their Complaint. According to the OFHEO Report, "'[o]n-top adjustments' represent adjustments made directly to the general ledger during the financial statements close process." OFHEO Report, Complaint Exh. A, at 9 n.18. Nothing in the OFHEO Report implies that an "on-top adjustment" is necessarily fraudulent. Moreover, plaintiffs must explain why particular "adjustments made directly to the general ledger during the financial statements close process," demonstrate a strong inference of fraud. *See* OFHEO Report, Complaint Exh. A, at 9 n.18. Indeed, they must do more: they must allege that Spencer knowingly participated in improper adjustments to the general ledger during the putative class period such that there is a strong inference that she intended to defraud

---

(… cont'd)

Lewers that…"); Complaint ¶ 125 ("Barnes questioned Stawarz about…"); Complaint ¶ 127 ("Barnes told Stawarz…"); Complaint ¶ 128 ("Barnes complained to Lewers…"); Complaint ¶ 129 ("Barnes reported his concerns to Lewers…"); Complaint ¶ 130 ("[Barnes] then raised further concerns to Lewers…").

[4] *See also id.* at 125 ("An on-top adjustment means you are changing the numbers to get the result you want."); *id.* at 62-63 ("Our complaint says on-top entries means they do a pro forma estimation of how the prior period looked and then they put numbers on top to meet the expectations of the street").

9

investors. The terminology is complex and arcane, but that in no way releases plaintiffs from their burden of alleging improper intent.

### III.     Spencer's Position As Controller Does Not Establish Scienter.

Plaintiffs claimed during oral argument that Spencer's position as Controller was sufficient to establish scienter. *See* Transcript at 119. However, that type of "fraud by title" claim has been routinely rejected. *See*, *e.g.*, *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 149-50 (3d Cir. 2004).

In *Alpharma*, the Third Circuit found that "at bottom, plaintiffs' allegations rest primarily upon the premise that the individual defendants are liable simply by virtue of the positions they hold within the company." *Id.* at 149. The court "rejected [these] allegations," "holding that generalized imputations of knowledge do not satisfy the scienter requirement regardless of the defendants' positions within the company." *Id.* at 149 (quotation marks omitted). Indeed, "allegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d. Cir. 1999) (quotation marks omitted); *see also id.* ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.").

Plaintiffs cannot meet the requirements of the PSLRA by arguing that accounting policy was Spencer's "responsibility" and that the company erred in applying GAAP. As discussed above, and as agreed upon in oral argument, misapplications of GAAP do not constitute fraud. *See* Transcript at 29 ("THE COURT: It is not your position that a failure to comply with GAAP is per se an inference of an intent to defraud the market?" MR. BLOCK: No."); *U.S. Office Prods.*, 326 F. Supp. 2d at 77 ("mere publication of inaccurate accounting figures or failure to

10

follow GAAP, without more, does not establish scienter") (quotation marks omitted). Accounting errors can and often do result from mistake. Understanding the severity of fraud charges, Congress placed a high burden on plaintiffs in securities fraud claims: they must plead with particularity facts giving rise to a strong inference of the intent to defraud. Allegations that mistakes occurred are not enough. "Courts have uniformly rejected this pleading of 'fraud by hindsight.'" *Id.* at 79. Plaintiffs here have not met the PSLRA's demanding standard.

## CONCLUSION

Spencer respectfully submits that the literal weight of the 254 page Complaint and the 210 page OFHEO Report in no way changes that the high burden set by the PSLRA has not been met. For the foregoing reasons, Leanne Spencer respectfully requests that plaintiffs' claims against her be dismissed.

Dated: November 23, 2005                    Respectfully submitted,

                                            By:   /s/ Mark W. Ryan
                                                  David S. Krakoff (D.C. Bar No. 229641)
                                                  Mark W. Ryan (D.C. Bar No. 359098)
                                                  Christopher F. Regan (D.C. Bar No. 433972)
                                                  Eldad Z. Malamuth (D.C. Bar No. 479457)
                                                  MAYER, BROWN, ROWE & MAW LLP
                                                  1909 K Street, N.W.
                                                  Washington, D.C. 20006
                                                  Tel. (202) 263-3000
                                                  Fax (202) 263-3300

                                                  *Counsel for Defendant*
                                                  *Leanne G. Spencer*

## CERTIFICATE OF SERVICE

I certify that on November 23, 2005, I electronically filed the foregoing Defendant Leanne Spencer's Supplemental Brief in Support of Her Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.

    /s/ Eldad Z. Malamuth
    Eldad Z. Malamuth