UNITED STATES DISTRICT COURT
DISTRICT OF DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1688 |

| | |
|---|---|
| In Re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639<br><br>Judge Richard J. Leon |

**DEFENDANT FANNIE MAE'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    THE LEGISLATIVE HISTORY OF THE REFORM ACT SHOWS CONGRESS INTENDED TO TREAT SECURITIES CASES DIFFERENTLY FROM OTHER FEDERAL CASES ..........................................3

II.    THE COMPLAINT DOES NOT SATISFY THE HEIGHTENED STANDARDS OF THE REFORM ACT ............................................................6

    A.    The Court Must Consider All Reasonable Inferences – Even Those Unfavorable to Plaintiffs – When  Determining Whether Plaintiffs Have Satisfied Their "Strong Inference" Pleading Burden.......................6

    B.    Plaintiffs Have Failed To Plead Specific Facts Sufficient To Support A Strong Inference Of Intent to Deceive Under Any Of The Available Standards ..............................................................................8

    C.    The Transparency Of Fannie Mae's Implementation And Application Of FAS 133 To Its Auditors And OFHEO Is Inconsistent With A Strong Inference Of Fraud As A Matter Of Law ............................................................................................................9

    D.    Plaintiffs' Three "Facts" Are Insufficient To Support A Strong Inference Of Scienter ..............................................................13

III.    THE RECORD BEFORE THE COURT ON THIS MOTION IS APPROPRIATE AND CUSTOMARY............................................................20

    A.    Plaintiffs' Challenge To Fannie Mae's Request For Judicial Notice Is Baseless.....................................................................................20

    B.    Plaintiffs Have Had Access To The OFHEO Report, A Benefit Other Securities Plaintiffs Do Not Enjoy .................................................22

CONCLUSION....................................................................................................................23

## TABLE OF AUTHORITIES

Page

**Cases**

*Alexis v. D.C.*,
44 F.Supp. 2d 331 (D.D.C. 1999) ........................................................................7

*Associated Builders, Inc. v. Alabama Power Co.*,
505 F.2d 97 (5th Cir. 1974) ..............................................................................11

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) .......................................................................8, 22

*Cameron v. Seitz*,
38 F.3d 264 (6th Cir.1994) ................................................................................6

*City of Philadelphia v. Fleming Cos.*,
264 F.3d 1245 (10th Cir. 2001) .......................................................................8, 14

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) ..............................................................................21

*Conley v. Gibson*,
355 U.S. 41 (1957) ...........................................................................................7

*Dryden v. Sun Life Assurance Co.*,
737 F. Supp. 1058 (S.D. Ind. 1989) ..................................................................11

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. The Clorox Co.*,
353 F.3d  1125 (9th Cir. 2004) ...........................................................................7

*Ferris, Baker Watts, Inc. v. Ernst & Young LLP*,
395 F.3d 851 (8th Cir. 2005) .............................................................................14

*Fidel v. Farley*,
392 F.3d 220 (6th Cir. 2004) .............................................................................15

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
270 F.3d 645 (8th Cir. 2001) ...........................................................................7, 8

*Gant v. Wallingford Bd. of Educ.*,
69 F.3d 669 (2d Cir. 1995) ................................................................................11

*Golaris v. Jewel Tea Co.*,
22 F.R.D. 16 (N.D. Ill. 1958) .............................................................................21

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ..............................................................................7

*Greebel v. FTP Software, Inc.*,
194 F.3d 185 (1st Cir. 1999) ...............................................................................8

*Guar. Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*,
305 F. Supp. 2d 846 (N.D. Ill. 2004) .................................................................20

*Hamilton v. Scott*,
762 F. Supp. 794 (N.D. Ill. 1991), *aff'd*, 976 F.2d 341 (7th Cir. 1992) .....................11

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) ...........................................................................6, 8

*IDT Corp. v. eGlobe Inc.*,
140 F. Supp. 2d 30 (D.D.C. 2001) .......................................................................3

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) ................................................................................8

*In re AMDOCS Ltd. Sec. Litig.*,
390 F.3d 542 (8th Cir. 2004) ..............................................................................7

# TABLE OF AUTHORITIES
## (CONT'D)

Page

*In re Comshare Inc. Sec. Litig.*,
   183 F.3d 542 (6th Cir. 1999) ...................................................................................8

*In re Cree, Inc. Sec. Litig.*,
   333 F. Supp. 2d 461 n. 6 (M.D.N.C. 2004) ...........................................................22

*In re Humphrey Hospitality Trust, Inc. Sec. Litig.*,
   219 F. Supp. 2d 675 n.5 (D. Md. 2002)................................................................22

*In re IKON Office Solutions, Inc. Sec. Litig.*,
   277 F.3d 658 (3d Cir. 2002) ..................................................................................14

*In re John Alden Fin. Corp. Sec. Litig.*,
   249 F. Supp. 2d 1273 (S.D. Fla. 2003) .................................................................10

*In re Navarre Corp. Sec. Litig.*,
   299 F.3d 735 (8th Cir. 2002).................................................................................14

*In re Rockefeller Ctr. Props. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ....................................................................................6

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001) ....................................................................................18

*In re Silicon Graphics, Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)...........................................................................8, 22

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 n.4 (9th Cir. 1996) ..........................................................................21

*In re U.S. Office Prods. Sec. Litig.*,
   326 F.Supp. 2d 68 (D.D.C. 2004) ...........................................................................7

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996)....................................................................................21

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) ..............................................................................20

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ....................................................................................9

*Kowal v. MCI Comms. Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) .................................................................................7

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) ..................................................................................21

*Lipton v. MCI Worldcom, Inc.*,
   135 F. Supp. 2d 182 (D.D.C. 2001) ......................................................................21

*Macharia v. U.S.*,
   334 F.3d 61 (D.C. Cir. 2003) ..................................................................................7

*Mathews v. Centex Telemgmt., Inc.*,
   No. C-92-1837-CAL, 1994 WL 269734 (N.D. Cal., June 8, 1994) ..................10, 11

*Miller v. Champion Enters, Inc.*,
   346 F.3d 660 (6th Cir. 2003) ...................................................................................7

*Morse v. McWhorter*,
   200 F.Supp. 2d 853 (M.D. Tenn. 1998)................................................................10

*Nathenson v. Zonagen, Inc.*
   267 F.3d 400 (5th Cir. 2001) ...................................................................................8

# TABLE OF AUTHORITIES
## (CONT'D)

Page

*Novak v. Kasaks,*
   216 F.3d 300 (2d Cir. 2000) ..................................................................................8
*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
   998 F.2d 1192 (3d Cir. 1993) ...............................................................................21
*Pirraglia v. Novell, Inc.,*
   339 F.3d 1182 (10th Cir. 2003) ..............................................................................7
*Rehm v. Eagle Fin. Corp.,*
   954 F. Supp. 1246 ................................................................................................15
*Robinson v. Mammoth Life & Accident Ins. Co.,*
   454 F.2d 698 (7th Cir. 1972) ...............................................................................21
*Ronconi v. Larkin,*
   253 F.3d 423 (9th Cir. 2001) ..............................................................................3, 5
*Rosenblum v. Travelbyus.com Ltd.,*
   299 F.3d 657 (7th Cir. 2002) ...............................................................................20
*Savage v. Scales,*
   310 F. Supp. 2d 122 n.8 (D.D.C. 2004) ...............................................................21
*SEC v. Caserta,*
   75 F. Supp. 2d 79 (E.D.N.Y. 1999) .....................................................................10
*SEC v. DCI Telecomms., Inc.,*
   122 F. Supp. 2d 495 n.2 (S.D.N.Y. 2000) ...........................................................10
*Shalala v. Guernsey Mem'l Hosp.,*
   514 U.S. 87 (1995)................................................................................................14
*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) ...............................................................................21
*Stavroff v. Meyo,*
   No. 95-4118, 1997 U.S. App. LEXIS 32774 (6th Cir. Nov. 12, 1997).................10
*Stover v. I2 Techs.,*
   No. 3:02-CV-2202-R, 2003 U.S. Dist. LEXIS 12126 (N.D. Tex., July 14, 2003)....11
*Thor Power Tool Co. v. Comm'r,*
   439 U.S. 522 (1979)..............................................................................................14
*United States ex rel. New v. Rumsfeld,*
   350 F.Supp. 2d 80 (D.D.C. 2004) ..........................................................................7
*Veney v. T.V. Wyche,*
   293 F.3d 726 (4th Cir. 2002) ...............................................................................21
*Warren v. D.C.,*
   353 F.3d 36 (D.C. Cir. 2004) .................................................................................7
*Yoder v. Orthomolecular Nutrition Inst., Inc.,*
   751 F.2d 555 (2d Cir. 1985) ..................................................................................7

**Statutes**
12 U.S.C. § 1719(e) ................................................................................................12
15 U.S.C. § 78u-4(a)(3) ............................................................................................4
15 U.S.C. § 78u-4(b)(1) .......................................................................................4, 20
15 U.S.C. § 78u-4(b)(2) .......................................................................................4, 20
15 U.S.C. § 78u-4(b)(3)(B) ......................................................................................4
15 U.S.C. §77p(b)-(c) ..............................................................................................5

**TABLE OF AUTHORITIES**
**(CONT'D)**

**Page**

28 U.S.C. 1658(b), as amended by Pub. L. No. 107-204, § 804 .....................................................5

**Other**

*Joint Explanatory Statement of the Committee of Conference,* H.R. Rep. No. 104-369, 104th
    Cong., 1st Sess. 31, at 41 (1995) .....................................................................................4

*Report of the Committee on Banking, Housing, and Urban Affairs, United States Senate,* S. Rep.
    No. 104-98, 104th Cong., 1st Sess. 31  at 8 (1995)........................................................3

During oral argument, Plaintiffs' counsel summed up the patent inadequacy of the Consolidated Securities Complaint when he implicitly acknowledged that Plaintiffs have no specific facts or proof of any securities fraud. (Tr. 24:25-25:1.) In light of Plaintiffs' inability to plead specific facts – as required by the Private Securities Litigation Reform Act ("Reform Act") – counsel was left to argue that they "do[] not have to plead facts – [don't] have to plead evidence or proof," (*id.*), and that Plaintiffs are entitled to have all inferences drawn in their favor. (Tr. 212:13-14.) Plaintiffs are simply wrong as a matter of law on both counts.

Cases governed by the Reform Act are different from other federal court civil litigation, where notice pleading under the Federal Rules of Civil Procedure suffices. The Reform Act expressly requires proof in the form of specific facts to withstand a motion to dismiss and places the burden squarely on the plaintiffs to "state with particularity facts giving rise to strong inference of [scienter]" – altering the traditional Rule 12(b)(6) approach for testing the sufficiency of the complaint. Indeed, the cases interpreting the Reform Act have required that *all* reasonable inferences be drawn from the allegations, including inferences unfavorable to the plaintiffs. When these heightened pleading requirements are applied to the allegations in the Consolidated Complaint, it becomes clear that it should be dismissed.

This Court repeatedly identified the defect in the Consolidated Complaint during the hearing: Fannie Mae's FAS 133 accounting treatment was fully disclosed and transparent to both Fannie Mae's outside auditor, KPMG, and its federal regulator, OFHEO. The answer to the Court's question whether Fannie Mae's misapplication of generally accepted accounting principles (GAAP) could support a strong inference of fraud where the particular accounting treatment was fully disclosed and completely transparent is that it cannot support the requisite strong inference. (Tr. 65:20-66:14, 95:16-96:14, 126:2-20.)

Here, the nature of Fannie Mae's accounting error, combined with the total transparency of its accounting to its auditors and federal regulator, are similarly inconsistent with a strong

inference of fraud.  There are no allegations in the Complaint that Fannie Mae manufactured earnings or falsified numbers.  Plaintiffs have not alleged that Fannie Mae intentionally used its FAS 133 accounting to manipulate its earnings or to meet earnings targets quarter over quarter, or year over year.  Not surprisingly, Plaintiffs cannot point to a single case where a court has held such facts sufficient to support a claim for securities fraud.  Such undisputed transparency to auditors and regulators is inconsistent with an intent to commit fraud.

After three and a half hours of oral argument, hundreds of pages of legal briefs and exhibits including SEC filings, OFHEO reports and analyst reports, all that Plaintiffs can point to are three "facts" pled in the Complaint: (1) Fannie Mae's restatement of its earnings; (2) an incomplete quote, taken out of context, from Jonathan Boyles' August 3, 2004, interview with OFHEO; and (3) "concerns" raised by Roger Barnes that have nothing to do with Fannie Mae's implementation of FAS 133.  None of these facts, alone or together, are sufficient to support a claim for securities fraud.

No doubt recognizing the fatal flaws in their Complaint, Plaintiffs' counsel repeatedly argued that Fannie Mae has impermissibly gone beyond the "four corners" of their Complaint by introducing facts that they argue are inappropriate for consideration on a motion to dismiss, and that Plaintiffs' lack of discovery prevents them from satisfying their pleading burden.  Both of these arguments are simply inapplicable to securities cases where courts routinely permit consideration of judicially noticeable facts that provide context or even contradict the allegations of a securities complaint.  Far from being improper, it is entirely acceptable and quite common for courts to consider precisely the SEC filings and other documents Plaintiffs specifically reference and thus incorporate into their Complaint.  Nor can Plaintiffs cannot be heard to complain about their lack of discovery – the statutory discovery stay applies to all securities plaintiffs, and there is no reason to treat these Plaintiffs any different from any other securities plaintiff.  Indeed, with the nearly 200-page OFHEO Report, Plaintiffs have a significant

advantage not enjoyed by other plaintiffs, yet still fail to plead facts sufficient to establish a strong inference of scienter.

I.     THE LEGISLATIVE HISTORY OF THE REFORM ACT SHOWS CONGRESS INTENDED TO TREAT SECURITIES CASES DIFFERENTLY FROM OTHER FEDERAL CASES

As the Court is now well aware, Plaintiffs' Section 10(b), Rule 10b-5 and Section 20(a) claims are governed by the Reform Act. Congress enacted the Reform Act in 1995 specifically to curb the proliferation of securities class action lawsuits, many of which were brought solely because of a stock drop and supported only by insufficient allegations of fraud by hindsight. *See IDT Corp. v. eGlobe Inc.*, 140 F. Supp. 2d 30, 33 (D.D.C. 2001). When considering the legislative reform, the Senate noted that "[a] complaint alleging violations of the Federal securities laws is easy to craft and can be filed with little or no due diligence." *See Report of the Committee on Banking, Housing, and Urban Affairs, United States Senate,* S. Rep. No. 104-98, 104th Cong., 1st Sess. 31 at 8 (1995). The less stringent pleading requirements of Federal Rules of Civil Procedure 8 and 9(b) often resulted in the filing of class actions that lacked merit but nevertheless put companies in the untenable situation of having to decide between paying millions of dollars to defend the case and still risking liability or paying significant sums to settle the litigation. As the Court of Appeals observed in *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001):

> [Securities P]laintiffs can … be undeserving, and lawsuits can extort a great deal of undeserved settlement money if the courts do not filter out the unfounded ones early enough to avoid huge litigation expenses. Juries can make mistakes, especially in matters of great complexity where the trials are lengthy. If a defendant is entirely innocent of wrongdoing, yet faces a 10% chance of a $100 million dollar jury error, the rational course, if the case cannot be kept from a jury, may be to pay $10 million undeserved dollars. That just wastes capital and unfairly transfers money from those who have earned it to those who have not.

*Id.* at 428.

In addition to the burden that securities litigation placed on corporations, the rapid filing of questionable cases often had a equally damaging effect on individuals.  As Congress observed:

> Naming a party in a civil suit for fraud is a serious matter. Unwarranted fraud claims can lead to serious injury to reputation for which our legal system effectively offers no redress.  For this reason, among others, Rule 9(b) of the Federal Rules of Civil Procedure requires that plaintiffs plead allegations of fraud with "particularity."  The Rule has not prevented abuse of the securities laws by private litigants.  Moreover, the courts of appeals have interpreted Rule 9(b)'s standards in conflicting ways, creating distinctly different standards among the circuits.  The House and Senate hearings on securities litigation reform included testimony on the need to establish *uniform and more stringent pleading requirements to curtail the filing of meritless lawsuits.*

*See Joint Explanatory Statement of the Committee of Conference,* H.R. Rep. No. 104-369, 104th Cong., 1st Sess. 31, at 41 (1995) (Conf. Rep.). (footnote omitted) (emphasis added).

To that end, the Reform Act subjects securities complaints to a significantly heightened pleading standard which requires that a "complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1) (emphasis added).  More importantly for present purposes, the Reform Act also requires that any securities complaint:

> state with particularity *facts* giving rise to a *strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (emphasis added).

Congress provided additional safeguards such as an automatic stay of all discovery during the pendency of any motion to dismiss to ensure that securities plaintiffs had real facts before they raced into court crying fraud.  *See* 15 U.S.C. § 78u-4(b)(3)(B).  Congress also adopted new procedures for appointing a Lead Plaintiff so that the prosecution of securities cases were no longer driven by lawyers but rather by clients.  *See* 15 U.S.C. § 78u-4(a)(3).  When these protections drove many securities plaintiffs to avoid federal court by filing in state courts,

Congress acted again and enacted the Securities Litigation Uniform Standards Act of 1998, which mandated that all covered securities class actions filed in state court shall be removable to federal court and promptly dismissed. *See* 15 U.S.C. §77p(b)-(c).

In the Sarbanes-Oxley Act of 2002, Congress extended the statute of limitations for claims arising under Sections 10(b) and 20(a) (those pleaded here) to two years from notice of the violation and in no event later than five years (replacing the prior judicially created one year/three year limitations period). *See* 28 U.S.C. 1658(b), as amended by Pub. L. No. 107-204, § 804. As the Court observed at the hearing, this limitations period is "reflective of [Congress'] thinking with regard to providing enough time, in its judgment, ... for the parties to be in a position to either have or not have the particularity that Congress wanted to raise a strong inference." (Tr. 108:11-14.) This longer limitations period provides securities plaintiffs with more than ample time to investigate and gather facts before filing a complaint.

By imposing rigorous new requirements and mandating dismissal of any complaint that fails to meet those standards, Congress radically altered the landscape of securities class action complaints, requiring plaintiffs to come forward with detailed facts and not conclusions and conjecture. *See Ronconi,* 253 F.3d at 437. The heightened pleading requirements of the Private Securities Litigation Reform Act are an unusual deviation from the usually lenient requirements of federal rules pleading. In few other areas are motions to dismiss for failure to state a claim upon which relief can be granted so powerful. The various requirements are not satisfied merely by making a complaint long.

II.   **THE COMPLAINT DOES NOT SATISFY THE HEIGHTENED STANDARDS OF THE REFORM ACT.**

A.   The Court Must Consider All Reasonable Inferences – Even Those Unfavorable to Plaintiffs – When Determining Whether Plaintiffs Have Satisfied Their "Strong Inference" Pleading Burden

The majority of circuit courts that have considered the "strong inference" requirement have concluded that the Reform Act's heightened pleading requirements also alter the traditional Rule 12(b)(6) approach under which plaintiffs were given the benefit of all inferences from a well-pleaded complaint. Plaintiffs, apparently disregarding the overwhelming authority on this point, contended:

> What the courts say with regard to inferences – the vast majority of the courts in the circuits all say the traditional rule 12(b)(6) analysis does not change. All inferences are drawn in favor of the Plaintiffs.

(Tr. 24:20-23.)

Plaintiffs' position ignores the express positions of the Third,[1] Sixth,[2] Eighth,[3] Ninth[4] and

---

[1] *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002) (Plaintiffs "may not benefit from inferences flowing from vague or unspecific allegations – inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis.")

[2] *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001) ("The 'strong inference' requirement means that plaintiffs are entitled only to the most plausible of competing inferences."). Plaintiffs' counsel claims that the cited language was "dicta" because the Sixth Circuit reversed the district court's grant of defendant's motion to dismiss. (Tr. 72:11-17.) Counsel's position is baseless. In discussing the appropriate *de novo* standard of review the Sixth Circuit stated:

> "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences. *See* BLACK'S LAW DICTIONARY 1423 (6th ed.1990) (defining "strong" as "cogent, powerful, forcible, forceful"). This represents a significant strengthening of the pre-PSLRA standard under Rule 12(b)(6), which gave the plaintiff "the benefit of all reasonable inferences," *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir.1994) (emphasis added), and contemplated dismissal "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bloch*, 156 F.3d at 677 (emphasis added) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Tenth[5] Circuits.  The Reform Act now requires the court on a motion to dismiss a securities complaint to consider "*all* reasonable inferences to be drawn from the allegations, including inferences *unfavorable* to the plaintiffs."  *Gompper*, 298 F.3d at 897 (second emphasis added); *accord Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund*, 353 F.3d at 1125. Thus, where the allegations could equally and plausibly support an inference of no fraud, plaintiffs have not met the pleading burden.  298 F.3d at 896-897.  It is not sufficient for plaintiffs to plead a reasonable inference of fraud; plaintiffs must plead facts giving rise to a strong inference of fraud after all reasonable inferences have been drawn from the facts alleged, incorporated by reference, or considered by the Court on judicial notice.[6]  *Id.*  Plaintiffs have not satisfied this standard, and therefore their Complaint must be dismissed.

---

*Helwig*, 251 F.3d at 553.  This is hardly dicta.  The mere fact that the court reversed the district court's grant of defendant's motion to dismiss after applying this standard does not make this standard any less valid.

 The Sixth Circuit applied this standard again in *Miller v. Champion Enters, Inc.*, 346 F.3d 660, 689 (6th Cir. 2003).  In *Miller*, the court affirmed the district's court's dismissal after finding two "fairly plausible" inferences capable of being drawn.  In light of these equally plausible inferences the court found the plaintiffs had not satisfied their burden.  *See id.*

 [3]  *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001) ("Congress has effectively mandated a special standard for measuring whether allegations of scienter survive a motion to dismiss.  While under Rule 12(b)(6) all inferences mu st be drawn in plaintiffs' favor, inferences of scienter do not survive if they are merely reasonable….  Rather, inferences of scienter survive a motion to dismiss only if they are both reasonable and 'strong' inferences") (citation and quotation omitted); *see also In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 547 (8th Cir. 2004) ("The Reform Act modifies the standard 12(b)(6) analysis . . . even though the plaintiff is entitled to all reasonable inferences, the Reform Act requires a securities fraud claim to plead allegations that collectively add up to a strong inference of scienter.") (citation omitted).

 [4]  *Gompper v. VISX, Inc.,* 298 F.3d 893, 897 (9th Cir. 2002); accord *Employers Teamsters* Local Nos. 175 & 505 Pension Trust Fund v. The Clorox Co., 353 F.3d 1125, 1134 (9th Cir. 2004).

 [5]  *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003) (plaintiff's suggested inferences must be evaluated "in the context of other reasonable inferences that may be drawn.")

 [6]  The cases upon which Plaintiffs rely, by contrast, are simply inapposite.  Three of the cases are pre-Reform Act cases, which obviously are of no help in determining the standard for pleading a strong inference of scienter.  *See Conley v. Gibson*, 355 U.S. 41 (1957); *Kowal v. MCI Comms. Corp.*, 16 F.3d 1271 (D.C. Cir. 1994); *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555 (2d Cir. 1985).  Four of Plaintiffs' later cases were not Reform Act cases and are equally unavailing.  *See Warren v. D.C.*, 353 F.3d 36 (D.C. Cir. 2004); *United States ex rel. New v. Rumsfeld*, 350 F.Supp. 2d 80 (D.D.C. 2004); *Macharia v. U.S.*, 334 F.3d 61, 64 (D.C. Cir. 2003); *Alexis v. D.C.*, 44 F.Supp. 2d 331 (D.D.C. 1999).  The one D.C. District Court case they cite, *In re U.S. Office Prods. Sec. Litig.*, 326 F.Supp. 2d 68, 75 (D.D.C. 2004), gave no consideration to the Reform Act's heightened pleading requirements, relied upon pre-Reform Act authority, and in any event dismissed the complaint for failing to meet any applicable pleading standard.

B.    Plaintiffs Have Failed To Plead Specific Facts Sufficient To Support A Strong
Inference Of Intent to Deceive Under Any Of The Available Standards

As the Court noted during oral argument, the District of Columbia Circuit has yet to

address precisely what a plaintiff must allege to plead a strong inference of scienter.  (Tr. 18:8-

9.)  Although some of the Circuits have approached this issue differently, every Circuit that has

confronted the issue agrees that plaintiffs must plead specific facts supporting a strong inference

of "deliberate" or "conscious misconduct" or "severe recklessness."[7]  The only point of dispute

is whether allegations of "motive and opportunity," alone, are sufficient to support a strong

inference of scienter.[8]

Plaintiffs have repeatedly requested that the Court employ the more liberal minority

approach and hold that scienter can be established through specific facts that demonstrate the

defendant had both the motive and the opportunity to commit securities fraud.  (Opp'n Br. at 14;

Tr. 23:7-8, 71:3-75:8.)  Even if the Court were to adopt the standard advanced by Plaintiffs, their

allegations of "motive and opportunity" are precisely the sort of generalized motives that courts

---

[7]  *See Nathenson v. Zonagen, Inc.* 267 F.3d 400, 408-12 (5th Cir. 2001) (adopting "severe recklessness" standard); *City of Philadelphia v. Fleming Cos.,* 264 F.3d 1245, 1261 (10th Cir. 2001); *Helwig, Inc.,* 251 F.3d at 550-51 (required state of mind is recklessness, defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care") (citation and quotation omitted); *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 197, 199-200 (1st Cir. 1999); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271 (11th Cir. 1999) (plaintiff must state with particularity facts leading to a strong inference of "severe recklessness"); *In re Silicon Graphics, Sec. Litig.,* 183 F.3d 970, 974 (9th Cir. 1999); *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 550-51 (6th Cir. 1999).

[8]  Most Circuits hold that allegations of "motive and opportunity" standing alone cannot support a strong inference of scienter.  *See Nathenson,* 267 F.3d at 409-12 (adopting "severe recklessness" standard, and concluding that while "allegations of motive and opportunity may meaningfully enhance the strength of . . . scienter, . . . it would seem to be a rare set of circumstances indeed where those allegations alone are both sufficiently persuasive to give rise to a scienter inference of the necessary strength and yet at the same time there is no basis for further allegations also supportive of that inference."); *City of Philadelphia v. Fleming Cos.,* 264 F.3d 1245, 1261 (10th Cir. 2001)); *Helwig, Inc.,* 251 F.3d at 550-51 (required state of mind is recklessness, defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care") (citation and quotation omitted); *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 197, 199-200 (1st Cir. 1999); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271 (11th Cir. 1999) (plaintiff must state with particularity facts leading to a strong inference of "severe recklessness" and, as such, allegations of motive and opportunity, without more, while highly relevant, are insufficient to allege a "strong inference" of scienter); *In re Silicon Graphics, Sec. Litig.,* 183 F.3d 970, 974 (9th Cir. 1999); *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 550-51 (6th Cir. 1999).

The Second, Third, and Eighth Circuits, however, have concluded that scienter is adequately pled by allegations of either motive and opportunity, or evidence of reckless or conscious behavior sufficient to raise a strong inference of scienter.  *Novak v. Kasaks,* 216 F.3d 300 (2d Cir. 2000); *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 531 (3d Cir. 1999); *Fla. State Bd. of Admin.,* 270 F.3d at 660.

in those circuits have found to be insufficient as a matter of law. *See, e.g., Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud.") (emphasis added); *Novak*, 216 F.3d at 307-08 (Motives such as the desire: (1) for the corporation to appear profitable; (2) to keep stock prices high to increase officer compensation; (3) to maintain a high corporate credit rating; and (4) to complete successfully a transaction or financing, are insufficient to create a strong inference of scienter.). Thus, regardless which standard this Court applies, it is now quite clear that this Complaint does not satisfy any pleading standard.

C.    The Transparency Of Fannie Mae's Implementation And Application Of FAS 133 To Its Auditors And OFHEO Is Inconsistent With A Strong Inference Of Fraud As A Matter Of Law

During oral argument the Court repeatedly posed two related questions to counsel for both sides. First, the Court asked whether this is a case where "the data is being falsified or is it that the data … is being used in an accounting way, in an analytical way, for accounting purposes that is novel, not standard practice." (Tr. 64:11-25, *see also* Tr. 34:7-35:2, 65:20-66:8.) Second, the Court asked whether a misapplication of GAAP can support a strong inference of scienter where the application was "totally transparent" to its auditor and federal regulator, OFHEO. (Tr. 65:20-66:14, 95:16-96:14, 126:2-20.)

To answer Court's first question, there can be no serious dispute that this case is about Fannie Mae's *accounting policies*, not about any falsification of data or numbers. There simply are no allegations in the Complaint that Fannie Mae manufactured earnings or falsified numbers. There are no allegations in the OFHEO Report to that end. Plaintiffs have not alleged that Fannie Mae intentionally used its FAS 133 accounting to manipulate its earnings or to meet earnings targets quarter over quarter, or year over year – FAS 133 simply does not lend itself to such manipulation. The sole issue is whether the *accounting policies* that Fannie Mae adopted

9

with respect to FAS 133 complied with GAAP.  Importantly, these are policies that were

developed in conjunction with Fannie Mae's auditor and approved by OFHEO.

Recognizing that it is Fannie Mae's accounting policies that are at issue – not the

underlying data – the Court asked several of the counsel, in sum or substance, a second related

question.  Can Fannie Mae's restatement support a securities fraud claim:

> Even if it's transparent?  Even if OFHEO, whose job it is to
> monitor, even if an outside accounting firm, like a KPMG, is in
> there looking at those books, even if that's going on, it still can be
> an inference of fraud even though it's totally transparent?

(Tr. 96:7-11.)  The short answer is it cannot.  Two cases, *In re John Alden Fin. Corp. Sec. Litig.*,

249 F. Supp. 2d 1273 (S.D. Fla. 2003) and *Mathews v. Centex Telemgmt., Inc.*, No. C-92-1837-

CAL, 1994 WL 269734 (N.D. Cal., June 8, 1994), squarely address the precise question raised

by the Court.[9]

In *John Alden*, plaintiffs alleged that the defendant, a medical insurance company, set a

fraudulent year-end medical claims reserve in order to inflate its 1994 earnings.  249 F. Supp. 2d

at 1275.  The court granted summary judgment for the defendant, observing that: (1) defendant's

methodology for calculating its 1994 Reserve was reviewed in great detail by its outside auditor,

Price Waterhouse; (2) Price Waterhouse was given access to all relevant information; and (3)

Price Waterhouse prepared a detailed report assessing the "'reasonableness and appropriateness

of the methodologies, underlying assumptions and resulting amounts'" of the 1994 Reserve.  *See*

*id.* at 1279.  The court held that the undisputed involvement of defendant's outside auditor,

combined with no allegations or evidence that anything was withheld from those auditors, was

inconsistent with scienter as a matter of law.  *See id.*

---

[9] *See also Morse v. McWhorter*, 200 F.Supp. 2d 853, 899 (M.D. Tenn. 1998) ("Reliance on the guidance of outside auditors is inconsistent with the intent to defraud.") (quoting *Stavroff v. Meyo*, No. 95-4118, 1997 U.S. App. LEXIS 32774, at *19 (6th Cir. Nov. 12, 1997)); *see also SEC v. DCI Telecomms., Inc.*, 122 F. Supp. 2d 495, 500 n.2 (S.D.N.Y. 2000); *SEC v. Caserta*, 75 F. Supp. 2d 79, 94 (E.D.N.Y. 1999).

Similarly, in *Mathews v. Centex Telemgmt., Inc.*, No. C-92-1837-CAL, 1994 WL 269734 (N.D. Cal., June 8, 1994), plaintiffs alleged that the defendant did not record adequate reserves for its bad debts during the third and fourth quarters of 1991, which allegedly had the effect of inflating the company's net income. *See id.* at *1-2. The court, however, held that because the company's outside auditor, KPMG, audited the company's bad debt reserve and concluded it the reserves were adequate, plaintiffs had failed to establish a strong inference of scienter. *See id.* at *7.[10]

In both cases, as here, the issue was the formulation of the accounting policies applied, not falsification or manufacturing of numbers. In both instances full disclosure was made to the outside auditors. There was no evidence that anything was withheld from the auditors. In both cases, the auditors were in a position to review the accounting techniques being used and determine whether the accounting practices were unusual or inappropriate. Not surprisingly, Plaintiffs have failed to cite a single case, and Fannie Mae is aware of none, that would affirm a claim of securities fraud on similar facts.

Fannie Mae's transparency, however, went beyond the defendants' accounting transparency in *John Alden* and *Mathews*. Not only was Fannie Mae completely transparent to

---

[10] Although both of these cases involved the grant of motions for summary judgment rather than dismissal at the pleading stage, they are extremely analogous given the extensive factual record available to the Plaintiffs in the form of the 2004 OFHEO Report, which Plaintiffs have incorporated into the Consolidated Complaint by attaching it thereto. The OFHEO Report clearly details KPMG's extensive involvement in virtually every aspect of Fannie Mae's implementation of FAS 133. By incorporating the OFHEO Report, Plaintiffs have either pled facts that are insufficient to support a strong inference as a matter of law or have pled facts that establish Fannie Mae's affirmative defense of reliance on experts. Irrespective of which the Court determines, dismissal is appropriate. *See Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("On a motion to dismiss, the well pleaded allegations of fact are taken as true.... Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes of Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as matter of law, dismissal is appropriate.") (citations omitted); *see also Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995); *Hamilton v. Scott*, 762 F. Supp. 794; 799 (N.D. Ill. 1991), *aff'd*, 976 F.2d 341 (7th Cir. 1992); *Stover v. I2 Techs.*, No. 3:02-CV-2202-R, 2003 U.S. Dist. LEXIS 12126 (N.D. Tex., July 14, 2003); *Dryden v. Sun Life Assurance Co.*, 737 F. Supp. 1058, 1067 (S.D. Ind. 1989).

its outside auditor, but it also was regulated by a federal agency who had full and unfettered

access at all times.  Plaintiffs' counsel, however, contended during oral argument:

> It clearly wasn't transparent in 2001, 2002 and 2003.  It became
> transparent in 2004, and I think you've got to look at them
> cumulatively in an effort to try and apply the standard of 12(b)(6)
> because we are not talking about OFHEO – it wasn't something
> that occurred in '04 and, therefore, was transparent in '04.  They
> are going back three-plus years.  So in 2001, it's manipulated so
> that KPMG can't see it; it is not transparent.  OFHEO can't see it.
> 2002 they can't see it.

(Tr. 73:21-74:5.)  Counsel's claims are contrived.  There is simply not a single allegation

anywhere in the Complaint to support this assertion.  Nor does OFHEO anywhere in its nearly

200-page report in 2004 contend that Fannie Mae withheld any information from them at any

time.  Certainly, if OFHEO believed that Fannie Mae had been anything less than open and

candid it would have said so in its report.  Counsel's statement is nothing less than empty

rhetoric fabricated to respond to the patent transparency of Fannie Mae's accounting policies to

its auditor and OFHEO.

Just as the transparency of Fannie Mae's accounting policy to KPMG and OFHEO is

inconsistent with a strong inference of scienter, so too is the fact that in 2002, Fannie Mae

voluntarily withdrew its statutory exemption from the reporting requirements of the securities

laws.  12 U.S.C. § 1719(e).  Fannie Mae's first SEC reporting was on March 31, 2003, when it

filed its Annual Report on SEC Form 10-K.  Plaintiffs claim that throughout the entire putative

class period – April 17, 2001 through September 21, 2004 – Fannie Mae was engaged in a

massive, on-going accounting fraud.  By voluntarily registering with the SEC, Fannie Mae

knowingly subjected its financial statements to significantly increased scrutiny.  It simply defies

logic to suggest that Fannie Mae would invite such SEC scrutiny in the middle of an alleged

fraud.  The transparency of Fannie Mae's accounting to its auditors and OFHEO, combined with

its willingness to invite SEC oversight, cannot support an inference of intent to defraud, let alone the strong inference required by the Reform Act.

     D.    <u>Plaintiffs' Three "Facts" Are Insufficient To Support A Strong Inference Of Scienter</u>

At the hearing, the Court gave the Plaintiffs numerous opportunities to identify specific facts supporting a strong inference of scienter. Nevertheless, all that Plaintiffs could muster were three innocuous facts. First, Plaintiffs claim that the size and nature of Fannie Mae's restatement is sufficient to show fraudulent intent. Second, Plaintiffs cite an incomplete quote, taken out of context, from Jonathan Boyles' August 3, 2004, interview with OFHEO. Finally, Plaintiffs point to "concerns" raised by Roger Barnes that have nothing to do with Fannie Mae's implementation of FAS 133.[11] None of these facts, alone or together, are sufficient to support a strong inference of scienter.

     1.    <u>A Misapplication of GAAP, By Itself, Is Not Sufficient To Support A Securities Fraud Claim</u>

Plaintiffs' primary argument against dismissal is that the magnitude alone of Fannie Mae's accounting errors provide the required evidence of fraudulent intent. (Tr. 23:2-6 ("It is, by all current reports, a restatement of $12 billion of earnings…. This isn't just a small little isolated oops, we got it wrong.").) But the size of an accounting error says nothing about whether the misapplication of GAAP was fraudulent. Presumably for this reason, plaintiffs have not cited a single case that stands for the proposition that the magnitude and duration of an accounting error, standing alone, is sufficient to meet the Reform Act's scienter requirement.

---

[11]  Plaintiffs also suggest that a supplemental agreement that Fannie Mae entered into with OFHEO somehow supports a strong inference of scienter. (Tr. 23:21-24.) Under the terms of the agreement, Fannie Mae merely agreed that it would develop written policies and procedures for journal entries, including a prohibition on employees falsification of signatures. *See* March 7, 2005 Supplement to September 27, 2004 Agreement Between OFHEO and Fannie Mae at II.A. (attached as Ex. A to Pls.' Opp'n Br.). The agreement, however, specifically denied that any such conduct had ever occurred in the past, and Plaintiffs do not allege that it did. *See id.* at III.2.(b). Moreover, there is no suggestion that the prohibition in any way related to the Company's adoption or implementation of FAS 133.

Generally accepted accounting principles are just that: principles, not ironclad, precise mandates, and, thus, "tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management." *See Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 544 (1979). As the Supreme Court further noted,

> GAAP is not the lucid or encyclopedic set of pre-existing rules that [it might be perceived] to be. Far from a single-source accounting rulebook, GAAP encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time. GAAP changes and, even at any one point, is often indeterminate. The determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles.[12]

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995) (citation and quotations omitted);[13]

*see also In re IKON Office Solutions, Inc. Sec. Litig.*, 277 F.3d 658, 675 (3d Cir. 2002).

Given that "[f]inancial accounting is not a science… and is a 'process [that] involves continuous judgments and estimates,'" *Guernsey*, 514 U.S. at 100 (citation omitted), errors in accounting will only support a securities fraud claim when accompanied by evidence of fraudulent intent. *See, e.g.*, *Ferris, Baker Watts, Inc. v. Ernst & Young LLP*, 395 F.3d 851, 855 (8th Cir. 2005) ("'Allegations of GAAP violations are insufficient, standing alone, to raise an inference of scienter. Only where these allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient.'") (quoting *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 745 (8th Cir. 2002)); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001) ("Only where such allegations [of GAAP violations of accounting irregularities] are coupled with evidence that the violations or irregularities were the result of the defendant's

---

[12] In fact, the Supreme Court noted that there are "19 different GAAP sources" and conflicts often arise among those sources. *Guernsey*, 514 U.S. at 101.

[13] In *Guernsey*, the Supreme Court was specifically confronted with some of the more basic principles contained in GAAP relating to revenue recognition and cost reimbursement. *See* 514 U.S. at 104. One can only imagine how the Court would view FAS 133, which, as we demonstrated is nearly 900 pages long, has spawned more than 30 restatements, and is widely viewed as the most complex accounting pronouncement ever enacted.

fraudulent intent to mislead investors may they be sufficient to state a claim."). As the Sixth Circuit explained, "[a]llowing an inference of scienter based on the magnitude of fraud 'would eviscerate the principle that accounting errors alone cannot justify a finding of scienter.'" *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) (citation omitted).

The size and nature of Fannie Mae restatement is probative of several things, but not fraud. First, the nature of the misapplication of GAAP is indicative of the fact that FAS 133 is extraordinarily complex. Many sophisticated financial institutions have experienced similar issues with its implementation. Second, the nature of Fannie Mae's restatement is also due to the fact that the Company had a comprehensive set of policies that were consistently applied to every hedge in Fannie Mae's derivative portfolio over a four-year period. When the SEC determined that those *policies* did not comply with GAAP, Fannie Mae had to restate every single one of these hedging relationships for the entire period. The size of the restatement is simply due to the fact that Fannie Mae had thousands of these hedging relationships, hedging billions of dollars in liabilities in conjunction with the Company's $2.25 trillion dollar mortgage portfolio business.[14]

At the November 9, 2005 hearing, Plaintiffs failed to point to any facts that support a strong inference of scienter as to Fannie Mae's implementation of FAS 133. Plaintiffs never disputed the key facts surrounding Fannie Mae's implementation of FAS 133, including independent review and approval by KPMG and OFHEO. Nor did they dispute the fact that

---

[14] The rationale underlying the cases that Plaintiffs rely upon is inapposite here. Those cases hold that the size of a restatement may be probative of scienter because it is less plausible for defendants to plead ignorance of the underlying transactions or accounting decisions when they have a substantial impact on the company's financial statements. *See, e.g., Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1256 ("[T]he magnitude of reporting errors may lend weight to allegations of recklessness where defendants were in a position to detect the errors."). The issue here is not whether the defendants were aware of Fannie Mae's FAS 133 accounting, but rather whether they made an honest mistake. There is no dispute that Fannie Mae was well aware of the manner in which it implemented FAS 133. There is also no dispute that both KMPG and OFHEO were aware of Fannie Mae's implementation of FAS 133.

Fannie Mae reported core business earnings to provide the public, and particularly financial analysts who covered Fannie Mae, with additional disclosures measure of the Company's financial condition that eliminated the volatility associated with certain hedges. These undisputed facts are wholly inconsistent with any inference of scienter.

> ### 2.    Jonathan Boyles' Quote Upon Which Plaintiffs Rely Does Not Support A Strong Inference Of Scienter

Plaintiffs also claimed at oral argument that a quote from Jonathan Boyles' August 3, 2004, interview with OFHEO supported a strong inference of scienter. (Tr. 28:13-15, 92:5-8, 120:12-121:10.) In particular, Plaintiffs repeatedly cited Mr. Boyles' statement that Fannie Mae had "known departures from GAAP." (Tr. 28:13-15, 92:5-8, 120:12-121:10.) Plaintiffs' reliance on this quote – which they have taken out of context – demonstrates the extent to which they will stretch to argue an inference of scienter.

First, far from the headline that Plaintiffs make of this quote, it does not appear until page 85 of the OFHEO Report, followed by the explanatory statement that "other members of Fannie Mae management refer to these matters as 'practical applications' of GAAP." (2004 OFHEO Report at 85.) Thus, even OFHEO treated Mr. Boyles' statement as synonymous with adoption of practical applications to implement FAS 133 for purposes of its 2004 Report, a far cry from evidencing an intent to commit fraud.

When Mr. Boyles' comment is viewed in its full context it becomes even less supportive of an inference of fraud. The full text of the exchange that Plaintiffs excerpt was as follows:

> Q: With respect to the overall approach and the concept of assuming no ineffectiveness do you believe that there are situations in which Fannie Mae is applying that when it's not consistent with the guidance in FAS 133?
>
> A: We have several known departures from GAAP in our adoption of FAS 133. We have cleared those with our auditors. We have reported to our auditors on an annual basis the effect of those. And they were comfortable when we adopted them, and

they were comfortable last several years when we reported the
results of that work.

Q:  What were the reasons for you not applying GAAP in its strict
conformity?

….

A: The purpose there was really twofold: one, we felt like in the
case of the duration shortcut, we felt – if you think about duration,
duration is a sensitivity of an instrument's – of the instrument to
interest rates.  And so, you know, FAS 133 built in the concept of a
shortcut so you can match notionals and match maturities and
repricing dates and assume no ineffectiveness when really a better
economic hedge would be to match duration, not notionals.  If
somebody on the business side wanted to eliminate interest rate
risk, they wouldn't necessarily match up notional or maturity.
They would match up durations. . . .  When we developed the
duration shortcut, we felt like it was in the spirit of 133 while not
exactly the letter, and so we built that into our adoption of 133
because we felt like that was within the tenets of 133 of a match,
and then on an annual basis, we would report back to our auditors
and the management what the effect … would have been on
earnings.

(2004 OFHEO Report, Complaint Ex. A, at 150.)

        Mr. Boyles' full answer shows that virtually every detail of Fannie Mae's implementation

of FAS 133 was vetted and approved by its outside auditors.  These purported "departures"

involved discrete issues within the broader context of FAS 133 and represented attempts to

implement an extremely detailed and complex accounting pronouncement in a pragmatic

fashion.  It is also clear from Mr. Boyles' full quote that these departures were not perceived to

have a material impact on the Company's implementation of FAS 133 given that Fannie Mae

would "on an annual basis … report back to [its] auditors … what the effect … would have been

on earnings" and KPMG continued to approve the accounting treatment.  (*See id.*)  To the extent

Fannie Mae did not follow "exactly" in strict conformity with the letter of FAS 133, it did so

believing that "it was in the spirit of 133" and would better reflect the economic reality of the

transaction.  Far from supporting a strong inference of scienter, Mr. Boyles' remarks represent a

candid assessment of how Fannie Mae sought to implement a difficult accounting pronouncement with the assistance of its outside auditors.

3.  <u>Plaintiffs' Allegations Concerning Roger Barnes Have Nothing To Do With Fannie Mae's Implementation of FAS 133</u>

Plaintiffs also relied heavily on alleged accounting issues raised by an employee named Roger Barnes.  (Tr. 60:4-61:1; 62:2-63:10; 65:1-15, 68:19-69:19, 97:5-12.)  Counsel for Messrs. Raines and Howard will respond specifically to Mr. Barnes' allegations and the investigation of his concerns.  It is important, however, to note that by Plaintiffs' counsel's own admission, these allegations have nothing to do with Fannie Mae's implementation of FAS 133.  (Tr. 62:19-63:21 ("It is not – that's not FASBE [sic] 133.  It is not whether they are running their hedges correctly on their derivative accounts.").)  Mr. Barnes' allegations related solely to Fannie Mae's accounting for amortization of mortgage premiums and discounts under FAS 91.  There is no serious dispute that the specific FAS 91 allegations in the Complaint relate to events in 1998 and are time-barred.  In addition, Plaintiffs have failed to allege any post-1998 material misstatement related to FAS 91.[15]  (Opening Br. at 34-35; Reply Br. at 19-20.)

Realizing that their "facts" concerning Roger Barnes were insufficient to support a strong inference, Plaintiffs were left with no choice but to concoct facts and use hypotheticals.  For instance, at one point during the oral argument the Court asked: "When Barnes did his memo that's been talked a lot about here, was that a memo that OFHEO was aware of at the time that he issued it, or was that something that was really kept in-house . . .?"  (Tr. at 104:12-17.)

---

[15]  When given the opportunity to articulate how Fannie Mae's misapplication of FAS 91 resulted in any actionable misstatement or omission during the class period, Plaintiffs' counsel could not.  Instead, Plaintiffs appear to contend that the FAS 91 allegations are relevant to establishing scienter with respect to the Company's misapplication of FAS 133.  (Tr. 33:5-7 ("Those facts are relevant and can be considered as part of the scienter mix.  That's exactly what the Second Circuit said in *Scholastic*.").)

Nothing in the Second Circuit's decision in *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001), however, permits a court to use allegations concerning one accounting judgment as scienter with regard to a completely unrelated accounting principle.  *Scholastic* merely held that a court may consider pre and post-class period facts in determining whether statements made during the class period were materially false or misleading.  *See id.* at 72.

Plaintiffs' counsel abruptly responded by contending that "It was kept in-house, your Honor."

(Tr. 104:17.)  Counsel's response is a fabrication.  As the 2004 OFHEO Report makes clear:

> *Prior to the commencement of our examination*, the Enterprise
> informed us that Mr. Barnes, a former manager in the Controller's
> Department, had raised his concerns about several matters
> including the modeling of amortization factors, significant control
> deficiencies in the modeling systems, segregation of duties issues
> as well as other matters.

(2004 OFHEO Report at 73.) (emphasis added)  Fannie Mae fully disclosed Mr. Barnes concerns

to OFHEO before their examination.  It was not "kept in-house."  Consistent with its handling of

FAS 133 accounting Fannie Mae was fully transparent about the issue with OFHEO.

At another point in the hearing, the Court asked Plaintiffs' counsel whether Mr. Barnes

ever alleged that data being received by the company was being falsified.  (Tr. at 64:2-5.)

Counsel responded with a *hypothetical*:

> I think – in terms of the sufficiency of the complaint, your Honor, I
> think what the Barnes memo says and the allegations of the
> complaint are that they are really two aspects to what you have
> asked.  One is – and I will give you a *hypothetical* example, and
> this can perhaps answer your question.  If internal accounting
> down below here says, well, today we received $10 billion of fee
> income for managing the portfolio of the mortgages, and if they
> say, but you know what, let's not put it in today.  Okay?  Let's just
> put it away into this miscellaneous balance sheet account – that's
> that last thing – and we will just store it there and we will say,
> when we need it, that it came in to a later period.
>
> …[W]as that data right or wrong?  We are not alleging that, your
> Honor.

(Tr. 65:1-18.) (emphasis added).

These last responses by Plaintiffs' counsel captures the fundamental flaw with the

Plaintiffs' entire case.  Plaintiffs cannot come forward with any *facts* that support a claim of

securities fraud.  The Reform Act requires Plaintiffs to come forward with *specific facts* – not

"facts" they concoct, not speculation in the form of hypotheticals, and not fictional anecdotes

squarely rebutted by documents incorporated by Plaintiffs in their Complaint.  15 U.S.C. § 78u-4(b)(1), (2).  Absent specific facts, this Complaint must be dismissed.

## III.   THE RECORD BEFORE THE COURT ON THIS MOTION IS APPROPRIATE AND CUSTOMARY

Unable to dispute the patent transparency of Fannie Mae's accounting or to demonstrate any specific facts supporting a strong inference of scienter, Plaintiffs resort to attacking the record before the Court.  Plaintiffs' counsel repeatedly claimed that Defendants were introducing too many facts and going beyond the four corners of the complaint by relying on additional documents, including Fannie Mae's SEC filings and OFHEO's 2002 Report to Congress.  Plaintiffs then complained that any deficiency in their pleading was the result of their not having any facts due to a lack of discovery.  Both arguments are nothing more than a desperate attempt to distract the Court from the inadequacy of the Consolidated Complaint.

### A.    Plaintiffs' Challenge To Fannie Mae's Request For Judicial Notice Is Baseless

Plaintiffs repeatedly claimed that Fannie Mae has inappropriately relied on too many documents, comparing the Company's filing to a motion for summary judgment and requesting that the Court deny Fannie Mae's Request for Judicial Notice ("RJN").  (Tr. at 24:5-12, 25:8-9, 73:6-9, 74:25-75:2.)  The law in the D.C. Circuit, however, is consistent with other Circuits allowing consideration of materials beyond the Complaint so long as those materials are judicially noticeable and contain facts that provide context or even contradict the allegations of a securities complaint.  *See*, *e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (court need not accept complaint's allegations "insofar as they contradict exhibits to the complaint or matters subject to judicial notice"); *Guar. Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*, 305 F. Supp. 2d 846, 853 (N.D. Ill. 2004) ("Where the document may properly be considered, though, the actual document will override inconsistent descriptions of the document alleged in the body of the complaint.") (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002))

(further citations omitted).[16]  Here, all of the documents proffered by Fannie Mae are judicially

noticeable by the Court and may be properly considered.

Many of the documents cited by Fannie Mae – including Fannie Mae's annual reports,

public filings and reprints of FAS 91 and FAS 133 – are documents upon which Plaintiffs'

claims are purportedly based, and which are integral to Plaintiffs' securities fraud claims.  It is

well-settled that courts may take judicial notice of documents referenced in a complaint or

attached to a complaint because such documents are deemed part of the complaint and form the

basis of a plaintiff's claims.  *See*, *e.g.*, *Savage v. Scales*, 310 F. Supp. 2d 122, 129 n.8 (D.D.C.

2004) ("'[T]he court may take judicial notice of public documents, 'even if they are not included

in, or attached to the complaint.'") (quoting *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182,

186 (D.D.C. 2001)).[17]  To the extent that some of Fannie Mae's public filings were not cited or

quoted in the Complaint, courts have routinely taken judicial notice of such documents on a

motion to dismiss.  *See, e.g., Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)

(finding that documents filed with the SEC are proper subjects for judicial notice because,

---

[16] Other Circuits agree that consideration of judicially noticeable facts on a motion to dismiss is appropriate.  *See Veney v. T.V. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (court is "not required . . . to 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit'") (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (the court's "recounting of the averments in the complaint . . . is informed by the context provided by these documents and other public records of which [the court] can take judicial notice"); *Robinson v. Mammoth Life & Accident Ins. Co.*, 454 F.2d 698, 699 (7th Cir. 1972) (noting that "common knowledge '[plays] some part' in passing on a motion to dismiss where facts alleged 'are contrary to the facts of which the court will take judicial notice.'") (quoting *Golaris v. Jewel Tea Co.*, 22 F.R.D. 16, 19 (N.D. Ill. 1958)).

[17] *See also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (documents whose contents are alleged in the complaint may be considered on a motion to dismiss); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 707 (3d Cir. 1996) ("Because plaintiffs' claims are based upon these documents, they were properly considered as part of defendants' motions to dismiss.") (citations omitted); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.") (citations omitted).

among other things, "the documents are required by law to be filed with the SEC, and no serious question as to their authenticity can exist").[18]

Plaintiffs concede that the Court make take judicial notice of these documents, but argue that their contents may not be offered for the truth of the matters asserted therein.  Plaintiffs argued:

> [The Court] can take judicial notice of the company's SEC filings and you can take judicial notice of the OFHEO 2002 report.  You can take notice of it for the fact that they were filed.  You can take notice for what the words are in those reports.  But you cannot accept the facts contained in there as true.

(Tr. 25:10-16).  To be clear, Fannie Mae is not offering the 2002 OFHEO Report for its truth (*i.e.*, that Fannie Mae's FAS 133 accounting was correct).  Rather, Fannie Mae has proffered the 2002 OFHEO Report because statements by OFHEO such as "[Fannie Mae's] FAS 133 implementation has been deliberate and well-documented with the necessary investments made to provide systems needed to ensure ongoing compliance" are directly relevant to Fannie Mae's state of mind for its application of FAS 133 in light of the fact that the Company provided OFHEO with unfettered access and was completely transparent in its application of FAS 133.  Indeed, there are no allegations in the Complaint that Fannie Mae withheld information from OFHEO or intentionally mislead OFHEO.  Therefore, the 2002 OFHEO Report is fundamentally inconsistent with a strong inference of scienter.

### B.    Plaintiffs Have Had Access To The OFHEO Report, A Benefit Other Securities Plaintiffs Do Not Enjoy.

Plaintiffs repeatedly claimed that their ability to satisfy their burden of coming forward with specific facts is hampered by the fact that they have not had access to any discovery.  (Tr.

---

[18]  *See also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-278 (11th Cir. 1999) (same); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (in ruling on a motion to dismiss, a court may consider documents referenced in the complaint that have been filed with the SEC); *In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461, 470 n. 6 (M.D.N.C. 2004); *In re Humphrey Hospitality Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 684 n.5 (D. Md. 2002).

at 119:7-15 ("we can't be held to a standard of saying all that evidence is out there when we haven't seen it").)  Again, Plaintiffs appear to complain that the rules in securities cases are different.  The rules *are* different and have been since Congress enacted the Reform Act in 1995. *Ronconi,* 253 F.3d at 437.

The Reform Act imposes a mandatory stay of discovery pending a motion to dismiss specifically to require plaintiffs to come forward with evidence of securities fraud *before* obtaining the benefit of discovery.  The entire purpose behind the Reform Act's stay of discovery was to test the sufficiency of plaintiff's allegations *without the benefit of discovery.  See* Conf. Rep. at 37.  Thus, Plaintiffs' claim that they can state a claim if only they are provided the benefit of discovery is contrary to clear Congressional mandate.

Ironically, Plaintiffs here have had access to far more facts and discovery than any other securities plaintiff could hope for in the form of a 200-page September 2004 OFHEO Report. Before issuing its report, OFHEO interviewed hundreds of Fannie Mae employees and reviewed and analyzed thousands – if not millions – of pages of documents.  Few, if any, securities plaintiffs have had this much information upon which to base their complaint.  Plaintiffs' frustration with the September 2004 OFHEO Report is understandable – it contains no particularized facts sufficient to withstand this motion to dismiss.  At most, it offers unsupported rhetoric criticizing Fannie Mae.  But the facts contained in the report fail to demonstrate any deliberate or conscious misconduct by Fannie Mae.

<u>CONCLUSION</u>

Frequently oral arguments on motions to dismiss are little more than repetitions of what is contained in the briefing.  Here, however, Plaintiffs' argument proved telling.  When pressed, Plaintiffs failed to offer particularized facts sufficient to demonstrate that the Complaint pleads a strong inference of scienter.  Instead, they resorted to contrived facts and hypotheticals to show

why the Complaint should survive and discovery commence.  That is simply insufficient as a matter of law in a securities case.  Therefore, the Court should dismiss Plaintiffs' Complaint.

Dated: November 23, 2005                    Respectfully submitted,

                                            **ON BEHALF OF DEFENDANTS**

                                              /s/ Jeffrey W. Kilduff_____
                                            John Beisner (D.C. Bar No. 320747)
                                            Jeffrey W. Kilduff (D.C. Bar No. 426632)
                                            Robert M. Stern (D.C. Bar No. 478742)
                                            Michael J. Walsh, Jr. (D.C. Bar No. 483296)
                                            O'Melveny & Myers LLP
                                            1625 Eye Street, N.W.
                                            Washington, DC  20006
                                            T:  202/383-5300
                                            F:  202/383-5414

                                            Seth Aronson
                                            O'Melveny & Myers LLP
                                            400 South Hope Street, 15th Floor
                                            Los Angeles, CA  90071-2899
                                            T:  213/430-6000
                                            F:  213/430-6407

                                            *Counsel for Defendant Fannie Mae*

## CERTIFICATE OF SERVICE

I certify that on November 23, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record in this matter who are registered on the CM/ECF.  Service was accomplished on any of the following counsel not registered through the CM/ECF system via regular U.S. mail on the 23rd day of November, 2005.

Kevin M. Downey, Esq.
Joseph M. Terry, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5091

*Counsel for Defendant Franklin D. Raines*

Steven M. Salky
Eric Delinsky
Zuckerman Spaeder LLP
1800 M Street, NW
Washington, DC  20036-5803

*Counsel for Defendant J. Timothy Howard*

David S. Krakoff, Esq.
Mark W. Ryan, Esq.
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006-1101

*Counsel for Defendant Leanne G. Spencer*

Curtis V. Trinko
Jeffrey B. Silverstein
Law Office of Curtis V. Trinko, LLP
16 West 46th Street, 7th Floor
New York, NY  10036
-and-
Alfred G. Yates, Jr.
Law Offices of Alfred G. Yates, Jr., P.C.
429 Forbes Ave.
Pittsburgh, PA

*Counsel For Plaintiffs Anne E. Flynn and Robert L. Garber, as Custodian for Michael Saul Garber*

Mark A. Topaz
Richard A. Maniskas
Richard S. Schiffrin
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004

*Counsel for Plaintiffs Vincent Vinci*

Stanley M. Chesley
James R. Cummins
Waite, Schneider, Bayless & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH  45202
-and-
Jeffrey C. Block
Berman Devalerio Pease Tabacco Burt & Pucillo
One Liberty Square
Boston, MA  02169
-and
Steven J. Toll
Daniel S. Sommers
Cohen, Millstein, Hausfeld, & Toll P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC  20005

*Counsel for Plaintiff Ohio Public Employees Retirement System*

Frank J. Johnson
Brett M. Weaver
Law Office of Frank J. Johnson
402 W. Broadway, 27th Floor
San Diego, CA  92101
-and-
Robert W. Liles
1054 31st Street, NW
Suite 415
Washington, DC  20007

*Counsel for Plaintiff Sassan Shahrokhinia*

                                    /s/ Michael J. Walsh, Jr.
                                    Michael J. Walsh, Jr.