## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In Re Fannie Mae Securities Litigation** | **Consolidated Civil Action No. 1:04-cv-1639 (RJL)** |
| **Evergreen Equity Trust,** *et al,* **v. Federal National Mortgage Association,** *et al.* **and** **Franklin Managed Trust,** *et al.* **v. Federal National Mortgage Association,** *et al.* | **Case No. 1:06-cv-00082 (RJL)** **Case No. 1:06-cv-00139 (RJL)** |

-------------------------------------------

### MOTION BY RADIAN GUARANTY INC. TO DISMISS THE SECOND AMENDED COMPLAINTS AND REQUEST FOR ORAL HEARING

-------------------------------------------

Defendant Radian Guaranty Inc. ("Radian") respectfully moves this Court for an Order pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act ("PSLRA"), and the Securities Litigation Reform Act of 1998 ("SLUSA") to dismiss the Second Amended Complaints in *Evergreen Equity Trust, et al. v. Federal National Mortgage Association, et al.*, Case No. 1:06-cv-0082 (RJL) and *Franklin Managed Trust, et al. v. Federal National Mortgage Association, et al.*, Case No. 1:06-cv-00139

(RJL) (collectively, "Second Amended Complaints").  In support of its motion, Radian submits

herewith a memorandum of points and authorities.  For the Court's convenience, a proposed

order also is provided.

WHEREFORE, premises considered, Radian prays that the Court dismiss the

Complaint with prejudice.

<u>REQUEST FOR ORAL HEARING</u>

Radian requests an oral hearing on its motion to dismiss.


Dated:  September 6, 2006                    Respectfully submitted,

                                            RADIAN GUARANTY INC.
                                            By Counsel

SCHNADER HARRISON SEGAL & LEWIS LLP


By: _____/s/_____
        Jonathan M. Stern (DC Bar 412689)
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006-1825
Telephone:  (202) 419-4200
Email: jstern@schnader.com

        Of Counsel:

David Smith
Dionna K. Litvin
Jonathan S. Liss
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
Telephone:  (215) 751-2000

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In Re Fannie Mae Securities Litigation** | **Consolidated Civil Action No. 1:04-cv-1639 (RJL)** |

| | |
|---|---|
| **Evergreen Equity Trust,** *et al,* **v. Federal National Mortgage Association,** *et al.* <br><br> **and** <br><br> **Franklin Managed Trust,** *et al.* **v. Federal National Mortgage Association,** *et al.* | **Case No. 1:06-cv-00082 (RJL)** <br><br><br> **Case No. 1:06-cv-00139 (RJL)** |

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION BY RADIAN GUARANTY INC. TO DISMISS THE SECOND AMENDED COMPLAINTS

---

**Jonathan M. Stern (DC Bar No. 412689)**
**SCHNADER HARRISON SEGAL & LEWIS** LLP
**2001 Pennsylvania Avenue, NW, Suite 300**
**Washington, DC  20006-1825**
**Telephone:  (202) 419-4200**

**David Smith**
**Dionna K. Litvin**
**Jonathan S. Liss**
**SCHNADER HARRISON SEGAL & LEWIS** LLP
**1600 Market Street, Suite 3600**
**Philadelphia, PA  19103-7286**
**Telephone:  (215) 751-2000**

**Dated:  September 6, 2006**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

I.    COUNT II FAILS TO STATE A CLAIM AGAINST RADIAN FOR VIOLATION
      OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 ............................. 4

      A.    Count II Should Be Dismissed Because There Is No Private Right of Action
            For Aiding and Abetting a Violation of Section 10(b) of the Exchange Act
            and Rule 10b-5 .................................................................................................... 4

            1.    The bright-line test mandates dismissal ................................................... 5

            2.    The "sham transaction" test also mandates dismissal .............................. 7

      B.    The Allegations Against Radian Lack the Particularity Required of a Fraud
            Claim Under Section 10(b) and Rule 10b-5 ...................................................... 10

            1.    The E&F Plaintiffs have not adequately pled Radian's use or
                  employment of a deceptive device or contrivance in connection
                  with the purchase or sale of a security ................................................... 12

            2.    The E&F Plaintiffs fail to plead with particularity facts raising the
                  requisite strong inference of scienter ...................................................... 13

            3.    The E&F Plaintiffs' allegations regarding causation are insufficient ....... 18

                  a.    The failure to plead adequately transaction causation requires
                        dismissal ........................................................................................ 19

                  b.    The failure to plead adequately loss causation requires
                        dismissal ........................................................................................ 20

II.   THE E&F PLAINTIFFS' CLAIM FOR AIDING AND ABETTING COMMON
      LAW FRAUD MUST BE DISMISSED ......................................................................... 21

      A.    The Claim for Aiding and Abetting Common Law Fraud is Barred By
            SLUSA ............................................................................................................... 22

            1.    The Second Amended Complaints are part of a "Covered Class
                  Action." ................................................................................................... 22

2.    Count VIII purports to state a claim under state common law. ................ 24

3.    Fannie Mae stock is a Covered Security. .................................................... 24

4.    The E&F Plaintiffs assert that Radian employed a manipulative or deceptive device in connection with the purchase or sale of Fannie Mae securities. ........................................................................................... 24

5.    SLUSA preemption applies even though there is no private right of action for aiding and abetting under section 10(b) of the Securities Exchange Act. ............................................................................................. 25

B.    Neither Pennsylvania nor the District of Columbia Recognizes a Claim for Aiding and Abetting Fraud. ................................................................. 26

C.    Any Claim for Aiding and Abetting Common Law Fraud Would Be Time-barred. .......................................................................................................... 27

CONCLUSION ...................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Adams v. Kinder Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003)...................................14

*Amato v. KPMG, LLP*, 433 F. Supp. 2d 460 (M.D. Pa. 2006)......................................26

*Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006) ....................................................16

*In re Bio-Technology Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574 (D.N.J. 2005)........15

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) ............17

*Burman v. Phoenix Worldwide Indus.*, 384 F. Supp. 2d 316 (D.D.C. 2005)................11

\*  *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) . 2, 4-7, 9, 17, 21

\*  *In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987 (8th Cir. 2006)........................5-7, 9, 13

*Cordova v. Lehman Bros., Inc.*, 413 F. Supp. 2d 1309 (S.D. Fla. 2006)................24-25

*Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400
(W.D. Pa. 2002) .............................................................................................26

*Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697 (N.D. Ill. 2005) ...........................................14

\*  *Dura Pharm. v. Broudo*, 544 U.S. 336 (2005).......................................................12, 18

*Dutton v. D&K Healthcare Res.*, No. 4:04CV147, 2006 U.S. Dist. LEXIS 42553
(E.D. Mo. June 23, 2006)..................................................................................6

*In re Enron*, No. H-01-3624, 2006 U.S. Dist. LEXIS 50129 (S.D. Tex. July 20, 2006)........... 9-10

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)......................................................14

*In re The Great Atl. & Pac. Tea Co.  Sec. Litig.,* 103 Fed. Appx. 465
(3d Cir. 2004)..................................................................................................16

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ..................................................26

*In re Homestore.com Sec. Litig.*, 252 F. Supp. 2d 1018 (C.D. Cal. 2003)  ....................7

*In re Ikon Office Solutions*, 277 F.3d 658 (3d Cir. 2002) .............................................14

*In re Integrated Electrical Servs., Inc. Sec. Litig.*, No. 4:04-cv-3342,
        2006 U.S. Dist. LEXIS 1425 (S.D. Tex. Jan. 10, 2006) ....................................17

*In re Interbank Funding Corp. Sec. Litig.*, 432 F. Supp. 2d 51 (D.D.C. 2006) ...........................16

\*    *In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84 (D.D.C. 2004) ............... 15-16, 18

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ...................................11

\*    *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. ___,
        126 S. Ct. 1503 (2006) ....................................................................................22, 25

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ....................................................... 14-15

\*    *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005)...................................5, 8-11, 13

*In re Qwest Commc'ns Int'l Sec. Litig.*, 387 F. Supp. 2d 1130
        (D. Colo. 2005) ....................................................................................14

*Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005) ........................................24

*Santa Fe Indus. v. Green*, 430 U.S. 462 (1977)...........................................................6

*Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59 (D.D.C. 2002) .................................11

\*    *Simpson v. AOL Time Warner*, 452 F.3d 1040 (9th Cir. 2006) .........................................5, 7, 9, 12

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) ..................18

\*    *In re U.S. Office Products Sec. Litig.*, 326 F. Supp. 2d 68
        (D.D.C. 2004) ....................................................................................11, 14, 17

*WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2005 U.S. Dist. LEXIS 12064
        (E.D. Pa. May 16, 2005) ....................................................................................26

*Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88 (2d Cir. 1981) ...............................18

*In re Worldcom Inc. Sec. Litig.*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004).......................................23

## FEDERAL STATUTES

12 U.S.C. § 1717(a)(1) ................................................................................................26

15 U.S.C. § 77p(f)(2)(A) ........................................................................................ 21-23

15 U.S.C. § 77p(f)(3) ....................................................................................................24

15 U.S.C. § 78bb(f)(1) ..................................................................................................22

15 U.S.C. § 78bb(f)(5)(B) ...................................................................................... 21-23

15 U.S.C. § 78bb(f)(5)(E) .............................................................................................24

15 U.S.C. § 78j(b) .........................................................................................................25

15 U.S.C. § 78t(f) ...........................................................................................................7

15 U.S.C. § 78u-4(b)(2) .........................................................................................10, 13

Fed. R. Civ. P. 9(b) .......................................................................................... 10-11, 13

## STATE STATUTES

D.C. Code § 12-301 ......................................................................................................27

42 Pa.C.S. § 5524 .........................................................................................................27

Defendant Radian Guaranty Inc. ("Radian") submits this memorandum of points and authorities in support of its motion pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and the Securities Litigation Reform Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f), to dismiss the Second Amended Complaints in *Evergreen Equity Trust, et al. v. Federal National Mortgage Association, et al*., Case No. 1:06-cv-0082 (RJL) and *Franklin Managed Trust, et al. v. Federal National Mortgage Association, et al*., Case No. 1:06-cv-00139 (RJL) (collectively, "Second Amended Complaints").[1]

## INTRODUCTION

The *Evergreen* and *Franklin* plaintiffs ("E&F Plaintiffs") allege that Federal National Mortgage Association ("Fannie Mae") and its officers and directors engaged in a complex mutli-year fraudulent scheme to manipulate Fannie Mae's earnings and misstate its financial statements. According to the E&F Plaintiffs, Fannie Mae overstated its income during those years by more than $12 billion.

The E&F Plaintiffs seek in their Second Amended Complaints to assert against Radian claims arising out of Radian's sale to Fannie Mae of a single mortgage pool insurance policy (the "Policy") for which Fannie Mae paid Radian a $35 million premium and under which Radian paid claims to Fannie Mae totaling $39 million. The E&F Plaintiffs implicitly concede, as they must, that there is nothing inherently wrong with the Policy. But, according to the E&F Plaintiffs, Radian knew or should have known that Fannie Mae would violate generally accepted

---

[1] By Orders entered on January 30, 2006 and February 6, 2006, this Court consolidated these cases with *In re Fannie Mae Securities Litigation*, Case No. 1:04-cv-1639 (RJL).

accounting principles ("GAAP") by accounting for the Policy as insurance rather than as a loan. On that basis, the E&F Plaintiffs claim that Radian committed securities fraud and aided and abetted common law fraud.

We shall demonstrate in this memorandum that the E&F Plaintiffs' claims against Radian must be dismissed for the following reasons:

- The securities fraud claim against Radian must be dismissed because, under *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), there is not a private right of action for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act;

- The securities fraud claim against Radian also must be dismissed because the E&F Plaintiffs have failed adequately to plead any of the elements of a securities fraud claim with the particularity required by Rule 9(b) and the PSLRA;

- The claim for aiding and abetting common law fraud must be dismissed because it is barred by SLUSA, which precludes the E&F Plaintiffs from avoiding the *Central Bank* holding by repackaging their claim for securities fraud as a claim for aiding and abetting common law fraud;

- The claim for aiding and abetting common law fraud must be dismissed for the further reason that neither Pennsylvania nor the District of Columbia recognizes the proposed tort of aiding and abetting common law fraud; and

- The claim for aiding and abetting common law fraud, if it even existed, would also be dismissed because it would be barred by the statute of limitations.

## STATEMENT OF FACTS

The E&F Plaintiffs allege in their Second Amended Complaints that they purchased Fannie Mae common stock between January 17, 2001 and September 28, 2005, relying on financial statements that overstated Fannie Mae's financial results by more than $12 billion. Evergreen Second Amended Complaint ¶¶ 13, 14, 52, 54, 59, Franklin Second Amended Complaint ¶¶ 14, 15, 75, 77, 81. The E&F Plaintiffs admit that Fannie Mae's top executives, and not Radian, prepared and disseminated those financial statements and any other documents in which these allegedly false and misleading statements were made. Evergreen Second Amended Complaint ¶¶ 433-621, Franklin Second Amended Complaint ¶¶ 465-660. The E&F Plaintiffs' only assertions with respect to Radian's conduct are that it sold the Policy to Fannie Mae, for which Fannie Mae paid a premium of $35 million and received coverage for $39 million in losses,[2] and that Radian knew or should have known that Fannie Mae would account for the Policy under the rules applicable to insurance, when it should have accounted for it under the rules applicable to loans. *See* Evergreen Second Amended Complaint, ¶¶ 244-249, Franklin Second Amended Complaint ¶¶ 273-278.

Although the gist of the Second Amended Complaints is that Fannie Mae overstated its earnings by more than $12 billion, the E&F Plaintiffs claim that Fannie Mae purchased the Policy to "manage" its earnings, or, in other words, to defer a small part of the

---

[2]    The E&F Plaintiffs characterize the Policy as "finite insurance" because Radian's exposure was capped and, according to the E&F Plaintiffs, it was likely Radian would have to pay the full $39 million. Evergreen Second Amended Complaint ¶ 247, Franklin Second Amended Complaint ¶ 276. Fannie Mae amortized the $35 million premium at approximately $13.5 million in each of 2002 and 2003 and the remaining $8 million in 2004, while receiving approximately $39 million of payments under the policy over a three-year period, principally in 2003 and 2004. *Id.*

fraudulent $12 billion overstatement from one year into the next.  Evergreen Second Amended Complaint ¶¶ 241, 244, Franklin Second Amended Complaint ¶¶ 270, 273.

The Second Amended Complaints both contain nine counts, only two of which are asserted against Radian: Count II for securities fraud; and Count VIII for aiding and abetting common law fraud.  As we shall demonstrate, neither Count II nor Count VIII states a claim against Radian and the Second Amended Complaints should therefore be dismissed as against Radian.

**ARGUMENT**

**I.     COUNT II FAILS TO STATE A CLAIM AGAINST RADIAN FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5.**

Count II of the Second Amended Complaints should be dismissed as against Radian because:  (1) there is no private right of action for aiding and abetting a violation of Section 10(b) of the Exchange Act and Rule 10b-5; and (2) even if Radian somehow could be deemed to be a primary violator, the E&F Plaintiffs' allegations against Radian lack the particularity required for a claim under Section 10(b) and Rule 10b-5.

**A.     Count II Should Be Dismissed Because There Is No Private Right Of Action For Aiding And Abetting a Violation of Section 10(b) Of The Exchange Act And Rule 10b-5.**

Although the E&F Plaintiffs concede in Count VIII that Radian's purported involvement is as an aider and abettor of Fannie Mae's bad conduct, they attempt in Count II to label Radian as a primary wrongdoer under the securities laws to avoid dismissal under *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994), in which the

4

Supreme Court held that there is not a private right of action for aiding and abetting a violation of section 10(b) of the Securities Exchange Act.  Courts routinely have dismissed under *Central Bank* cases such as this, in which aiding and abetting has been mislabeled as a primary violation. Some courts have employed a bright-line test, which provides that a third party who entered into an arm's-length non-securities transaction with an issuer is not responsible for the issuer's misrepresented financial statements unless the third party prepared or disseminated the false financial statements.  *In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987 (8th Cir. 2006). Other courts have adopted a "sham transaction" test, under which the third party who entered into the transaction with the issuer cannot be liable for an issuer's misrepresented financial statements unless the transaction was illegal or had no legitimate business purpose.  *Simpson v. AOL Time Warner*, 452 F.3d 1040 (9th Cir. 2006); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005).

As we shall demonstrate next, application of either test mandates dismissal of the E&F Plaintiffs' securities fraud claim against Radian.

### 1.    The bright-line test mandates dismissal.

Count II must be dismissed under the bright-line test, because the E&F Plaintiffs have not alleged -- and cannot allege -- that Radian prepared or disseminated Fannie Mae's misrepresented financial statements.  *In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987 (8th Cir. 2006).  In *Charter*, the Court of Appeals affirmed the Rule 12(b)(6) dismissal of securities fraud claims against Charter's vendors, who were alleged to have entered into transactions having "no economic substance," "knowing that Charter intended to account for them improperly and that analysts would rely on the inflated revenues and operating cash flow in

making stock recommendations." *Id.* at 989-990.  Using language directly applicable to the E&F

Plaintiffs' claims against Radian, the Eighth Circuit held that, because the vendors "did not issue

any misstatement relied upon by the investing public, nor were they under a duty to [their

customer's] investors and analysts to disclose information useful in evaluating [customer]'s true

financial condition," *id* at 992, the securities fraud claims against them properly were dismissed.

Citing the Supreme Court's decision *Santa Fe Indus. v. Green*, 430 U.S. 462, 474-75 (1977), the

court explained "A device or contrivance is not 'deceptive,' within the meaning of § 10(b),

absent some misstatement or a failure to disclose by one who has a duty to disclose." *Id.  See

also Dutton v. D&K Healthcare Res.*, No. 4:04CV147, 2006 U.S. Dist. LEXIS 42553 at *23

(E.D. Mo. June 23, 2006) (rejecting securities fraud claims against defendants that allegedly

participated in transactions with D&K Healthcare, which D&K misreported in its financial

statements).

      The bright-line test employed in *Charter* and *Dutton* is mandated by the Supreme

Court's opinion in *Central Bank*, which allows a claim only where there is direct reliance by

purchasers or sellers on the alleged wrongful act.  Where, as here, a third party is alleged only to

have provided the issuer with the means to misrepresent its finances by entering into transactions

that the issuer then may mischaracterize to buyers and sellers of its stock (that is, at most, the

provision of "substantial assistance") there is no private right of action.  *Central Bank*, 511 U.S.

at 169, 191.  The Supreme Court recognized in *Central Bank* that, while there may be policy

reasons to want to hold these third parties liable, "[p]olicy considerations cannot override our

interpretation of the text and structure of the Act[.]"[3]  *Id.* at 188.  Thus, as the *Charter* court

observed:

> Like the district court and the court in *In re Homestore.com* [*Sec. Litig.*], 252 F. Supp. 2d [1018,] 1041 [(C.D. Cal. 2003), *aff'd sub nom. Simpson v. AOL Time Warner*, 452 F.3d 1040 (9th Cir. 2006),] we are aware of no case imposing 10(b) or Rule 10b-5 liability on a business that entered into an arm's length non-securities transaction with an entity that then used the transaction to publish false and misleading statements to its investors and analysts.  The point is significant.  To impose liability for securities fraud on one party to an arm's length business transaction in goods or services other than securities because that party knew or should have known that the other party would use the transaction to mislead investors in its stock would introduce potentially far-reaching duties and uncertainties for those engaged in day-to-day business dealings.  Decisions of this magnitude should be made by Congress.

*In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d at 992-993.

For these reasons, the E&F Plaintiffs' inability to allege that Radian itself

misrepresented Fannie Mae's financial statements to purchasers of Fannie Mae stock mandates

dismissal of the E&F Plaintiffs' securities fraud claims against Radian.

**2.    The "sham transaction" test also mandates dismissal.**

Count II must also be dismissed if the Court applies the "sham transaction" test

rather than the bright line test.  The E&F Plaintiffs allege in their Second Amended Complaints

that Radian provided and paid under the Policy $39 million of coverage for a premium of

---

[3]    Congress already has rejected such a policy.  In response to the *Central Bank* decision, Congress enacted 15 U.S.C. § 78t(f), which provides that the Securities and Exchange Commission can bring an enforcement action for aiding and abetting securities fraud.  Clearly, if Congress wanted to provide a private right of action for aiding and abetting, it could have done so in the Amendment.

$35 million and that the transaction should have been reported in Fannie Mae's financial statements as a loan rather than as an insurance policy. *See* Evergreen Second Amended Complaint ¶¶ 247, 249, Franklin Second Amended Complaint ¶¶ 276, 278. Those allegations establish that the securities fraud claims against Radian cannot survive application of the "sham transaction" test.

The case law defines a "sham transaction" as one that did not happen or had no legitimate business purpose, regardless of how it is reported. The application of the "sham transaction" test is best demonstrated by *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005), in which the district court considered whether to dismiss claims against banks who were alleged to have structured and participated in transactions that were mischaracterized in Parmalat's financial statements. *Id.* at 503.

For example, the *Parmalat* plaintiffs claimed with respect to Bank of America that it had proposed and arranged a transaction that gave a false appearance of a sale of an 18.8% interest in a Parmalat subsidiary, when the transaction should have been accounted for as a loan guaranteed by Parmalat. *Id*. at 485-86. The court dismissed the securities fraud claims against Bank of America, finding that the transaction was real, even if the intent of the parties was that Parmalat would mischaracterize it in its financial statements. *Id.* at 505. The court explained as follows:

> ***Any deceptiveness resulted from the manner in which Parmalat or its auditors described the transactions on Parmalat's balance sheets and elsewhere***. In entering into these transactions, the banks therefore did not use or employ a deceptive device or contrivance. ***At worst, the banks designed and entered into the transactions knowing or even intending that Parmalat or its auditors would misrepresent the nature of the arrangements***. That is, they substantially assisted fraud with culpable knowledge -

> in other words, they aided and abetted it.   Under *Central Bank*, of
> course, that is not a basis for private civil liability. The complaint
> therefore will be dismissed insofar as it seeks to hold the defendant
> banks liable for participating in these transactions.

*Id.* (emphasis added).  The *Parmalat* dismissal of claims against Bank of America is, of course,

precisely analogous to the E&F Plaintiffs' claims against Radian.

By contrast, the *Parmalat* court allowed securities fraud claims to proceed against

Citibank and Banca Nazionale del Lavoro.  *Id.* at 504.  Those banks were alleged to have

participated in a scheme to factor phony Parmalat invoices and to sell commercial paper

securitized by phony Parmalat invoices.  *Id.*  The court found that these arrangements were

"sham transactions" because the factored or securitized invoices did not exist and the

transactions could not have been properly reported by Parmalat.  *Id.*

Also instructive is *Simpson v. AOL Time Warner*, 452 F.3d 1040 (9th Cir. 2006),

in which the Court of Appeals affirmed the district court's dismissal of claims against third

parties who entered into transactions with Homestore.com.  The Ninth Circuit concluded that the

district court properly dismissed the claims under *Central Bank*, because there were no

allegations that the defendants "created sham business entities or engaged in deceptive conduct

as part of illegitimate transactions."  *Id.* at 1052.  Citing *Charter*, the court held that

"[p]articipation in a legitimate transaction, which does not have a deceptive purpose or effect,

would not allow for a primary violation even if the defendant knew or intended that another party

would manipulate the transaction to effectuate a fraud."  *Id.* at 1050.  *See also In re Enron*, No.

H-01-3624, 2006 U.S. Dist. LEXIS 50129 at *79 (S.D. Tex. July 20, 2006) (concluding that

plaintiffs failed to state a claim for primary liability when review of a variety of transactions

defendants structured for Enron indicated that the transactions became fraudulent only when misrepresented by Enron as cash flow from operations.).

The "sham transaction" test mandates dismissal of Count II because the E&F Plaintiffs concede that the Policy was a real transaction involving a $35 million premium and $39 million of claims payments, which should have been accounted for as a loan. *See* Evergreen Second Amended Complaint, ¶¶ 247, 249, Franklin Second Amended Complaint ¶¶ 276, 278. As in *Parmalat*, "any deceptiveness resulted from the manner in which [Fannie Mae] described the transaction … on [Fannie Mae's] balance sheets and elsewhere." *Parmalat*, 376 F. Supp. 2d at 505.

*        *        *

Under either test, the E&F Plaintiffs fail to state a claim against Radian under Section 10(b) and Rule 10b-5. For that reason, Count II of the Second Amended Complaints against Radian should be dismissed.

**B.     The Allegations Against Radian Lack the Particularity Required of a Fraud Claim Under Section 10(b) and Rule 10b-5.**

The securities fraud claim against Radian must be dismissed for the further reason that the E&F Plaintiffs have failed adequately to plead all of the elements of a securities fraud claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA, 15 U.S.C. § 78u-4(b)(2).[4]

---

[4]     The E&F Plaintiffs allege that Radian knew that:  (1) the sale of the Policy "did not sufficiently transfer risk to qualify for accounting as insurance"; (2) "Fannie Mae needed

*…Continued*

"[A] claim under Rule 10b-5 must ... satisfy Rule 9(b)'s requirement that the plaintiff state the circumstances constituting fraud with particularity." *In re U.S. Office Products Sec. Litig.*, 326 F. Supp. 2d 68, 74 (D.D.C. 2004); *accord Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1277-1279 (D.C. Cir. 1994) (affirming the dismissal of securities fraud claim based on failure to plead fraud with particularity); *In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472, 492 (S.D.N.Y. 2005) (noting that Rule 9(b) applies to alleged violations of Rule 10b-5(a) and (c)). "Rule 9(b)'s particularity requirement ensures that the opponent has notice of the [securities] claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value."); *In re U.S. Office Products Sec. Litig.*, 326 F. Supp. 2d at 73. "Rule 9(b) requires that the pleader provide the who, what, when, where and how with respect to the circumstances of the fraud." *Id.* (internal citations omitted). "[C]onclusory allegations that defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b)." *Burman v. Phoenix Worldwide Indus.*, 384 F. Supp. 2d 316, 325 (D.D.C. 2005) (quoting *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002)).

---

*Continued from previous page*

to spread its losses in order to manage earnings"; (3) "since Fannie Mae's premium payments were equal to the value of Radian's insurance coverage,' there was no risk transfer and therefore Fannie Mae received nothing of value and the transaction should have been treated as a loan for accounting purposes"; (4) "Radian knew or recklessly disregarded that it was merely loaning money to Fannie Mae under the guise of a sham insurance policy, and that Fannie Mae was fraudulently recording its transaction with Radian in its financials as 'insurance' premium payments to Radian in violation of GAAP"; and (5) "Radian participated in the fraud because it found the sale of such illegally structured finite insurance policies to be more profitable than ordinary insurance premiums." Evergreen Second Amended Complaint ¶ 249, Franklin Second Amended Complaint ¶ 278.

The elements of a securities fraud claim are: (1) to use or employ any manipulative or deceptive device or contrivance; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the manipulative or deceptive device or contrivance and the loss. *See Dura Pharm. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Simpson v. AOL Time Warner*, 452 F.3d 1040, 1047 (9th Cir. 2006). As we shall now demonstrate, the E&F Plaintiffs fail to allege any of these elements with particularity. Consequently, Radian's motion to dismiss the securities fraud claim must be granted for this reason as well.

       **1.**       **The E&F Plaintiffs have not adequately pled Radian's use or employment of a deceptive device or contrivance in connection with the purchase or sale of a security.**

Count II of the Second Amended Complaints must be dismissed as against Radian because Radian's sale of the Policy, as alleged by the E&F Plaintiffs, is not the use or employment of a deceptive device or contrivance in connection with the purchase or sale of a security. *Simpson*, 452 F.3d at 1047-48. In *Simpson*, the Ninth Circuit found that the plaintiffs failed to state a claim against AOL based on its alleged participation in a fraudulent scheme to misrepresent the financial condition of Homestore.com. The court found the plaintiffs failed to adequately allege the use or employment of a deceptive device or contrivance by AOL because the transactions to which AOL was a party only became deceptive when distorted by the "willful or intentional fraud" of the issuer, Homestore.com. *Id.* at 1053.

Here, as in *Simpson*, there was nothing inherently wrong with Radian's sale of the Policy to Fannie Mae. Fannie Mae paid Radian a real premium of $35 million and Radian paid

$39 million in real losses.[5]  Evergreen Second Amended Complaint ¶ 247, Franklin Second

Amended Complaint ¶ 276.  Rather, the alleged wrong was Fannie Mae's treatment of the Policy

in its financial statements.  Evergreen Second Amended Complaint ¶ 249, Franklin Second

Amended Complaint ¶ 278.  Allegations that Radian knew Fannie Mae purchased the Policy to

manage its earnings or to falsify its financial statements are irrelevant in assessing whether

Radian's actions violated section 10(b) of the Securities Exchange Act.  *See In re Charter*

*Commc'ns Inc. Sec. Litig.*, 443 F.3d 987, 992-93 (8th Cir. 2006); *see also In re Parmalat Sec.*

*Litig.*, 376 F. Supp. 2d 472, 505 (S.D.N.Y. 2005) (noting that primary liability is not established

even if the defendant banks entered into transactions with Parmalat "knowing or even intending

that Parmalat or its auditors would misrepresent the nature of the arrangements.").

        The E&F Plaintiffs' failure to plead the element of employment of a deceptive

device or contrivance in connection with the purchase or sale of a security requires dismissal of

their securities fraud claim against Radian.

> **2.      The E&F Plaintiffs fail to plead with particularity facts raising the
>          requisite strong inference of scienter.**

        The E&F Plaintiffs have failed to satisfy, not only the Fed. R. Civ. P. 9(b)

requirement of particularity, but also the more stringent PSLRA requirement that plaintiffs, "with

respect to each act or omission alleged to violate" Rule 10b-5, "state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind."

---

[5]      The inadequacy of the E&F Plaintiffs' pleadings is exemplified by the allegation that
"Fannie Mae received nothing of value [from Radian]," Evergreen Second Amended
Complaint ¶249, Franklin Second Amended Complaint ¶ 278, implying that a payout
with a present value approximating the premium payment has no value.  Investors who
buy fixed annuities would be shocked to learn that they are receiving nothing of value.

15 U.S.C. § 78u-4(b)(2); *see In re U.S. Office Products Sec. Litig.*, 326 F. Supp. 2d 68, 75

(D.D.C. 2004) ("Courts have described § 78u-4(b)(2) as requiring that a plaintiff must plead with

particularity facts that establish a 'strong inference' of scienter.").

       "Generally, the PSLRA is seen as imposing a standard of pleading which is more

stringent than that of Rule 9(b)."  *In re Qwest Commc'ns Int'l Sec. Litig.*, 387 F. Supp. 2d 1130,

1144 (D. Colo. 2005); *see also Adams v. Kinder Morgan, Inc.*, 340 F.3d 1083, 1096 (10th Cir.

2003) (holding that, while Rule 9(b) permits a plaintiff to generally aver malice, intent, and

knowledge, "[t]he PSLRA supersedes this part of Rule 9(b), imposing a more stringent rule for

pleading scienter"); *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 705 (N.D. Ill. 2005) ("The

pleading requirement for state of mind is … more stringent under the PSLRA than under 9(b).").

       To adequately plead scienter, the E&F Plaintiffs must provide "the who, what,

when, where and how."  *In re U.S. Office Products Sec. Litig.*, 326 F. Supp. 2d 68, 73 (D.D.C.

2004).  They must allege with particularity sufficient facts to establish Radian had "'a mental

state embracing an intent to deceive, manipulate or defraud,' or, at a minimum, 'highly

unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an

extreme departure from the standards of ordinary care, … which presents a danger of misleading

buyers or sellers that is either known to the defendant or is so obvious that the actor must have

been aware of it.'"  *In re Ikon Office Solutions*, 277 F.3d 658, 667 (3d Cir. 2002) (internal

citations omitted); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976) (defining

scienter as "a mental state embracing intent to deceive, manipulate or defraud.").  The E&F

Plaintiffs must allege with particularity Radian's motive and opportunity, including the specific

benefits to Radian from the alleged misrepresentation or scheme and the means and likely

prospect of Radian achieving concrete benefits through those means.  *Novak v. Kasaks*, 216 F.3d

300, 307 (2d Cir. 2000); *see also In re Bio-Technology Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d

574, 581 (D.N.J. 2005) (holding plaintiff must allege some concrete and personal benefit to the

defendant as a result of the fraud).

Consequently, the E&F Plaintiffs' conclusory allegation that Radian "knew or

recklessly disregarded … that Fannie Mae was fraudulently recording its transactions with

Radian in [its] financials as 'insurance' premium payments to Radian in violation of GAAP,"

Evergreen Second Amended Complaint ¶¶ 249, 788, Franklin Trust Second Amended Complaint

¶¶ 278, 881, is insufficient.  The E&F Plaintiffs do not allege who at Radian had this alleged

knowledge, when Radian gained this alleged knowledge, what steps Radian took to direct that

this alleged knowledge not be divulged, where any discussions about not divulging this

information took place, and how this alleged scheme was accomplished.

The Second Amended Complaints are similarly deficient with respect to motive

and opportunity.  There is not a single allegation that Radian sought to benefit in any way from

Fannie Mae's purported scheme to manipulate earnings, or even a suggestion of how such

benefit was to be realized.  Rather, the E&F Plaintiffs have merely made the unremarkable

assertion that Radian's motive in selling the Policy to Fannie Mae was to earn a profit on a

transaction they contend should have been accounted for as a loan.  *See* Evergreen Second

Amended Complaint ¶ 249, Franklin Trust Second Amended Complaint ¶ 278.  "[C]ourts have

[routinely] rejected motive-and-opportunity allegations of scienter anchored merely in a

defendant's profit motive, requiring instead at least some demonstrable claim of deceptive

intent."  *In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84, 90 (D.D.C. 2004),

*vacated on other grounds sub nom., Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006).[6]  In *In*

*re Interbank Funding Corp.*, the court granted the defendants' motion to dismiss on the basis that

the plaintiffs failed to plead scienter with sufficient particularity.  *Id.*  The court found

insufficient the plaintiffs' allegation that the defendants let Interbank's "misstatements and

omissions slide because they expected to reap sizeable fees from" Interbank.  *Id.*  Consequently,

the E&F Plaintiffs' allegation that "Radian participated in the fraud because it found the sale of

such … policies to be more profitable than ordinary insurance premiums," Evergreen Second

Amended Complaint ¶ 249, Franklin Second Amended Complaint ¶ 278, is insufficient to satisfy

the heightened pleading requirements for alleging scienter.

Similarly, alleging that Radian knew that Fannie Mae purchased the Policy to

manage its earnings is insufficient to give rise to a strong inference of scienter that Radian knew

Fannie Mae intended to deceive its shareholders.[7]  *In re The Great Atl. & Pac. Tea Co. Sec.*

*Litig.*, 103 Fed. Appx. 465, 469 (3d Cir. 2004) ("A&P's desire to manage its earnings in order to

---

[6]    The district court granted the dismissal with prejudice.  On appeal, the plaintiff did "not
take issue with the court's determination that she failed to plead properly her causes of
action," rather she took issue with the court's granting the dismissal with prejudice.
*Belizan*, 434 F.2d at 581-582.  The D.C. Circuit agreed, vacating the order of dismissal
and remanding to the district court with instructions "to enter a new order either
dismissing without prejudice or explaining its dismissal with prejudice." *Id.* at 584.  On
remand, the district court chose the second option and explained why it dismissed with
prejudice.  *See In re Interbank Funding Corp. Sec. Litig.*, 432 F. Supp. 2d 51 (D.D.C.
2006).

[7]    Even the Report of the Special Examination of Fannie Mae by the Office of Federal
Housing Enterprise Oversight, which forms the basis of much of the Second Amended
Complaints and which the E&F Plaintiffs cite to nearly thirty times, recognizes that
management of earnings can be a completely proper business function.  The report notes
on page 104 that the term "earnings management … is used to describe a spectrum of
activities from legitimate managerial activities at one end to fraudulent reporting at the
other ….  One type of [managed earnings] is simply conducting the business of the
enterprise in order to attain controlled, disciplined growth."

meet analyst and market expectations … is not sufficient to give rise to a strong inference of *scienter*."). Attempts by plaintiffs to establish motive and opportunity by highlighting the desire to make an issuer appear profitable routinely have been rejected because such desires are attributable to every public corporation. *In re U.S. Office Products Sec. Litig.*, 326 F. Supp. 2d 68, 76 n.1 (D.D.C. 2004); *see also In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004) (finding allegation that Bristol Myers offered incentives to wholesalers to purchase more products to meet quarterly sales projections was insufficient to plead scienter, noting "[o]ffering incentives to meet sales or earnings goals is a common practice, and … is an insufficient basis on which to infer conscious misbehavior or recklessness."); *In re Integrated Elec. Servs., Inc. Sec. Litig.*, No. 4:04-cv-3342, 2006 U.S. Dist. LEXIS 1425, at *12 (S.D. Tex. Jan. 10, 2006) (noting allegations of "Defendants' desire to meet earnings expectations" is not sufficient to raise a strong inference of scienter.). Consequently, even if the E&F Plaintiffs could in good faith allege facts from which one could infer that Radian knew Fannie Mae purchased the Policy to manage its earnings, which they have not, such allegations would be insufficient under Fed. R. Civ. P. 9(b) and the PSLRA to establish Radian's intent to deceive the E&F Plaintiffs. Of course, even if Radian knew Fannie Mae wanted to deceive its investors, under *Central Bank*, Radian could not be liable as a primary violator.

The E&F Plaintiffs' failure to plead sufficient facts to create an inference (let alone a strong inference) that Radian acted with scienter to deceive the E&F Plaintiffs when it sold the Policy to Fannie Mae is, in itself, a sufficient ground for dismissal of the securities fraud claim against Radian.

3.      **The E&F Plaintiffs' allegations regarding causation are insufficient.**

The securities fraud claims against Radian should be dismissed for the further reason that the E&F Plaintiffs fail adequately to plead causation. Indeed, their conclusory assertions regarding causation not only are insufficient, they make no logical sense.

Causation under the federal securities laws includes transaction causation and loss causation, both of which must be pled. *In re Interbank Funding Corp.*, 329 F. Supp. 2d at 93 (citing *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). Transaction causation (sometimes referred to as reliance) requires the plaintiff to show a causal link between the defendant's misconduct and the plaintiff's decision to buy or sell the security, *i.e.* "but for" the defendant's alleged misconduct the plaintiff would not have entered into the securities transaction. *Dura Pharm. v. Broudo*, 544 U.S. 336, 343-44 (2005). Loss causation requires the plaintiff to show that the defendant's fraudulent conduct "proximately caused the plaintiff's economic loss." *Id.* at 346. "'[I]n order for the plaintiff to recover[,] it must prove the damages it suffered were a foreseeable consequence'" of the defendant's actions. *In re Interbank Funding Corp.*, 329 F. Supp. 2d at 92 (quoting *Suez Equity Investors*, 250 F.3d at 96). Thus, while the plaintiffs are "not required to prove that defendant's act was the sole and exclusive cause of his injury," the plaintiffs must "show that it was substantial, *i.e.*, a significant contributing cause." *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 92 (2d Cir. 1981).

The Supreme Court made clear in *Dura Pharmaceuticals*, 544 U.S. at 347, that boilerplate pleading of causation is insufficient. Therefore, the E&F Plaintiffs' obligation to plead causation cannot be satisfied by their boilerplate allegations that "[a]s a direct and proximate result of Radian's wrongful conduct[,] ... the market prices of Fannie Mae's stock

purchased by [the E&F] Plaintiffs were artificially inflated" and "[h]ad [the E&F] Plaintiffs known the truth, they either would not have purchased or otherwise acquired their Fannie Mae securities at all, or would not [sic] have done so at substantially lower prices."  Evergreen Second Amended Complaint ¶¶ 789-790, Franklin Second Amended Complaint ¶ 882-883. Rather, the sufficiency of the Second Amended Complaints must be evaluated by an analysis of their specific, non-boilerplate allegations.

> **a.    The failure to plead adequately transaction causation requires dismissal.**

The E&F Plaintiffs do not specifically plead a causal link between Radian's sale of the Policy to Fannie Mae and their many decisions to buy Fannie Mae stock between January 17, 2001 and September 28, 2005.  The lack of specificity is hardly surprising.

Any effort to be specific would expose the claim of reliance to be ludicrous, illogical or both.  For example, the E&F Plaintiffs began purchasing Fannie Mae at least as early as January 17, 2001 – a full year before Fannie Mae purchased the Policy from Radian and longer still before Fannie Mae published financial statements reflecting that purchase.  Any claim of reliance for those early purchases would be absurd.  And, given the E&F Plaintiffs' claim that Fannie Mae's improper accounting treatment of the Policy temporarily reduced the alleged $12 billion overstatement by some unspecified amount, there similarly is no basis to claim reliance thereafter.[8]

---

[8]    Notably, the E&F Plaintiffs continued to purchase Fannie Mae stock even after the accounting improprieties at Fannie Mae were publicly reported on September 22, 2004. Evergreen Second Amended Complaint ¶¶ 1, 14, Franklin Second Amended Complaint ¶¶ 1, 15.

          **b.**      **The failure to plead adequately loss causation requires dismissal.**

The E&F Plaintiffs have not alleged that the accounting treatment Fannie Mae accorded Radian's Policy, under which Radian is alleged to have paid $39 million of losses in exchange for a $35 million premium, was a substantial (proximate) cause of their alleged loss. At the outset, the E&F Plaintiffs cannot claim that the accounting treatment of the Policy affected the prices they paid for Fannie Mae stock made before Fannie Mae first published a financial statement that included any improper treatment of the Policy. The E&F Plaintiffs neglect to say when Fannie Mae first made public any financial statements containing an improper treatment of the Policy, but clearly that would have to be well after the Policy was purchased in January 2002.

Even after Fannie Mae allegedly accounted improperly for the Policy, it remains clear that the E&F Plaintiffs cannot show that Fannie Mae's accounting treatment of the Policy was the proximate cause of their injury. The E&F Plaintiffs claim that they paid too much for their Fannie Mae stock because Fannie Mae *overstated* its earnings by more than $12 billion. Evergreen Second Amended Complaint ¶ 54, Franklin Second Amended Complaint ¶ 77. The E&F Plaintiffs claim with respect to the Policy, however, that Fannie Mae reduced its already overstated 2002 earnings by deducting over time (amortizing) the $35 million premium, thus anticipating losses that should not have been recognized until 2003 and 2004. Evergreen Second Amended Complaint ¶ 243, Franklin Second Amended Complaint ¶ 272.[9] In other words,

---

[9]     The E&F Plaintiffs carefully avoid any allegation regarding the actual impact of Fannie Mae's alleged improper accounting treatment of the Policy on Fannie Mae's financial statements other than to claim that Fannie Mae's overstatement of its 2002 earnings was

*…Continued*

although the big-picture fraud was to *overstate* income, Fannie Mae is alleged to have used the

purchase of the Policy to *reduce* or defer a small portion of its *overstated* earnings in 2002.

Thus, according to the E&F Plaintiffs' allegations, Fannie Mae's allegedly

improper accounting for the Radian Policy would have served a corrective function, reducing the

fraudulent overstatement in 2002.  It would make no sense for the E&F Plaintiffs to claim that

they paid higher prices for Fannie Mae's stock because Fannie Mae reduced its income in 2002.

Consequently, for this reason as well, the E&F Plaintiffs' security fraud claim

against Radian should be dismissed.

## II.    THE E&F PLAINTIFFS' CLAIM FOR AIDING AND ABETTING COMMON LAW FRAUD MUST BE DISMISSED.

The common law claim for aiding and abetting fraud also must be dismissed.  The

E&F Plaintiffs cannot avoid the *Central Bank* holding by relabeling their aiding and abetting

securities fraud claim as aiding and abetting a common law fraud.  First, the Securities Litigation

Reform Act of 1998 ("SLUSA") preempts state common law claims in "covered class actions"

such as this, *see* 15 U.S.C. §§ 77p(f)(2)(A), 78bb(f)(5)(B), and precludes the E&F Plaintiffs'

attempt to plead around it.  Second, even if there were not SLUSA preemption, neither of the

jurisdictions whose laws might apply recognizes the tort of aiding and abetting fraud.  Third, if a

---

*Continued from previous page*

reduced by some unspecified amount.  *See* Evergreen Second Amended Complaint ¶¶ 789, 791, Franklin Second Amended Complaint ¶¶ 882, 884.

tort claim of aiding and abetting a common law fraud were recognized, this claim would be barred by the state-law statutes of limitations.

### A.    The Claim for Aiding and Abetting Common Law Fraud is Barred By SLUSA.

SLUSA provides that:

> [n]o covered class action based upon the statutory or common law of any State … may be maintained in any State or Federal court by any private party alleging [either] a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security [or] that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."

15 U.S.C. § 78bb(f)(1).  SLUSA bars common law claims when four requirements are met: (1) the underlying suit is a "covered class action"; (2) the action is based on state or local law; (3) the action concerns a "covered security"; and (4) the complaint alleges the defendant misrepresented or omitted material facts or employed a manipulative or deceptive device in connection with the purchase or sale of a security.  *See Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. ___, 126 S.Ct. 1503, 1511-12 (2006) (*Dabit II*).  Each of these requirements is satisfied here, and consequently, the E&F Plaintiffs' common law claims are barred by SLUSA.

### 1.    The Second Amended Complaints are part of a "Covered Class Action."

SLUSA defines a "covered class action" as "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (1) damages are sought on behalf of more than 50 persons; and (2) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."  15 U.S.C. §§ 77p(f)(2)(A)(ii),

78bb(f)(5)(B).  These cases have been consolidated with the main class action[10] and, combined, the "group of lawsuits" seeks damages on behalf of more than fifty plaintiffs.  *See In re Worldcom Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 247 (S.D.N.Y. 2004) (holding that ten securities class actions removed from state court and consolidated for pretrial purposes that collectively were brought on behalf of 293 plaintiffs were a group of lawsuits and therefore treated as  a "covered class action" for purposes of SLUSA).

The E&F Plaintiffs conceded in their opposition to consolidation that their state law claims would be preempted if their cases were consolidated with the main class action.  *See* E&F Plaintiffs' Objection to Consolidation ¶ 9 ("consolidating [the E&F] Plaintiffs' claims into the Class Action may prevent [the E&F] Plaintiffs from pursuing valuable state law claims, which they are entitled to pursue in an individual action but which cannot be maintained in a class action.  *See* Securities Litigation Uniform Standards Act, 15 U.S.C. § 77p(b)."); E&F Plaintiffs' Response to Fannie Mae's Supplemental Reply Regarding E&F Plaintiffs' Objection to Consolidation (recognizing that consolidation strengthens defendants' SLUSA argument because "SLUSA applies to 'any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which … the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.' 15 U.S.C. § 77p(f)(2)(A)(ii).").

---

[10]    *See* Note 1, *supra*.

## 2.    Count VIII purports to state a claim under state common law.

Count VIII for aiding and abetting of common law fraud purports to state a claim under state law.[11]  *See, e.g., Cordova v. Lehman Bros., Inc.*, 413 F. Supp. 2d 1309, 1316-21 (S.D. Fla. 2006) (finding that plaintiffs' claim for aiding and abetting common law fraud was a claim under state law and preempted by SLUSA).

## 3.    Fannie Mae stock is a Covered Security.

Under SLUSA, a "covered security" is one traded nationally and listed on a national exchange. 15 U.S.C. §§ 77p(f)(3), 78bb(f)(5)(E).  Fannie Mae's common stock is traded on the New York Stock Exchange.  Evergreen Second Amended Complaint ¶ 25, Franklin Trust Second Amended Complaint ¶ 47.  Therefore, it is a covered security.

## 4.    The E&F Plaintiffs assert that Radian employed a manipulative or deceptive device in connection with the purchase or sale of Fannie Mae securities.

The fourth requirement for SLUSA preemption is met because the Second Amended Complaints allege all defendants, including Radian, violated section 10(b) of the

---

[11]    The E&F Plaintiffs give no indication of which state's law they believe to be applicable to their claim for aiding and abetting fraud.  As discussed in further detail below, neither Pennsylvania nor the District of Columbia, the only two jurisdictions with an interest in having their law applied, have recognized a claim for aiding and abetting common law fraud.  An outline of the legal elements of the E&F Plaintiffs' claim for aiding and abetting common law fraud is unnecessary because it is the allegations of the complaint which determine preemption.  *See Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) (holding that SLUSA preempts claims which allege a material misrepresentation or omission in connection with the purchase or sale of securities whether or not that allegation is an element of or otherwise necessary to the putative state claim).

Exchange Act.[12]  Indeed, in *Dabit II*, the Supreme Court made clear that the phrase "in connection with the purchase or sale of any security" requires only a showing that the alleged deception coincided with a securities transaction by someone.  The E&F Plaintiffs allege that they purchased stock in reliance on defendants' alleged fraudulent activities.  *See* Evergreen Second Amended Complaint ¶ 14, Franklin Second Amended Complaint ¶ 15.  That allegation is dispositive of this element.

> **5.    SLUSA preemption applies even though there is no private right of action for aiding and abetting under section 10(b) of the Securities Exchange Act.**

Lastly, the absence of a private right of action for aiding and abetting under the federal securities laws does not prevent SLUSA from preempting a claim for aiding and abetting common law fraud.  In *Dabit II*, 126 S. Ct. at 1513-14, the Supreme Court held that SLUSA's phrase "in connection with the purchase or sale of covered securities" is not to be read narrowly so as to preempt only those actions for which the Supreme Court has indicated a private remedy exists under Rule 10(b)-5.  *See also Cordova v. Lehman Bros.*, 413 F. Supp. 2d 1309, 1321 (S.D. Fla. 2006) (granting the defendants' motion to dismiss claims for aiding and abetting common law fraud based upon SLUSA preemption).

For each of these reasons, the E&F Plaintiffs' claim for aiding and abetting common law fraud is preempted by SLUSA and must be dismissed.

---

[12]    Section 10(b) makes it unlawful "for any person, directly or indirectly ... [t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).

**B.    Neither Pennsylvania nor the District of Columbia Recognizes a Claim for Aiding and Abetting Fraud.**

The E&F Plaintiffs do not identify the jurisdiction under which they purport to assert a claim for aiding and abetting, but the only jurisdictions that have any connection to the sale of the Policy are Pennsylvania and the District of Columbia.  Radian is a Pennsylvania corporation with a principal place of business in Philadelphia, Pennsylvania.  Fannie Mae is a federally chartered corporation with its principal place of business in the District of Columbia. *See* 12 U.S.C. § 1717(a)(1) (creating Fannie Mae as a federally chartered corporation and requiring that it maintain its principal office in the District of Columbia and be deemed a resident thereof).

Pennsylvania does not recognize claims for aiding and abetting common law fraud.  *Amato v. KPMG, LLP*, 433 F. Supp. 2d 460, 473-74 (M.D. Pa. 2006); *see also WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2005 U.S. Dist. LEXIS 12064 at *49-50 (E.D. Pa. May 16, 2005) (following majority of courts in district refusing to recognize claim of aiding and abetting common law fraud under Pennsylvania law in case alleging defendants had engaged in transactions with corporation that were misrepresented in financial statements); *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 413 (W.D. Pa. 2002) (declining to recognize a cause of action under Pennsylvania law for aiding and abetting, noting that "the adoption of [the cause of action] would represent a significant expansion of Pennsylvania tort liability.").

Similarly, the District of Columbia does not recognize such a claim.  *See Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) (noting separate tort of aiding and

26

abetting has not been recognized in the District and discussing possible evidential and liability issues in context of wrongful death claim).

Consequently, regardless of which law the Court would apply, the E&F Plaintiffs' claim for aiding and abetting common law fraud should be dismissed.

### C.    Any Claim for Aiding and Abetting Common Law Fraud Would Be Time-barred.

Even if Pennsylvania or the District of Columbia were to recognize a claim for aiding and abetting common law fraud, such a claim would be time-barred.  The E&F Plaintiffs allege that Fannie Mae purchased the Policy from Radian at the end of January 2002.  Evergreen Second Amended Complaint ¶ 247, Franklin Trust Second Amended Complaint ¶ 276. Pennsylvania has a two year statute of limitations for tort claims.  42 Pa.C.S. § 5524.[13]  The District of Columbia has a three year statute of limitations.  D.C. Code § 12-301.[14] Consequently, the deadline to assert a claim for aiding and abetting fraud would have been January 2004 if Pennsylvania law applies and January 2005 if the District of Columbia law applies.  The E&F Plaintiffs did not file their motion for leave to amend to assert claims against Radian until July 24, 2006.  Consequently, even if Pennsylvania or the District of Columbia were to recognize this claim, it would be time-barred.

---

[13]    The statute provides, in part that "Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud…" must be commenced within two years. 42 Pa.C.S § 5524(7).

[14]    D.C. Code provides that an "action for recovery of damages for injury to real or personal property…" may not be brought more than three years "from the time the right to maintain the action accrues."  D.C. Code § 12-301(3).

## CONCLUSION

For the reasons set forth above, Radian respectfully requests that its motion to dismiss be granted and that the Second Amended Complaints be dismissed with prejudice as against Radian.

Dated:  September 6, 2006                    Respectfully submitted,

                                             RADIAN GUARANTY INC.
                                             By Counsel

SCHNADER HARRISON SEGAL & LEWIS LLP


By: _____/s/_____
        Jonathan M. Stern (DC Bar 412689)
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006-1825
Telephone:  (202) 419-4200
Email: jstern@schnader.com

        Of Counsel:

David Smith
Dionna K. Litvin
Jonathan S. Liss
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
Telephone:  (215) 751-2000