## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————  
           |  
**In re Federal National Mortgage**  |    **MDL No. 1668**  
**Association Securities, Derivative and**  |  
**"ERISA" Litigation**  |  
———————————————————|  
           |    **Consolidated Civil Action No. 1:04-cv-01639**  
**In re Fannie Mae Securities Litigation**  |  
           |    **Judge Richard J. Leon**  
———————————————————|

## THIRD-PARTY OFHEO'S MEMORANDUM IN OPPOSITION
## TO MOTIONS TO COMPEL FILED BY DEFENDANTS J. TIMOTHY HOWARD AND
## FRANKLIN RAINES AND MOTION TO QUASH

### I. Introduction

The Office of Federal Housing Enterprises Oversight ("OFHEO") hereby opposes the

two Motions to Compel filed by Messrs. J. Timothy Howard and Franklin Raines  (Dkt. Nos. 195

and 219, respectively) and moves to quash the three subpoenas *duces tecum* issued by Messrs.

Howard and Raines.

Messrs. Howard and Raines are named individual defendants in the above-captioned

actions (collectively, "Defendants") and have asked this Court to enter orders compelling

OFHEO to comply with their three subpoenas.  As a preliminary matter, their Motions to

Compel are procedurally defective as the proper method for challenging OFHEO's determination

of their subpoenas is to file a separate action under the Administrative Procedure Act ("APA"),

not  a motion to compel.  In that vein, OFHEO's decision under its regulations is to be reviewed

under the deferential judicial review provisions of the APA.  Under those provisions, OFHEO's

determination that Defendants' subpoenas did not comply with OFHEO's *Touhy* regulations

governing the release of documents was not arbitrary and capricious.  Indeed, the agency had a reasonable basis to respond in this manner.

Second, Defendants' subpoenas are invalid for failure to comply with OFHEO's *Touhy* regulations.  OFHEO has adopted *Touhy* regulations that serve as the exclusive means by which a private litigant may obtain agency records.  OFHEO's *Touhy* regulations, which neither controvert Fed. R. Civ. P. 45 nor exceed the agency's statutory authority under the Housekeeping Statute, confer exclusive authority upon OFHEO's Director to permit the release of agency records.  The regulations establish the process by which the Director of OFHEO makes a case-by-case determination whether to release sensitive financial or confidential information.   More importantly, OFHEO's *Touhy* regulations do not provide a vehicle for the release of documents made via a subpoena *duces tecum*, but specify  that requests for documents must be made in a letter to the Director of OFHEO.  The letter must contain certain predicate information necessary to inform the Director's determination.  OFHEO's *Touhy* regulations further require that any party requesting documents cooperate with the agency in defining and narrowing their requests in order to help conserve agency resources in its response to those requests.  Defendants did not meet these requirements.

Once advised of their error, Defendants rebuffed OFHEO's request that they conform their subpoenas to OFHEO's *Touhy* regulations, and instead asked the Court to compel the immediate production of confidential examination records and other documents potentially numbering in the hundreds of thousands of pages.  Defendants' lack of cooperation has impeded OFHEO's ability to fashion a response to the Defendants' subpoenas.  In addition, Defendants' counsel have rejected OFHEO's attempt to obtain a negotiated, court-approved protective order

that would govern OFHEO's production of its documents to the parties in the above-captioned action.

Third, OFHEO did not waive its objections because there was not a deadline for OFHEO to respond to Defendants' invalid subpoenas. Even assuming that such a deadline existed and expired, the Court could still consider OFHEO's objections because, as a third party here, it has acted in good faith in negotiatoing with Defendants to narrow the scope of Defendants' overly broad set of document requests. Finally, Defendants' subpoenas should be quashed, *inter alia*, because they seek documents subject to several privileges including, but not limited to, the examination privilege.

Therefore, for the reasons set forth more fully herein, the Court should deny Defendants' Motions to Compel, quash Defendants' subpoenas, and instruct Defendants to submit any and all document requests to OFHEO in accordance with the agency's *Touhy* regulations and afford the agency sufficient time to respond.

## II. Background

### A.    OFHEO Is a Third-Party In The Securities Litigation

OFHEO is an independent office within the Department of Housing and Urban Development charged with ensuring that, among other things, the Federal National Mortgage Corporation ("Fannie Mae") is adequately capitalized and operating safely. *See* 12 U.S.C. § 4513(a). In June 2003, following disclosures related to Freddie Mac's accounting practices, OFHEO commenced a safety and soundness examination of Fannie Mae's accounting and financial disclosure practices. Declaration of Charlotte A. Reid at ¶ 1, ("Reid Decl.") (Exh. A). In September 2004, OFHEO released a "Report of Findings to Date in the Special Examination of Fannie Mae" ("Findings to Date") that detailed problems in Fannie Mae's accounting policies,

practices, internal controls, and financial reporting. *Id*. at ¶ 2.  In May 2006, OFHEO released a Report of the Special Examination of Fannie Mae ("Special Examination Report") that detailed a wide variety of unsafe and unsound practices and conditions, including the use of improper earnings management practices linking senior management's bonuses, stock and stock options to earnings per share targets – a measure of profitability easily manipulated by senior management to their own advantage. *Id.* at ¶¶ 4, 5.

In December 2004, the Securities and Exchange Commission (SEC) ordered Fannie Mae to restate its financial results for 2002 through 2004, a restatement which Fannie Mae has yet to complete. *Id.* at ¶ 3.  Subsequently, private parties filed several civil actions relating to the regulatory violations and misconduct described in the Findings to Date and the Special Examination Report, including certain shareholders' actions that were consolidated in *In re Fannie Mae Securities Litigation*, assigned to this Court.  In addition, a shareholders derivative action and an action under ERISA were also filed and assigned to this Court (collectively, the "securities litigation").  Fannie Mae is one of the corporate defendants and Messrs. Howard and Raines are named as individual defendants in this securities litigation.  OFHEO is not a named party in this securities litigation.

This securities litigation has spawned numerous discovery demands on OFHEO, including, to date, four subpoenas *duces tecum* served by the Plaintiffs (one), Mr. Howard (one), and Mr. Raines (two).  In fact, the parties in the securities litigation collectively are requesting more than sixty (60) document categories from OFHEO.  Reid Decl. ¶ 13.

**B.     Plaintiffs' *Touhy* Request for Documents.**

On March 13, 2006, Plaintiffs served a subpoena on OFHEO seeking twenty-five (25) categories of documents.  Reid Decl. ¶ 6.  OFHEO immediately advised Plaintiffs that their

subpoena was improper and that any request for documents must comply with OFHEO's *Touhy* regulations. *Id.* In response, Plaintiffs engaged in meaningful dialogue with OFHEO and provided several additional clarifying letters. *Id.* at ¶ 9. For example, when OFHEO informed Plaintiffs that their "summary of issues" did not comply with 12 C.F.R. § 1703.34(b) – namely that Plaintiffs' reference to OFHEO's Findings to Date was insufficient to serve as a summary of the issues – Plaintiffs responded by sending OFHEO a letter that included a summary of issues. *See* Letter from Corwin to Lockhart of June 13, 2006, attached Exhibit F to Raines's Mot. to Compel.

Similarly, in response to OFHEO's request to narrow the scope of Plaintiff's document request, Plaintiffs cooperated and further refined their document requests. *See id.* at 2-4. Moreover, at OFHEO's request, Plaintiffs also explained in greater detail which documents they sought from OFHEO and why those documents were not available from other sources. *See* Letter from Corwin to Newman of July 6, 2006, at 2-4 (Reid Exh. 1). Plaintiffs also agreed to prioritize their requests, setting as their first priority certain transcripts of OFHEO interviews of Fannie Mae employees. Thus, under OFHEO's *Touhy* regulations, Plaintiffs have transformed their subpoena into a *Touhy* request and engaged in a dialogue with OFHEO to refine and justify their document requests. *See* 12 C.F.R. § 1703.34(c).

As a result of Plaintiffs' cooperation, OFHEO has begun processing Plaintiffs' subpoena as a *Touhy* request for documents. Indeed, OFHEO is working toward a rolling production of transcripts of OFHEO formal interviews – Plaintiffs' priority documents. *See* Letter from Newman to Corwin of July 18, 2006 ( Reid Exh. 2).[1] Meanwhile, Plaintiffs' counsel has

---

[1] Importantly, Defendants also seek the very same transcripts. Moreover, it appears that any document produced to any party in the securities litigation will be made available immediately to all parties under a document sharing agreement. Reid Decl. ¶15.

prepared and circulated a draft protective order ("OFHEO Protective Order")[2] to facilitate the

production of confidential agency documents.  The draft OFHEO Protective Order was

negotiated with OFHEO by counsel for Plaintiffs and Fannie Mae.  It was circulated to all parties

in the securities litigation for comment and approval.  If signed by the parties and entered by the

Court, the OFHEO Protective Order will govern the terms of the document production by

OFHEO.  Neither Mr. Howard nor Mr. Raines has agreed to sign the OFHEO Protective Order.

### C.     Defendants' Rule 45 Subpoenas

On June 21, 2006, Mr. Howard served a subpoena on OFHEO seeking 11 categories of

documents.  *See* Exh. 1 to Howard's Mot. to Compel.  On July 18 and July 24, 2006, Mr. Raines

served two separate subpoenas on OFHEO seeking the production of 22 categories of

documents.  *See* Exhs. D and E to Raines's Mot. to Compel.

Upon receipts of these subpoenas, OFHEO reached out to Defendants' counsel through

co-defendant Fannie Mae's counsel to gain a better understanding of the breadth and scope of

these requests.  OFHEO also invited the parties to collaborate to enable the agency to apply an

economies-of-scale approach in responding to overlapping requests.  Reid Decl. ¶ 12.  Fannie

Mae's counsel sent an e-mail to all counsel that, among other things, communicated OFHEO's

---

[2]     The protective order currently being negotiated by OFHEO, Plaintiffs and Fannie Mae differs from the general protective order entered into by some of the parties and filed with this Court on July 6, 2006.  *See* July 2, 2006 Amended Stipulated Pretrial Protective Order (Dkt. No. 178) ("Pretrial Protective Order").  As OFHEO is not a party to these litigations, OFHEO took no part in the drafting of the Pretrial Protective Order, and did not sign that order.  *See generally* 12 C.F.R. § 1703.33 (noting that protective orders "shall be in a form satisfactory to OFHEO.")  Notably, neither Mr. Raines nor Mr. Howard signed the Pretrial Protective Order even though they are parties in the securities litigation.

More importantly, however, the OFHEO Protective Order is narrower in scope than the Pretrial Protective Order, and deals with issues specific to the production of OFHEO agency documents.  For example, paragraph 18 of the OFHEO Protective Order reserves to OFHEO the right to make criminal referral to the U.S. Department of Justice for the improper disclosure of OFHEO Confidential Documents – a remedy specific and unique to confidential government records, and one not provided for in the Pretrial Protective Order.

request that Defendants' counsel confer to identify overlapping requests and to consolidate their respective requests to enable the agency to provide a unified response. *Id.* Messrs. Howard and Raines have not cooperated in this effort. *Id.*

Similar to Plaintiffs' situation, OFHEO informed Defendants that their subpoenas did not comport with OFHEO's *Touhy* regulations, which require that requests for documents be made in a letter to the Director. *See, e.g.* Letter from Reid to Downey of August 2, 2006, attached as Exh. B to Raines's Mot. to Compel. Unlike Plaintiffs, however, Defendants neither cooperated nor complied with OFHEO's requests that they transform their subpoenas into a proper *Touhy* request for documents. Furthermore, Defendants did not attempt to narrow their requests or to explain why certain documents could not be obtained from other sources. *See, e.g.*, Letter from Downey to Wright of July 21, 2006, attached as Exh. H to Raines's Mot. to Compel.

As they stand, Defendants' three subpoenas are overly broad and unduly burdensome. If enforced, Defendants' subpoenas would require the collection and review of agency-generated electronic documents that number conservatively in the hundreds of thousands and those documents are not maintained by the agency in a searchable electronic database. A similar amount of hard copy documents that are un-cataloged and located in various staff offices, have to be collected and reviewed for responsiveness and the assertion of applicable privileges. For example, Defendant Howard's subpoena seeks "all documents concerning Fannie Mae's compensation of officers and/or directors of Fannie Mae from January 1, 1998 through January 31, 2005," and "all documents from 1995 through 2005 concerning OFHEO's evaluation of Fannie Mae's accounting practices, policies, and/or procedures, including but not limited to OFHEO's evaluation of the appropriateness of Fannie Mae's accounting for derivatives under Financial Accounting Standards No. 133 and its accounting under Financial Accounting

Standard No. 91." *See* Howard's June 21ˢᵗ Subpoena – Request Nos. 3 and 5.  Mr. Raines seeks this same type of documents.  *See* Raines' July 18ᵗʰ Subpoena – Request No. 9.  As currently crafted, these document requests capture every single piece of paper and electronic records, dating back 11 years.

Furthermore, other requests in the three subpoenas seek documents that may be subject to the examination privilege (*e.g.*, the request for examination work papers for the time period 1998-2004).  *See* Raines's July 18ᵗʰ Subpoena – Request No. 7; Howard's June 21ˢᵗ Subpoena – Request No. 7.  Under OFHEO regulations, the agency is required to determine whether a document contains information relating to a trade secret or privileged or confidential commercial and financial information obtained from a person before the agency can release the document in response to a document request.  12 C.F.R. § 1703.11(b)(4).  Responding to these subpoenas would require reviewing all potentially responsive examination work papers both to capture factual information that can be extracted from examiner analysis and recommendations,  and to assert any applicable privileges.  OFHEO would have to review the documents not only for the examiner, pre-decisional and investigative privileges particular to this agency, but also for privilege under the Trade Secrets Act, commercial confidentiality, attorney-client privileges, and other privacy issues that the agency must assert as applicable under the law.

Other equally overbroad requests would require an office-by-office search of the files of current and former examiners and staff that are not maintained centrally or in a searchable database (whether in electronic or hard copy format) in order to undertake a document-by-document review for responsiveness and, again, for the assertion of appropriate privileges. For example, Mr. Howard's subpoena seeks, *inter alia* and without date limitations, "[a]ll documents concerning communications with or relating to Franklin D. Raines, J. Timothy Howard, and/or

Leanne Spencer." *See* Howard's June 21st Subpoena – Request No. 2. Mr. Raines' subpoena

seeks similar documents. *See* Raines' July 18th Subpoena – Request No. 14 (seeking "all

documents reflecting communication between OFHEO and Mr. Franklin D. Raines."). Because

these individuals were employed as senior executives by Fannie Mae throughout the entire

existence of OFHEO, this request would require a search of most of the agency's records. These

requests make no attempt to limit the workpapers sought to those that might be relevant in the

litigation, or even to those documents that are retained by the agency as backup files for

examinations. Instead, these requests are nothing short of a fishing expedition. In short,

Defendants' subpoenas seek the production of at least hundreds of thousands, but potentially

millions, of pages of agency documents, spanning more than 10 years of agency operations and

covering myriad and diverse supervisory, regulatory and other issues. Reid Decl. ¶ 16.

### III. Argument

**A.     Defendants' Motions to Compel Are Procedurally Defective.**

Citing *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006), Defendants argue that

OFHEO is a "person**"** under Fed. R. Civ. P. 45 and that OFHEO must comply with their Rule 45

subpoenas. *See* Howard's Mot. to Compel at 4-5, Raines' Mot. to Compel at 15. Defendants

misapply *Yousuf* here. OFHEO does not dispute that it is a person for purposes of Rule 45;

however, under the law, Defendants' Motions to Compel are procedurally defective.

Specifically, under 5 U.S.C. § 301, agencies are authorized to issue regulations regarding

whether government employees or documents may be subpoenaed from the federal government.

The regulations created by OFHEO under this provision are found at 12 C.F.R. § 1703.34. The

use of these regulations were ratified by the U.S. Supreme Court in *United States ex rel. Touhy v.

Ragen*, 340 U.S. 462 (1951), and the regulations are informally known as "*Touhy* regulations."

The are two primary principles under the *Touhy* regulations.  First, a litigant must substantially comply with *Touhy* regulations prior to seeking court relief regarding the production of evidence.  *See Davis v. Braswell Motor Freight Lines, Inc.*, 363 F.2d 600, 603 (5th Cir. 1966); *Marcoux v. Mid-States Livestock*, 66 F.R.D. 573, 575 n.1 (W.D. Mo. 1975); *see also United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir.), *cert. denied*, 459 U.S. 973 (1982) (criminal case; no error in court's decision to not compel testimony where defendant did not comply with *Touhy* regulations).

Second, and most importantly, a court cannot compel a subpoenaed agency employee to disobey applicable *Touhy* regulations or an agency decision made under such regulations.  Thus, a subpoena cannot be enforced against an employee constrained by *Touhy* regulations.  *See, e.g., Touhy*, 340 U.S. at 467-70; *Boron Oil Co. v. Downie*, 873 F.2d 67, 69-70 (4th Cir. 1989) (citing cases); *Edwards v. United States Dep't of Justice*, 43 F.3d 312, 316-17 (7th Cir. 1994); *In re Boeh*, 25 F.3d 761, 763, 766-67 (9th Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995).

Most recently, in *Yousuf,* the D.C. Circuit held that the government was a "person" for the purposes of a Rule 45 subpoena, thereby finding that federal agencies *could* be subject to such a subpoena. 451 F.3d at 255-57.  Notably, however, the D.C. Circuit recognized that "the Supreme Court in *Touhy* assumed a federal agency could be subject to a third-party subpoena *duces tecum*, for otherwise the agency would not need to promulgate regulations for centralizing its response to such a subpoena." *Yousuf*, 451 F.3d at 257.  With this recognition, the D.C. Circuit reinforced the continued validity and governance of an agency's *Touhy* regulations and implied that when an agency is subject to a third-party subpoena, the agency's *Touhy* regulations are the appropriate vehicle through which to respond to such a subpoena.  *Id*.

Indeed, another court in this jurisdiction recently held that a litigant may not simply bypass a federal agency's *Touhy* regulations by subpoenaing the agency. *See In re Subpoenas in Securities and Exchange Commission v. Selden*, No. 05-0476, 2006 U.S. Dist. LEXIS 75235, * 9 n.6 (D.D.C. Aug. 16, 2006) ("*Selden*") (noting that defendant "misapprehends the Court of Appeals' decision in *Yousuf*" when he cited that case for the proposition that defendant was entitled to immediate access to the documents he sought) (citing *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006)). In *Selden,* Defendant sought to compel compliance with a Rule 45 subpoena that he had served on the FDA (a third party) for documents to be used in an SEC enforcement action. *Id*. Defendant argued that he was entitled to immediate access to the documents because his subpoenas allowed him to bypass the FDA's *Touhy* process. *Id*. at *9. The court rejected this argument and noted that the FDA's *Touhy* regulations provided that "[a]ny request for records of the [FDA], whether it be by letter or by a subpoena *duces tecum* or by any other writing, shall be handled pursuant to the procedures established in [the FDA's regulations]." *Id*. at *8 (citing 21 C.F.R. § 20.2(a)). The court then concluded that "the FDA must treat the subpoenas as requests for documents pursuant to its *Touhy* regulations and respond in kind." *Id.* The court further noted that defendant "must wait for the FDA to process his subpoenas under its *Touhy* regulations." *Id*. at *9 n.6 (holding that a government agency's *Touhy* regulations were "the vehicle through which a federal agency responds to a subpoena *duces tecum*.").

Here, Defendants' Motions to Compel are defective because OFHEO's regulations do not provide an avenue for producing documents sought by a subpoena. Rather, all such document requests (including any subpoena) served on OFHEO – in a litigation where it is not a party – can only be made through a letter sent to OFHEO's Director. The letter must also provide the

information specified in OFHEO's regulations.  12 C.F.R. § 1703.13(b).  Defendants' attempt to

short-circuit OFHEO's *Touhy* regulations by their Motions to Compel (i.e., subpoenas) should

not be countenanced by the Court.  *See Houston Business Journal*, 86 F.3d at 1212 n.4. (holding

that "[u]nder *Touhy*, neither state-court nor federal court litigants may obtain a subpoena *ad*

*testificandum* against an employee of a federal agency that has enacted a *Touhy* regulation.").

Furthermore, the appropriate challenge to OFHEO's determination is for Defendants to file a

separate APA action, not by moving to compel.  Under these circumstances, the Court should

deny Defendants' Motions to Compel as procedurally defective and quash their subpoenas – the

underlying subject of the Motions to Compel.

### B.  OFHEO's *Touhy* Regulations Provide the Proper Process and Procedure for Agency Document Production

Relying on *Houston Business Journal*, Defendants argue that OFHEO cannot hide behind

its regulation to withhold documents sought by their subpoenas.  *See* Howard's Mot. to Compel

at 5; Raines' Mot. to Compel at 10-12.  Defendants mischaracterize OFHEO's position and

misread *Houston Business Journal.*   In essence, in *Houston Business Journal*, the D.C. Circuit

held that a federal agency cannot invoke its own regulations to withhold documents because that

would conflict with Fed. R. Civ. P. 45 and exceed the agency's authority under the

Housekeeping Statute.  86 F.3d  at 1212.[3]

However, Rule 45(c)(1) requires that "[a] party or an attorney responsible for the

issuance and service of a subpoena shall take reasonable steps to <u>avoid imposing undue burden</u> . .

. on a person subject to that subpoena."  Fed. R. Civ. P. 45(c)(1) (emphasis added).  Under this

---

[3]     The reasoning in *Houston Business Journal* concerning federal court litigation subpoenas is arguably non-binding dicta because, in that case, the federal subpoenas were issued in support of a state court litigation. Accordingly, the discussion of subpoenas issued in support of federal court litigation goes beyond the facts of the case and is not necessary to its resolution.

mandate, OFHEO's *Touhy* regulations, 12 C.F.R. § 1703.34 *et seq.*, neither conflict with Rule 45 nor exceed its authority under the Housekeeping Statute.  Indeed, OFHEO's *Touhy* regulations provide a mechanism for OFHEO to produce documents in legal proceedings in which it is not a named party.  Specifically, Section 1703.34(b) provides that document requests must be made via "a letter to the Director setting forth the title of the case, the forum, the requesting party's interest in the case, a summary of the issues in the litigation, the reasons for the request, and a showing that the desired testimony, documents, or information are not reasonably available from any other source."  12 C.F.R. § 1703.34(b).

More importantly, § 1703.34(c) authorizes OFEHO to consult with the "requesting party . . . to refine and limit the request <u>so that compliance is less burdensome</u>."  12 C.F.R. § 1703.34(c) (emphasis added).  This requirement is consistent with Rule 45's mandate that Defendants must "take steps to avoid imposing undue burden" on OFHEO.  These are straightforward requirements that can be easily followed.  This provision also allows OFHEO's Director to not comply with any document request where the requesting party failed to cooperate in "good faith."  12 C.F.R. § 1703.34(c).  As discussed *infra*, unlike Plaintiffs, Defendants have neither cooperated with OFHEO nor taken any step to refine their subpoenas to "avoid imposing undue burden" on OFHEO.  *See* Fed. R. Civ. P. 45(c)(1).  However, OFHEO stands ready to cooperate with Defendants to narrow the scope of their subpoenas and to process Defendants' subpoenas once Defendants satisfied OFHEO's *Touhy* regulations.

**C.    Defendants' Subpoenas Do Not Comply with OFHEO's *Touhy* Regulations.**

There cannot be any serious dispute that Defendants' subpoenas are not proper *Touhy* requests for documents.  In fact, after receiving Defendants' subpoenas, OFHEO informed Defendants that their subpoenas did not comply with the procedural and substantive

requirements of 12 C.F.R. 1703.34(b), and did not provide sufficient information for OFHEO to produce the requested documents.[4]

Specifically, OFHEO requested that Defendants "comply with [OFHEO's] *Touhy* regulations in making requests for production of documents or information," and noted that "OFHEO stands ready to respond promptly to a document request on behalf of Mr. Raines that contains the necessary information, should he elect to submit such a request."[5]  Moreover, as required under § 1703.34(c), OFHEO has consistently requested that Defendants refine and limit their subpoenas and coordinate among themselves and with Plaintiffs to avoid making duplicative requests.  More significantly, the requested cooperation would allow OFHEO to respond effectively and efficiently to the numerous document categories sought by the parties in this expansive securities litigation.[6]  Defendants, however, characterize OFHEO's invitation to comply with its *Touhy* regulation and to cooperate with others as a refusal to produce the documents.  *See* Raines' Motion to Compel at 10-14.  That characterization is simply inaccurate. OFHEO has consistently stated that it is not denying the document request, but simply requesting that the Defendants comply with its regulations.  *See* Reid's August 2nd Letter to Downey, attached as Exh. B to Raines Mot. to Compel; July 11th Letter, attached as Exh. 2 to Howard's Mot. to Compel.

---

[4]     *See also*  Letter from Wright to Downey of July 19, 2006, and Letter from Reid to Downey of August 2, 2006, attached as Exhs. A and B to Raines' Mot. to Compel; and Exh. 2 to Howard's Mot. to Compel).

[5]     *See, e.g.*, Letter from Reid to Downey of August 2, 2006, attached as Exh B to Raines' Mot. to Compel. *See also* Letter from Wright to Delinsky of July 11, 2006, attached as  Exh. 2 to Howard's Mot. to Compel (noting "OHFEO will act appropriately and promptly upon receipt of a request for documents properly submitted under OFHEO regulations.").

[6]     *See, e.g.*,  Reid Decl. ¶¶ 12, 14; Letter from Reid to Downey of  August 2, 2006, attached as Exh B to Raines' Mot. to Compel; and Letter from Reid to Downey of August 7, 2006, attached as Exh C to Raines' Mot. to Compel.

As an example, because Plaintiffs have submitted a proper *Touhy* request, OFHEO is currently working to identify and produce to Plaintiffs the transcripts of the formal OFHEO interviews.  This production will commence after the OFHEO Protective Order is signed by the parties and entered by the Court.  *Id.*

In any event, Defendants have disregarded OFHEO's requests for further information, clarification, refinement and narrowing of their subpoenas.  For instance, Defendants have simply referred OFHEO to "[t]he attached complaints against [defendants which] provide a summary of the issues in this litigation" as a response to OFHEO's request for a summary of the issues.[7]  Indeed, Defendants' mere reference to a 300- page complaint may be contrasted with Plaintiffs' compliance with OFHEO's regulations by (1) reframing their subpoena into a letter form that conforms with 12 C.F.R. § 1703.34, (2) continuing to cooperate with OFHEO regarding the documents Plaintiffs seek, (3) agreeing to prioritize their requests, and (4) refining and narrowing their original subpoena requests.  Reid Delcaration ¶¶ 6-10.

Moreover, Defendants have not explained why they could not obtain the requested materials from another source and erroneously suggest that "Plaintiffs' document request is simply silent with respect to this requirement."  Raines' Mot. to Com. at 18.  Again, while Plaintiffs' document requests are not a model of compliance with OFHEO's *Touhy* regulations, Plaintiffs have responded to OFHEO's requests for further information, including an explanation as to why certain materials are not readily available from another source.[8]  For example,

---

[7]    *See* Letters from Downey to Lockhart of July 17 and July 24th, 2006, attached as Exh D & E to Raines' Mot. to Compel, respectively; *see also* Letter from Salky to Pollard of June 21, 2006, attached as Exh. 2 to Howard's Mot. to Compel ("For your information, we also enclose a copy of the Complaint against Mr. Howard in this matter.").

[8]    For example, Defendant Raines, in his July 18, 2006 subpoena, requested "[t]ranscripts of all "formal" interviews conducted by the SEC" (Raine's July 18th Subpoena – Request No. 3), as well as "[a]ll

(Continued…)

Plaintiffs explained that they *have* sought certain documents from Fannie Mae and Defendants without success.  Letter from Corwin to Newman of July 6, 2006, *supra*, at 1.

In short, OFHEO cannot respond to any document request made with a subpoena that does not comport with its *Touhy* regulations.  When Defendants cooperate with OFHEO and submit a proper *Touhy* request for documents, OFHEO stands ready to cooperate and produce documents under its regulations.  Given these facts, the Court should deny Defendants' Motions to Compel and quash their subpoenas.

### D.     OFHEO's Action Under Its *Touhy* Regulations Was Not Arbitrary and Capricious.

After OFHEO makes its decision on Defendants' subpoenas, that decision may be subject to judicial review.  But the waiver of sovereign immunity for the courts to review the agency decision is provided by the Administrative Procedure Act.  *See Yousuf*, 451 F.2d at 251 (holding that an agency's refusal to comply with a subpoena constitutes a final agency decision ripe for review under the APA); *see also Houston Business Journal*, 86 F.3d at 1212 n.4 (holding that

---

(Continued…)

documents cited or referenced in OFHEO's [] reports concerning Fannie Mae." *See also* Raines July 18th Subpoena – Request No. 4..  With respect to the former, Mr. Raines has failed to explain why he cannot obtain these documents directly from the SEC.  With respect to the latter, and as Mr. Raines notes, the documents are clearly cited and/or referenced in the publicly available OFHEO reports, and consist largely of documents that are either publicly available (*e.g*,. press releases, newspaper articles, etc., and/or documents that were received from Fannie Mae during the OFHEO Special Examination.).  Mr. Raines has not explained why he could not seek these documents through public sources, or directly from Fannie Mae, a party to this litigation, which is a requirement of the OFHEO *Touhy* regulations.

Similarly, Defendant Howard, in his June 21, 2006 subpoena, requested "[a]ll documents concerning the performance of officers and/or directors of Fannie Mae from January 1, 1998 through January 31, 2005," (Howard June 21st Subpoena —Request No. 1), as well as "[a]ll transcripts of interviews conducted by the Securities & Exchange Commission," *id.* at Request No. 10.  With respect to the former, Mr. Howard has failed to explain why such documents are not available from Fannie Mae. With respect to the latter, Mr. Howard has failed to explain why such documents are unavailable from the SEC.

"[u]nder *Touhy*, neither state-court nor federal-court litigants may obtain a subpoena *ad testificandum* against an employee of a federal agency that has enacted a *Touhy* regulation. In that situation, the litigant must proceed under the APA, and the federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard.") (citations omitted). *Cf., Comsat Corp. v. National Science Foundation*, 190 F.3d 269, 277-78 (4th Cir. 1999); *Davis Enterprises v. EPA*, 877 F.2d 1181, 1186 (3rd Cir. 1989), and *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994). There should be no need to depart from this review model, notwithstanding a federal court's subpoena authority under Fed. R. Civ. P. 45, where, as here, an agency's *Touhy* regulation did not conflict with Rule 45. *See Houston Business Journal,* 86 F.3d at 1212.[9]

Here, guided by its *Touhy* regulations, OFHEO reached out to Defendants and implored them to comply with those regulations. These overtures were rebuffed. Under these circumstances, OFHEO has not acted arbitrarily or capriciously when following its own *Touhy* regulations

## E.    OFHEO Has Not Waived Any Objections With Respect to Defendants' Document Requests

Defendants argue that OFHEO has waived any privilege objections for failure to respond to their subpoenas. *See* Raines Mot. to Compel at 19-20. This argument lacks merit. Contrary to Defendants' contentions, OFHEO has not waived its objections to Defendants' subpoenas because they do not comply with OFHEO's *Touhy* regulations and are, therefore, invalid. To that extent, there is no deadline for when OFHEO must lodge its  objections to an invalid

---

[9]    It should be noted that, at the time of the *Houston Business Journal* opinion, the government was not advancing the "United States is not a person under Rule 45" argument. That argument emerged after the D. C. Circuit's opinion in *Al Fayed v. CIA*, 229 F.3d 272 (D.C. Cir. 2000). Accordingly, the *Yousuf* decision had no impact whatsoever on the vitality of *Houston Business Journal*.

document request.  Even assuming that there was a deadline for OFHEO to object and it has

expired, the Court may still "in unusual circumstance and for good cause" consider such

objections.  Indeed, in *Yousuf*, the D.C. Circuit listed the three factors as guides in this inquiry,

namely, "whether (1) the subpoena is 'overbroad on its face and exceeds the bounds of fair

discovery'; (2) the subpoenaed witness is a nonparty acting in good faith; and (3) counsel for the

witness was in contact with counsel for the party issuing the subpoena prior to filing its formal

objection." *Yousuf*, 451 F.3d at 252.   Applying the three factors here shows that, even assuming

*arguendo* that OFHEO's objections were late, there is good cause to consider them.

First, Defendants' subpoenas are overbroad and exceed the bounds of fair discovery, and

thus present an unreasonable burden for OFHEO to meet.  For example, Mr. Raines' July 18th

Subpoena requests "all examination workpapers prepared or created by OFHEO personnel or

agents of OFHEO in connection with annual examinations of Fannie Mae from 1998 to 2004"

(No. 7); all examination work papers specifically related to various safety and soundness matters

including compensation practices (No. 8); all documents on accounting practices and policies

(No. 9); internal controls (No. 10); and internal and external audit functions (No.11).  Mr.

Howard made similar requests in his subpoena.  *See* Howard June 21st Subpoena – Request Nos.

4, 5, 7.  These requests are so broadly worded as to capture most of the examination-related

documents generated by or – for that matter reviewed by – any staff member in the agency for

seven years.  In fact, it is due in large part to the overbreadth of Defendants' document requests

that OFHEO has been unable to respond to such requests.  Defendants refused to narrow their

subpoenas.

Second, OFHEO is a nonparty acting in good faith.  Indeed, OFHEO has repeatedly

requested that Defendants provide the agency with more information and narrow and refine their

requests so that OFHEO may "respond promptly" to such requests.  *See* Letter from Reid to Downey of August 7, 2006, *supra*.  Furthermore, OFHEO has attempted to facilitate the coordination of requests between Defendants, and with Plaintiffs, in an effort to both conserve agency resources and produce documents as quickly and efficiently as possible.

Finally, OFHEO has discussed with Defendants' counsel on an ongoing basis the need to transform Defendants' Rule 45 subpoenas into appropriately crafted *Touhy* requests to which OFHEO can properly respond.  As such, even if OFHEO's objections were to be deemed untimely, this Court still may, and rightly should, consider them.

### F.    Defendants' Document Requests are Unduly Burdensome and Subject to Examiner Privilege.

Defendants' subpoenas should be quashed because they are overbroad, unduly burdensome, and subject to numerous privileges including, but not limited to, the examination privilege.   As discussed in Section II.C., *supra*, these requests are vastly overbroad, and would shift to the government the burden of identifying and producing documents when Defendants could themselves further refine and define their requests, as well as obtain documents from other, publicly available resources.

Furthermore, many of Defendants' requests also, on their face, seek privileged materials. For example, Defendant Howard has requested all documents concerning, *inter alia*, OFHEO's examination, review, analysis, evaluation and assessment of a variety of Fannie Mae's past practices, including with respect to compensation, internal controls, and board governance.  *See* Howard's June 21st Subpoena – Request Nos. 3, 4, 5 & 7.  Mr. Raines makes similar requests. *See* Raines' July 18th Subpoena – Request No. 7-11.  Aside from the overly broad and unduly burdensome nature of the requests, many of the requested documents fall squarely within OFHEO's examination privilege.

19

Indeed, one of OFHEO's key functions is to ensure that Fannie Mae and Freddie Mac are adequately capitalized and operating safely. *See* 12 U.S.C. § 4513(a). One major tool that is available to OFHEO in carrying out this function is conducting safety and soundness examinations. In order to facilitate such examinations, OFHEO's analyses, reports, and supervisory communications are subject to an examination privilege.[10] *See generally, Principe v. Crossland Savings, FSB*, 149 F.R.D. 444, 450 (E.D.N.Y. 1993) (noting that the bank examination privilege "clearly protects from disclosure analyses, opinions and recommendations contained in internal agency documents relating to bank examinations, and courts will continue to withhold from discovery information which is not primarily factual."). The examination privilege serves the necessary and legitimate goals of allowing OFHEO to supervise and regulate Fannie Mae and Freddie Mac in an unfettered manner and allowing the regulated entities to be open and forthcoming to the regulator. Many of the documents which Defendants seek in their requests are subject to this privilege.

---

[10]    Indeed, the D.C. Circuit has opined:

Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency. Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*In re Subpoena Served Upon the Comptroller of the Currency, and the Secretary of the Board of Governors of the Federal Reserve System*, 967 F.2d 630, 633 (D.C. Cir. 1992). The Bank Examination Privilege is applicable to OFHEO's safety and soundness supervision of Fannie Mae and Freddie Mac. See 12 U.S.C. § 4517(d)(clarifying that OFHEO examiners have the same authorities as Federal Reserve examiners); 12 U.S.C. § 4525 (providing that OFHEO is "considered an agency responsible for the regulation or supervision of financial institutions" for purposes of the Freedom of Information Act–thus clarifying that it may claim exemption 8 (examination privilege) for its records.)

Moreover, and as noted *supra*, Plaintiffs' counsel has prepared a draft protective order ("OFHEO Protective Order") to facilitate the production of confidential agency documents. That draft protective order has been negotiated with OFHEO by counsel for Plaintiffs and Fannie Mae, and has been circulated to all parties, including Defendants. Once signed by the parties and entered by the Court, the protective order will govern the terms of the document production by OFHEO. However, to date, Defendants have not signed or commented upon the OFHEO Protective Order.[11]

Clearly, then, OFHEO is preparing to be as responsive as possible to any requests for documents submitted in accordance with its *Touhy* regulations, while at the same time being conscious of its own examination privilege and the terms of confidentiality agreements currently in place.[12]

## IV. Conclusion

For the foregoing reasons, this Court should deny Defendants' Motions to Compel and quash their subpoenas

Dated: September 13, 2006.                    Respectfully Submitted,


    /s/   Kenneth L. Wainstein
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

---

[11]    It is also interesting to note that Defendants have not signed the Pretrial Protective Order already entered by this Court, even though most of the other defendants in the securities litigations have done so.

[12]    Given the burdensomeness nature of the document requests, the Court should shift the financial burden of production to Defendants and require them to pay OFHEO's reasonable copying and labor costs. *See Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001).

    /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

    /s/  John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for the Office of Federal Housing
Enterprises Oversight

OF COUNSEL:

David Felt
Charlotte Reid

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
|
In re Federal National Mortgage       |    MDL No. 1668
Association Securities, Derivative and |
"ERISA" Litigation                     |
_____|
|
|    Consolidated Civil Action No. 1:04-cv-01639
In re Fannie Mae Securities Litigation |
|    Judge Richard J. Leon
|
_____|

### ORDER DENYING MOTIONS TO COMPEL FILED BY
### DEFENDANTS J. TIMOTHY HOWARD AND FRANKLIN D. RAINES
### AND GRANTING OFHEO'S MOTION TO QUASH

Upon consideration of the Motions to Compel filed Defendants' J. Timothy Howard and

Franklin D. Raines, OFHEO's Opposition and Motion to Quash filed thereto, and the entire

record herein, it is this _____ day, of _____, 2006,

ORDERED that the Motions to Compel filed by Defendants' J. Timothy Howard (Dkt.

No. 195) and Franklin D. Raines (Dkt. No 219) be and are hereby DENIED; and it is

FURTHER ORDERED that OFHEO's Motion to Quash be and is hereby GRANTED.

SO ORDERED.


_____
U.S. District Judge