## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FANNIE MAE,
3900 Wisconsin Avenue, N.W.
Washington, DC 20016

*Plaintiff,*

v.

KPMG LLP,
2001 M. Street, N.W.
Washington, DC 20036

*Defendant.*

No.   :    -CV-_____

CASE NUMBER  1:06CV02111

JUDGE: Richard J. Leon

DECK TYPE: Contract

DATE STAMP: 12/12/2006

## NOTICE OF REMOVAL

Defendant KPMG LLP hereby gives notice that:

1.      KPMG is the defendant in *Fannie Mae v. KPMG LLP*, which was filed in the Superior Court of the District of Columbia on December 12, 2006. A copy of the Complaint is attached as Exhibit A.

2.      This action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) because this is a civil action over which this Court has original jurisdiction by reason of 28 U.S.C. § 1331 and 12 U.S.C. § 1723a(a).

3.      Plaintiff Fannie Mae is a corporation organized by, and existing under, an Act of the Congress of the United States, 12 U.S.C. §§ 1716, *et seq.* By federal statute, plaintiff's corporate charter grants it authority "to sue and to be sued, and to complain and defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1723a(a). Under the Supreme Court's decision in *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 255 (1992), that provision confers federal jurisdiction over cases in which plaintiff is a party under the settled rule that "a congressional charter's 'sue and be sued' provision . . . grant[s] federal court jurisdiction if . . . it specifically mentions the federal courts." *Id.* at 255.

4.    In *American Red Cross*, the Supreme Court held that a charter conferring authority on the Red Cross to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States," *id.* at 251, created federal jurisdiction over "all cases to which the Red Cross is a party," *id.* at 248. Fannie Mae's corporate charter similarly "expressly authorize[s] the organization to sue and be sued in federal courts . . . and suffices to confer federal jurisdiction" over this action. *Id.* at 257.

5.    The Complaint was served on counsel for KPMG on December 12, 2006. Evidence of service is attached as Exhibit B. This Notice of Removal is filed within 30 days of receipt of the Complaint and is timely filed under 28 U.S.C. § 1446(b).

6.    The Complaint attached as Exhibit A is the only state court paper served on KPMG at the time of removal.

7.    KPMG will give written notice of the filing of this notice to plaintiff as required by 28 U.S.C. § 1446(d).

8.    A true copy of this notice will also be filed with the Clerk of the Superior Court of the District of Columbia as required by 28 U.S.C. § 1446(d).

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 88 because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

WHEREFORE, KPMG respectfully requests that this action proceed in this Court as an action properly removed to it.

Dated: December 12, 2006

_____
F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar. No. 468351)
Melanie L. Katsur (D.C. Bar No. 484969)

Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for KPMG LLP*

# EXHIBIT A

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

RECEIVED

2006 DEC 12 A 12: 03

DISTRICT OF COLUMBIA
COURTS

|  |  |  |
|---|---|---|
| FANNIE MAE<br>3900 Wisconsin Avenue, N.W.<br>Washington, D.C. 20016 | ) ) ) ) |  |
| Plaintiff, | ) ) | Civil Action No. _____ |
| v. | ) ) ) |  |
| KPMG LLP<br>2001 M Street, N.W.<br>Washington, D.C. 20036 | ) ) ) ) |  |
| Defendant. | ) ) ) |  |

## COMPLAINT AND JURY DEMAND

Plaintiff Fannie Mae, through undersigned counsel, for its Complaint against KPMG LLP ("KPMG"), hereby alleges as follows:

### Introduction

1.      Fannie Mae brings this action to recover for the professional negligence of KPMG, Fannie Mae's former outside auditor. KPMG's negligence has forced Fannie Mae to undertake one of the largest accounting restatements in history. Following review by the Securities & Exchange Commission ("SEC") and other accounting firms, Fannie Mae has determined that at least thirty accounting policies and practices approved by KPMG were not consistent with generally accepted accounting principles ("GAAP"). As a result of KPMG's negligence and breach of its duties to Fannie Mae's Audit Committee, Fannie Mae has suffered more than $2 billion in damages, including over $1 billion of costs to recreate and correct the historical financial statements that KPMG negligently approved. The SEC's Chief Accountant

has testified to Congress that the accounting for two of Fannie Mae's most critical policies – policies which KPMG approved – was "outside professional accounting standards." In a meeting with representatives of KPMG and Fannie Mae, the SEC's Chief Accountant explained that the accounting for one of those policies was "not even on the page" of the outer bounds of compliance with GAAP. That accounting policy had been approved by KPMG prior to its implementation. It is difficult to imagine a clearer case of accounting malpractice.

2.     Fannie Mae engages in millions of financial transactions every year in order to meet its core mission of increasing homeownership among low-income and middle-income Americans. Because the nature of Fannie Mae's business involves complex accounting issues, Fannie Mae retained experienced, professional accountants to review and analyze Fannie Mae's critical accounting policies and practices, and to act as an independent "watchdog." Fannie Mae relied on KPMG because KPMG purportedly had particular expertise in the accounting standards most applicable to the mortgage industry. For more than thirty years, Fannie Mae turned to KPMG to analyze its accounting policies and perform that critical watchdog function, and Fannie Mae paid KPMG tens of millions of dollars to do so. Moreover, because of its long history with Fannie Mae, KPMG was intimately familiar with Fannie Mae's accounting policies, day-to-day practices, and personnel.

3.     Each year, KPMG promised Fannie Mae's Audit Committee that KPMG would analyze Fannie Mae's accounting policies, that KPMG would review all significant estimates made by management, and that KPMG would scrutinize particular accounting policies that were most critical to Fannie Mae's business. KPMG repeatedly informed the Audit Committee that KPMG had completed careful audits of Fannie Mae's financial records and accounting practices, and that all was well. KPMG reported that it had analyzed not only Fannie Mae's financial

2

reports, but also the "quality" of the accounting principles used. KPMG also stated year after year that there were no material weaknesses in Fannie Mae's internal accounting controls.

4.    Fannie Mae's Audit Committee not only relied upon KPMG's clean audit opinions from year to year, but also relied on KPMG to identify the "significant" and "key" accounting policies and practices that KPMG would scrutinize most closely. KPMG assured Fannie Mae that Fannie Mae's accounting in each of those critical areas was correct.

5.    KPMG's repeated assurances to the Audit Committee have proven to be dramatically wrong. Fannie Mae has been forced to restate its financial statements to correct more than thirty accounting errors that KPMG either missed or affirmatively approved. KPMG approved accounting policies that were not compliant with GAAP for *nearly every major accounting standard* applicable to the mortgage financing business, including policies KPMG itself had identified as "significant" or "critical."

6.    One such policy involved Fannie Mae's "hedges" – financial transactions through which Fannie Mae attempts to limit its exposure to fluctuations in interest rates. As KPMG understood, those hedging transactions are essential to Fannie Mae's business. When word came that a new accounting rule concerning hedge transactions, known as Statement of Financial Accounting Standards No. 133 ("FAS 133"), would take effect, Fannie Mae needed expert advice about how to comply with the new rule. Fannie Mae turned to KPMG. Separate and apart from its regular audit services, KPMG undertook a special consulting project to analyze all of Fannie Mae's *proposed* hedging policies to ensure that they complied with the new rule. After purporting to review Fannie Mae's proposed policies, assess Fannie Mae's systems, and test the relevant accounting, KPMG concluded that Fannie Mae's new policies would comply with FAS 133.

3

7.      Having approved in advance Fannie Mae's proposed policies to account for hedge transactions, KPMG thereafter claimed to have independently audited Fannie Mae's hedging policies and practices. Replacing KPMG's "consulting engagement" hat with its "auditor" hat, KPMG approved Fannie Mae's financial statements – including the new FAS 133 accounting – year after year.

8.      Thus, KPMG knew that hedge transactions were critical to Fannie Mae's business, knew that FAS 133 was critical to Fannie Mae's financial accounting, knew that Fannie Mae was relying upon KPMG for expert advice concerning how to implement FAS 133, and knew that Fannie Mae's Audit Committee was relying upon KPMG to conduct an especially careful audit of Fannie Mae's accounting for hedge transactions. Nonetheless, KPMG failed to use reasonable skill and care in carrying out its duties. As a result, the SEC determined that the accounting in Fannie Mae's financial statements – accounting that KPMG approved – in fact was not correct and had to be restated.

9.      Another critical accounting issue for Fannie Mae was its "amortization" accounting, which is governed by FAS 91. Amortization accounting involves accounting for purchase discounts or premiums and other deferred price adjustments in mortgages. Because of the obvious significance of amortization accounting to Fannie Mae's business, Fannie Mae's Audit Committee again looked to KPMG to assure that the accounting was correct. KPMG represented to Fannie Mae's Audit Committee that KPMG paid careful attention to all "significant estimates" made by management, and in particular to Fannie Mae's amortization accounting. Year after year, KPMG concluded that Fannie Mae's financial statements were compliant with GAAP, including the amortization accounting.

10.    Although KPMG knew that amortization accounting was critical to Fannie Mae's business, it once again failed to comply with the basic standards of the audit profession, and it approved accounting policies that departed from the requirements of GAAP. As a result, Fannie Mae was required to restate the amortization accounting that KPMG had audited and approved.

11.    KPMG also failed to exercise reasonable skill and care in connection with numerous additional accounting policies and practices, including GAAP standards known as FAS 115, 125, 140, and 149. As KPMG well understood, these standards govern the core of Fannie Mae's operations, such as accounting for mortgage-backed-securities, loans, and trusts. As a result of KPMG's widespread negligence, Fannie Mae has been forced to restate its accounting for virtually every key accounting policy affecting its business.

12.    KPMG compounded its repeated acts of professional negligence when Fannie Mae's Audit Committee asked specific questions about whether there was any reason to believe that Fannie Mae had accounting problems similar to those that had come to light at Freddie Mac. In 2003, Freddie Mac, which also is engaged in the business of purchasing mortgages for sale to investors, issued a restatement of its financials. Fannie Mae specifically asked KPMG, its independent auditor "watchdog," to review Fannie Mae's internal assessment of the applicability of the Freddie Mac accounting flaws. KPMG again gave Fannie Mae a clean bill of health.

13.    KPMG's breach of its professional obligations in connection with its audits of Fannie Mae was not an isolated event. In December 2005, for example, Joseph Boyle, the KPMG "relationship partner" for KPMG's audit of Xerox Corp., agreed to an SEC fine and suspension from practice for failing to abide by professional audit standards in connection with KPMG's audit of Xerox. The SEC had charged KPMG and Mr. Boyle with failing to exercise proper care and independent skepticism in the audit services KPMG provided to Xerox. During

some of the years that Mr. Boyle presided over the failed audits of Xerox he also served as KPMG's "client service partner" for the Fannie Mae audit.

14.    In short, year after year KPMG assured Fannie Mae's Audit Committee that KPMG was paying careful attention to Fannie Mae's accounting policies and that KPMG was satisfied that Fannie Mae's accounting policies were properly implemented. Although it is no doubt true that some accounting rules are complex, that is one of the core reasons why the Audit Committee looked beyond the Fannie Mae internal accountants to seek advice from a professional, independent accounting firm that touted itself as a world leader in financial services audits. But KPMG failed to discharge its professional obligations and committed repeated and pervasive acts of professional negligence. KPMG engaged in a "check the box" approach to its audits, failing to exercise professional judgment and independent scrutiny. Instead of placing "special emphasis" on key accounting policies, as it had promised, KPMG often did nothing more than rubber-stamp Fannie Mae's internal accounting decisions, in defiance of KPMG's professional obligations and the very purpose for which it was hired.

15.    KPMG has acknowledged that Audit Committee members "are not and cannot be auditors," and that certifying compliance with accounting standards must be left to "professionally trained accountants." It follows that "professionally trained accountants" such as KPMG must be responsible for using the skill and care expected of them. It is no answer, as KPMG repeatedly professes in other litigation, that accountants cannot always be right when they make accounting judgments. KPMG failed on virtually every key accounting issue for Fannie Mae, and was entirely "off the page" on the policy it had been specially retained to analyze. As a result, Fannie Mae has undertaken one of the most expensive restatements in history. When purportedly expert, outside auditing professionals fail to identify and report errors

6

in a public company's key accounting policies, those professionals must be held to account for
their failures.

16.    As a result of KPMG's abdication of its professional obligations, Fannie Mae has
been compelled to undertake one of the largest financial restatements in history, totaling billions
of dollars; has been subjected to severe regulatory constraints on its ability to grow its business;
has expended hundreds of millions of dollars responding to multiple investigations; and has
suffered massive distraction and upheaval as it attempts to fulfill its mission.  The direct costs
associated with the restatement process alone exceed $1 billion, and Fannie Mae's total damages
exceed $2 billion.

**The Parties**

17.    Fannie Mae is a federally chartered government-sponsored enterprise with its
principal place of business in Washington, D.C.  Congress chartered Fannie Mae to help attain
the "national goal . . . of a decent home and a suitable living environment for every American
Family."

18.    Fannie Mae acts in the secondary mortgage market, purchasing home loans from
lenders – typically banks and other mortgage lenders – thereby giving those lenders a fresh
supply of cash to make new loans.  Since 1968, Fannie Mae has provided home financing in that
manner for millions of families across America, thereby reducing the cost of buying a home and
increasing homeownership rates, especially in central cities, rural areas, and other underserved
areas.

19.    Defendant KPMG, f/k/a KPMG Peat Marwick, is a limited liability partnership
with partners located in numerous states and in the District of Columbia.  KPMG is engaged in
the business of providing a variety of audit, tax, and advisory services, and it provided

7

accounting, audit, and other services to Fannie Mae from approximately 1969 through and until December 21, 2004, when it was terminated by Fannie Mae. KPMG's revenues between 2000 and 2005 exceeded $15 billion. KPMG has over 90 offices in the United States, more than 1,600 partners, and over 11,000 other client service professionals throughout the United States.

20.     KPMG is a member firm of KPMG International, one of the largest public accounting firms in the world. KPMG International has reported more than $60 billion in revenues between 2001 and 2005.

### Jurisdiction and Venue

21.     This Court has subject matter jurisdiction pursuant to D.C. Code § 11-921.

22.     Fannie Mae has the statutory right to bring suit in any court of competent jurisdiction, state or federal. 12 U.S.C. § 1723a(a).

23.     This Court has personal jurisdiction over KPMG because, among other things, KPMG has partners who reside in the District of Columbia and has offices in the District of Columbia, purposefully directed tortious activity toward the District of Columbia that caused harm in the District of Columbia, entered into contracts with Fannie Mae in the District of Columbia, and otherwise conducted business with respect to Fannie Mae in the District of Columbia.

24.     Venue is proper because the claims asserted in the Complaint arise in the District of Columbia. KPMG's services to Fannie Mae as specified in this Complaint were provided primarily in the District of Columbia.

8

**Facts**

**The Role of an Independent Auditor**

     25.    Public companies such as Fannie Mae rely heavily on external auditors to examine the company's accounting reports, records, and practices. External auditors must be professional, certified public accountants, independent of the company they are auditing. Companies such as Fannie Mae depend on external auditors to serve as an independent check on the accounting policies and practices of the company's management and internal accountants.

     26.    External auditors such as KPMG thus have been called the "third leg of the stool" of financial reporting, along with management and the Audit Committee. If external auditors do not comply with their professional obligations, the financial reporting system fails.

     27.    One of the primary responsibilities of an external auditor is to express an opinion whether the company's financial statements are presented fairly, in all material respects, in accordance with GAAP. GAAP includes the conventions, standards, rules, and procedures that set forth and define accepted accounting practices. GAAP includes authoritative pronouncements from the Financial Accounting Standards Board, such as FAS 133, which contains requirements for hedge accounting.

     28.    In order to serve the critical role of "public watchdogs" and provide the independent check they are hired to perform, external auditors cannot simply rely on the conclusions and representations of a company's management. Instead, external auditors are required to independently evaluate management's conclusions and representations, as well as the company's accounting policies and practices.

     29.    Professional standards have been established to ensure that external auditors fulfill their obligations. Those standards are known as generally accepted auditing standards, or

9

"GAAS." GAAS consists of authoritative standards, originally established by the American Institute of Certified Public Accountants ("AICPA"), which auditors must comply with when they conduct audits.

30.    GAAS requires, for example, that an external auditor such as KPMG carefully plan its audits, taking into account the risks to the company, and paying particular attention to areas where there are risks of accounting errors. As part of that process, the auditor must analyze a company's internal accounting "controls." Where there are weaknesses in internal controls, the external auditor must enhance its independent testing and evaluation, rather than rely on conclusions of a company's employees.

31.    GAAS also requires external auditors to comply with their core duty of identifying departures from GAAP.

32.    Professional auditing standards include several other requirements to ensure that an auditor is truly serving its function as an independent check on management. The external auditor must, for example, obtain and evaluate sufficient evidence and documentation of accounting practices during its audit. In addition, where the company's management has made significant accounting estimates, external auditors have a special duty to analyze and document the basis for those estimates.

33.    Professional skepticism and independent analysis of management's practices are thus vital to the proper functioning of an external audit, as the SEC has repeatedly emphasized. In October 2004, for example, the SEC concluded that KPMG had violated professional audit standards in connection with its audit of a public company known as Gemstar through repeated audit failures from 1999 to 2002, including that KPMG unreasonably relied on the

10

representations of Gemstar's management. KPMG agreed, among other things, to pay a $10 million fine, and four of its auditors were suspended from SEC practice.

34.    External auditors also have a professional obligation to do more than focus narrowly on the "numbers"; the Audit Committee relies on the auditor to report on the *quality* of the company's accounting principles. To ensure that auditors fulfill their essential role, GAAS requires that external auditors make qualitative judgments when determining whether accounting errors are "material" – again to ensure that auditors do not miss the big picture by focusing narrowly on individual numerical calculations and decisions. Thus, for example, in addition to the charges that KPMG unreasonably relied on management as part of the repeated audit failures in the Gemstar scandal, the SEC concluded that KPMG's "materiality determinations were unreasonable in that they were based on a quantitative analysis and failed to consider whether the revenues at issue were qualitatively material."

### Overview of KPMG's Services and Duties Owed to Fannie Mae

35.    KPMG served as Fannie Mae's auditor and principal accounting firm from 1969 until its termination on December 21, 2004. The events in this action arise out of audit services KPMG provided to Fannie Mae in connection with Fannie Mae's financial statements for fiscal years 2001, 2002, and 2003, and KPMG's accounting consultation services for FAS 133 compliance during 2000 and 2001. The audit services at issue in this action were provided pursuant to annual audit engagement agreements dated October 30, 2000, September 27, 2001, and November 18, 2002. Each year's audit engagement agreement covered, among other things, audits to be performed of the next year's financial statements. KPMG provided continuing professional services to Fannie Mae during that period for related matters, and Fannie Mae and its Audit Committee placed their trust and confidence in KPMG.

11

36.    In each audit engagement agreement, KPMG specifically promised to conduct audits of Fannie Mae's financial statements in accordance with the professional standards contained in GAAS. KPMG also promised each year to "assess the accounting principles used and significant estimates made by management." In addition, KPMG agreed to inform Fannie Mae management about any material errors and any instances of fraud or illegal acts that came to its attention.

37.    Each year KPMG also promised that in planning and performing the audits, it would consider Fannie Mae's internal controls in order to determine appropriate audit procedures. KPMG also assured Fannie Mae's Audit Committee that KPMG would communicate "reportable conditions" concerning internal controls to the extent such conditions came to KPMG's attention. KPMG defined "reportable conditions" as "significant deficiencies in the design or operation of internal control which could adversely affect [Fannie Mae's] ability to record, process, summarize and report financial data consistent with the assertions of management in the financial statements."

38.    In addition, KPMG specifically agreed in the November 2002 engagement letter that its reports and the applicable financial statements could be subject to review by the staff of the SEC, and would be subject to the SEC staff's "interpretation of the relevant rules and regulations." The SEC's Chief Accountant later determined that the FAS 133 and FAS 91 accounting policies, which KPMG had approved, did not come close to complying with GAAP, and violated professional accounting standards.

39.    KPMG also committed to providing "quarterly review" services that would include, among other things, review of financial statements and compliance with applicable standards of the AICPA.

12

40.    Those engagement agreements, as well as professional standards in the audit industry, required KPMG to advise the Fannie Mae Audit Committee of all material accounting issues.

41.    KPMG also was required to abide by professional standards of care, which included its national and local expertise in the financial services industry. KPMG had a duty to exercise the degree of reasonable care and skill expected of auditors and accountants acting under similar circumstances.

42.    In seeking and successfully obtaining re-appointment as Fannie Mae's auditor, KPMG touted its leading market share among audit firms in serving clients in the banking and financial services industries. In response to Fannie Mae's specific inquiries concerning KPMG's qualifications, KPMG claimed that it employed rigorous procedures to ensure the quality of its audits, including peer reviews, quality assurance reviews, and candid performance evaluations of the KPMG audit teams. In response to Fannie Mae's request in 2002 that KPMG *augment* its audit team because of Fannie Mae voluntarily becoming an SEC registrant, KPMG assured Fannie Mae that the KPMG audit team had relevant industry and SEC experience, and that the KPMG team would consult with KPMG's national office – KPMG's "Department of Professional Practice." Fannie Mae's Audit Committee also pressed KPMG to ensure that KPMG would analyze whether "there is an appropriate 'tone at the top'" of Fannie Mae regarding ethics and internal controls, and KPMG assured Fannie Mae's Audit Committee that KPMG would do so.

43.    KPMG had substantial access to Fannie Mae's key personnel, procedures, and accounting books and records. KPMG personnel frequently were present at Fannie Mae's offices until KPMG's termination and had continual access to Fannie Mae's corporate, financial,

13

operating, and business information. KPMG had the opportunity to observe, review and test Fannie Mae's business and accounting practices and financial reports, including Fannie Mae's internal controls. Moreover, KPMG reviewed and approved of a number of Fannie Mae's critical accounting policies before they were implemented. KPMG was provided with sufficient information to perform the requested auditing services competently. Fannie Mae and its Audit Committee acted reasonably and did not interfere with KPMG's ability to conduct competent audits with due professional care.

44.    Between 2001 and 2003, Fannie Mae paid KPMG more than $28 million for audit and other services.

### KPMG's Clean Audit Opinions and Assurances to the Fannie Mae Audit Committee

45.    KPMG represented to the Audit Committee year after year that KPMG had planned and conducted effective audits in compliance with professional standards. KPMG further assured the Audit Committee that the audits had included an assessment of the accounting principles used and the significant estimates made by management. Having assured the Audit Committee of the quality of the audits, KPMG then gave "clean" opinions each year on Fannie Mae's financials. KPMG stated in its Independent Auditors' Reports that that the annual financial statements for 2001 through 2003 "present fairly, in all material respects, the financial position of Fannie Mae . . . in conformity with accounting principles generally accepted in the United States of America."

46.    KPMG's clean audit opinions were consistent with its regular reports to Fannie Mae's Audit Committee.

47.    In 2001 KPMG advised the Audit Committee of new Audit Committee rules and other requirements, including Statement of Audit Standards ("SAS") 90, which requires auditors

14

to discuss with the Audit Committee the *quality* of a client's accounting principles and estimates. KPMG advised the Audit Committee that it met or exceeded every requirement. KPMG further represented to the Audit Committee in November 2001 that KPMG was on track with the 2001 joint Audit Plan and had found no financial reporting issues.

48.     KPMG delivered another clean opinion to the Audit Committee in 2002. KPMG partner Serock noted in the February 2002 Audit Committee meeting that significant accounting estimates had been made in the area of amortization of premiums and discounts and allowance for losses. He also noted the change in accounting policy based on the adoption of FAS 133. Mr. Serock advised the Audit Committee that KPMG had successfully completed its audit of the 2001 financial statements as planned and would be able to issue an unqualified opinion on the 2001 financial statements.

49.     KPMG partner Joseph Boyle noted in the February 2002 Audit Committee meeting that the Audit Committee had questioned KPMG on issues of KPMG's independence, quality control procedures, and procedures designed to ensure the competence of partners and staff. Mr. Boyle emphasized in his response that KPMG is a 100-year-old company with a sound reputation and independence.

50.     Shortly before KPMG was scheduled to deliver its annual report to the Audit Committee in February 2003, Fannie Mae learned that the SEC had charged KPMG with failing to adequately test accounting decisions and practices made by the management of Xerox. And just as it would later charge KPMG in connection with the Gemstar audit, the SEC concluded that KPMG had failed to exercise proper care and skepticism in its audit services for Xerox. The SEC concluded that KPMG and several of its partners knew or should have known of improper "top side" accounting adjustments made by Xerox management in order to meet earnings targets.

15

51.   When the Fannie Mae Audit Committee learned of the SEC's charges against KPMG, it expressed concern and questioned KPMG about the charges. KPMG assured the Audit Committee and the public that there was no cause for concern, arguing, among other things, that the issues were simply a dispute over "professional judgment" in interpreting complex accounting rules, and that Xerox's restatement was unnecessary.

52.   Two years later, after Fannie Mae had terminated KPMG, KPMG agreed to pay a $22 million SEC fine and to implement reforms in its audit practice in light of the SEC's charges involving KPMG's failed audits of Xerox. And in December 2005 one of the KPMG partners who audited Xerox – Joseph Boyle – agreed to a fine and suspension from practice. Mr. Boyle was the KPMG "client service partner" for the Fannie Mae audit at the time he was involved in the failed audits of Xerox.

53.   Having been assured by KPMG in 2003 that the SEC's allegations were of no concern, the Audit Committee continued with its regularly scheduled meeting with KPMG. At the February 18, 2003 Audit Committee meeting, KPMG partner Serock gave Fannie Mae another clean bill of health. KPMG advised the Audit Committee that KPMG had successfully completed its audit of the 2002 financial statements as planned, that KPMG had issued unmodified review reports on the corporation's quarterly condensed financial statements, and that KPMG intended to issue an unqualified opinion on the 2002 financial statements.

54.   KPMG's formal report to the Audit Committee in February 2003, for the 2002 year-end financials, stated that KPMG had again complied with the Audit Plan and with "auditing standards generally accepted in the United States of America." KPMG reported that it had not identified any material weaknesses in internal accounting controls. KPMG emphasized to the Audit Committee that KPMG's "key areas of audit focus" had included, among other

16

things, "portfolio assets" and "accounting for and valuation of financial derivatives and hedging activities." KPMG assured the Audit Committee that KPMG had also focused on "areas of significant accounting estimates and management judgments in the financial statements," including "amortization of premium/discounts and deferred price adjustments."

55. KPMG not only represented to the Audit Committee that Fannie Mae's financials were materially accurate, KPMG also assured the Audit Committee that KPMG had analyzed the "quality" of Fannie Mae's accounting principles and that KPMG had encountered "no disagreements with management" and no difficulties in performing the audit.

56. KPMG provided similar assurances in its November 2003 audit update to the Audit Committee, emphasizing that it had conducted "*detailed* testing of calculations, assumptions and underlying details in *all critical accounting policy areas*" (emphasis added). KPMG stated that it had completed its analysis of significant transactions and significant estimates, and had assessed the appropriateness of accounting changes. KPMG's report identified "key assumptions and new accounting pronouncements" for which "detailed testing" supposedly had been conducted, including in the areas of "FIN-46 *Consolidation of Variable Interest Entities*" and "Application of FAS-133/FAS-149." Fannie Mae would later be required to restate its financial results based on violations of those accounting standards.

57. At the February 17, 2004 Audit Committee meeting, KPMG again advised the Audit Committee that KPMG had successfully completed its audit of the prior year's (2003) financial statements as planned, that KPMG had issued unmodified review reports on the corporation's quarterly condensed financial statements, and that KPMG intended to issue an unqualified opinion on the 2003 financial statements. KPMG partner Serock noted the quality of

17

Fannie Mae's accounting principles, stated that methods applied by management were the preferred approaches, and that no adjustments were proposed for the 2003 financial statements.

58.    KPMG's written report to the Audit Committee in February 2004, covering the 2003 financial statements, was equally reassuring. KPMG claimed that it had performed an audit in accordance with GAAS, that it had "gained an understanding of internal control over financial reporting," and that it had "identified no material weaknesses" in internal accounting controls. KPMG assured the Audit Committee that the "key areas" of its audit had included, among other things, portfolio assets, debt, accounting for derivatives and hedging, allowance for losses, accounting for debt and equity securities, fraud risks, and new accounting applications. KPMG also represented that it had focused on "areas of significant accounting estimates and management judgments," including amortization of premium/discounts and deferred price adjustments and the adequacy of the allowance for losses. KPMG further claimed that it had analyzed the "quality" of Fannie Mae's accounting principles. In addition, KPMG confirmed in its written report that it had reviewed management's assessment of items identified in Freddie Mac's restatement.

59.    The Audit Committee was diligent in performing its duties and properly relied on KPMG's continuing assurances. The Audit Committee was led to believe, through KPMG's unbroken line of clean reports and assurances, that KPMG had performed careful and competent audits, that the KPMG audit team was highly qualified and backed by rigorous quality assurance procedures, that all of Fannie Mae's significant accounting policies were consistent with GAAP, and that there were no material weaknesses in Fannie Mae's internal controls.

60.    Fannie Mae and KPMG had specifically identified the following, among others, as "significant accounting policies" for some or all of the periods between 2001 and 2003:

18

- Derivative instruments and hedging activities, including FAS 133.

- Mortgage-related securities, including classification of securities and loan-related accounting matters, FAS 115, and recording impairment.

- Method for estimating prepayment to calculate yields to apply the interest method in amortization of purchase discount or premium and other deferred price adjustments (FAS 91).

- Accounting for guaranty fees.

- Allowance for loan losses.

- Principles of consolidation for qualifying special purpose entities ("QSPE's"), including issues involving trusts, FAS 140 and FAS 125.

- Commitments to purchase mortgages and purchase or sell mortgage-related securities (FAS 149).

61.    Despite KPMG's promises and professional duty to place particular scrutiny on accounting policies it acknowledged were "critical" and "significant," and KPMG's consistent conclusions that those policies complied with GAAP, Fannie Mae's accounting was later found to have departed from GAAP in all of the areas listed above. On KPMG's watch, there were GAAP departures covering virtually every significant accounting standard applicable to mortgage finance institutions.

**Hedge Accounting Policies**

62.    One significant area of Fannie Mae's restatement involves hedge accounting. In its audits of Fannie Mae's annual financial statements, KPMG consistently approved of Fannie Mae's hedge accounting, well aware that FAS 133 was one of the most important policies KPMG was required to review. KPMG knew of the importance of FAS 133 because KPMG had been separately engaged – as supposed experts in hedge accounting – to review Fannie Mae's proposed hedge accounting policies, long before they were adopted, for compliance with FAS 133.

19

63.     During 2000 and 2001, KPMG separately invoiced Fannie Mae for performing expert consulting services relating to the implementation of FAS 133, including, but not limited to, testing the simulated adoption of FAS 133; assessing applicable systems; reviewing, analyzing and commenting on Fannie Mae's accounting policy manual; interviewing personnel; and reviewing proposed transactions. KPMG explained in letters to Fannie Mae dated February 7, 2000 and October 30, 2000 that the FAS 133 project was part of KPMG "accounting consultation" services separate from the audit engagement and audit fee.

64.     KPMG has acknowledged that it reviewed and approved of Fannie Mae's Hedge Accounting Policy Manual as part of KPMG's analysis of FAS 133 compliance. In addition, KPMG stated that it reviewed Fannie Mae's functionality and system controls surrounding the hedge accounting systems and determined that the system/logic controls were consistent with the Manual.

65.     Wearing its auditor hat, KPMG did not post any review or audit differences for any interim or annual periods during 2001, 2002, or 2003. As Fannie Mae's auditor, KPMG failed to independently scrutinize the FAS 133 policies it had previously approved as Fannie Mae's pre-implementation consultant.

**External Investigations**

66.     In 2003 the Office of Federal Housing Enterprise Oversight ("OFHEO") began a special investigation into Fannie Mae's accounting policies and practices. Fannie Mae incurred millions of dollars of expenses associated with the lengthy investigation. Those expenses would have been avoided if KPMG had exercised due professional care in its audits of Fannie Mae and complied with its contractual obligations to conduct competent reviews and analyses of Fannie Mae's FAS 133 and other accounting policies. Fannie Mae also incurred substantial additional

costs as a result of investigations by the SEC. The OFHEO and SEC investigations would not have occurred, or at a minimum would have been far more expedited and less costly, had KPMG exercised due professional care in its services to Fannie Mae and identified numerous material accounting problems to the Audit Committee in the months and years prior to the investigations.

67.    In addition, as a direct result of the multiple accounting problems which KPMG failed to identify to the Fannie Mae Audit Committee, in September 2004 a Special Review Committee of the Board of Directors of Fannie Mae engaged the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") to investigate, among other things, Fannie Mae's accounting policies and practices. Fannie Mae incurred substantial costs to comply with the Paul Weiss investigation, including responding to hundreds of document requests (which resulted in the production of over 700,000 documents) and preparing and appearing for dozens of interviews. Fannie Mae has incurred costs of over $60 million associated with the Paul Weiss investigation, including fees paid to Paul Weiss and its accountants. These costs would also have been avoided had KPMG exercised due professional care in its services to Fannie Mae and identified numerous material accounting problems to the Audit Committee in the months and years prior to the Paul Weiss investigation.

### SEC Review & Fannie Mae's Termination of KPMG

68.    On December 15, 2004, having told Fannie Mae and KPMG that the FAS 133 accounting was not "on the page" of the outer bounds of compliance with GAAP, the SEC's Office of Chief Accountant ("OCA") also advised Fannie Mae in writing that from 2001 to mid-2004 Fannie Mae's accounting practices and policies did not comply in material respects with the requirements of FAS 91 and FAS 133. The OCA instructed Fannie Mae to restate its financial statements filed with the SEC to eliminate the use of hedge accounting, evaluate the

21

accounting under FAS 91 and restate its financial statements filed with the SEC if the amounts required for correction were material, and reevaluate the information prepared under GAAP and non-GAAP information that Fannie Mae previously provided to investors, particularly in view of the decision that hedge accounting was not appropriate.

69.     Less than one week later, on December 21, 2004, Fannie Mae terminated KPMG as its auditor.

**The Restatement Process**

70.     On December 17, 2004, after the SEC determined that significant accounting policies (which had been approved by KPMG) were not compliant with GAAP, the Audit Committee concluded that Fannie Mae's previously filed financial statements and KPMG's reports thereon for periods beginning in January 2001 should no longer be relied upon because they were prepared applying accounting practices that did not comply with GAAP.

71.     Fannie Mae then embarked on an extensive and costly review of its historical accounting policies and practices.  Along with its new accountants, Fannie Mae determined that its accounting practices and policies during the period of the restatement – when KPMG served as Fannie Mae's auditor – were not consistent with GAAP in at least 30 areas.

72.     In SEC filings on March 13, 2006, May 9, 2006, and August 9, 2006, Fannie Mae summarized numerous accounting errors that would be the subject of its restatement.  The accounting errors include, among others:

a. the misapplication of hedge accounting under FAS 133, including the incorrect classification of derivatives as cash flow or fair value hedges;

b. the misapplication of accounting criteria for mortgage loan and security commitments under FAS 133 and FAS 149, including the failure to record certain mortgage loan and security

22

commitments as derivatives, and the incorrect classification of mortgage loan and security commitments as cash flow hedges;

c. the misapplication of GAAP relating to Fannie Mae's investments in securities, including the incorrect classification of Fannie Mae's investments in securities under FAS 115, the incorrect classification of certain "dollar roll" repurchase transactions, the incorrect valuation of securities, and errors relating to the impairment of securities, including application of EITF Issue No. 99-20, *Recognition of Interest Income and Impairment on Purchased and Retained Beneficial Interests in Securitized Financial Assets* ("EITF 99-20");

d. errors in the amortization of cost basis adjustments and the application of FAS 91, including the application of incorrect prepayment speeds to cost basis adjustments, the aggregation of dissimilar assets in computing amortization, and the incorrect recording of cumulative amortization adjustments;

e. incorrect accounting regarding financial guaranties, including the recognition, valuation, and amortization of financial guaranties, such as errors relating to the amortization of guaranty fee buy-downs, errors relating to accounting for buy-ups, and the incorrect valuation of guaranty assets and guaranty obligations;

f. errors in accounting relating to trust consolidation and sale accounting, including errors relating to the requirements for QSPE's and other requirements set forth in FAS 125 and FAS 140; and

g. other errors, including accounting for the allowance for loan losses and reserve for guaranty losses; errors in accounting for a portion of Low-Income Housing Tax Credits ("LIHTC") and other partnerships; and errors in loan-related accounting matters, including incorrect classification of certain loans held for sale into securitization trusts, errors relating to

23

real estate owned ("REO") and foreclosed property expense, errors relating to accounting for troubled debt restructurings, errors relating to accrued interest on delinquent loans, and errors relating to accounting for reverse mortgages.

73.    As a result of the investigations, Fannie Mae and its new accountants have also identified historical internal control deficiencies in a number of areas, which KPMG failed to identify to the Audit Committee.  KPMG violated GAAS by failing to identify or report to the Audit Committee those internal control deficiencies.  In failing to take account of the internal control deficiencies, KPMG also violated GAAS by conducting audits that relied too heavily on internal Fannie Mae reports and conclusions, instead of conducting a truly independent analysis with appropriate professional skepticism and independent review of adequate documentation. The internal control deficiencies related to:  financial systems and other information technology systems; entity-level controls relating to risk oversight, staffing and expertise of the internal audit and accounting departments, and documentation of policies and procedures; design and application of accounting policies; the valuation of assets and liabilities; and the financial reporting processes.

74.    Fannie Mae has incurred massive expenditures in 2005 and 2006 to review its historical practices, polices and documentation and conduct research and analysis in order to prepare restatements of its prior financial reports and to prepare new financial reports.  To date, these expenses exceed $1 billion, most of which involves fees paid to accountants and outside vendors.  The more than $1 billion Fannie Mae has incurred, and additional amounts Fannie Mae is expected to incur, are a direct and proximate result of KPMG's negligence, malpractice, and failure to comply with the terms of its contractual agreements with Fannie Mae.  The

24

restatement-related work Fannie Mae and its vendors were forced to undertake as a direct and proximate result of KPMG's conduct has included, but is not limited to:

      a. a comprehensive review of Fannie Mae's historical accounting practices;

      b. obtaining or validating market values for a large volume of transactions, including all of Fannie Mae's derivatives, commitments, and securities, at multiple points in time over the restatement period;

      c. evaluating and re-auditing financial statements for multiple historical periods; and

      d. identifying issues with Fannie Mae's accounting controls during the restatement period.

75.    The work to prepare new financial statements is ongoing, and Fannie Mae's damages are continuing.

### KPMG's Negligence and Failure to Exercise Due Professional Care

76.    KPMG owed Fannie Mae, including the Fannie Mae Audit Committee, a duty to use such skill, prudence, and diligence as other reasonable and competent members of the accounting and audit professions commonly possess and exercise. KPMG was negligent, failed to exercise such skill, prudence and diligence, and failed to exercise due professional care in the services it provided to Fannie Mae. Despite KPMG's clear duties and its assertions to the Audit Committee that it had complied with its duties, KPMG's audits were not conducted in accordance with GAAS and otherwise violated the standard of care in the field of financial auditing. KPMG further violated the standard of care in the accounting services industry by, among other things, approving accounting policies that departed materially from GAAP.

25

77.    KPMG failed to conduct audits in compliance with professional standards of care by, among other things: failing to properly plan the audits; failing to properly perform the audits; failing to identify departures from GAAP during the audit process; failing to give proper consideration to audit risk and materiality when planning and performing the audits; failing to advise the Audit Committee of material weaknesses in internal controls; failing to obtain and evaluate sufficient documentation during the audit process; failing to document the basis for significant accounting estimates; failing to provide the Audit Committee with adequate information regarding the scope and results of the audits which would assist the Audit Committee in overseeing the financial reporting, including but not limited to, failing to adequately advise the Audit Committee of significant accounting policies and their application; failing to adequately plan and supervise the work of its staff and establish and carry out procedures reasonably designed to search for and detect the existence of material misstatements; consistently providing "clean" opinions that Fannie Mae's financial statements presented fairly, in all material respects, the entity's financial position, results of operations, and cash flows in conformity with GAAP, when in fact they did not; failing to communicate to the Audit Committee whether KPMG was aware of any material modifications that should have been made to Fannie Mae's interim financial information in order for its financial statements to conform with GAAP; incorrectly determining whether the effects of departures from GAAP were sufficiently material to require either a qualified or adverse opinion; failing to consider qualitative judgments in its determination of materiality; advising the Audit Committee that KPMG's audits were prepared in accordance with GAAS when they were not; failing to ensure that its audits of Fannie Mae were performed by persons having adequate technical training and proficiency as auditors; failing to ensure that its audit team was independent in mental attitude in

26

all matters relating to the Fannie Mae audits; failing to properly consider the computer

processing systems of Fannie Mae as part of the planning and performance of the audits; and

otherwise failing to adequately test and evaluate Fannie Mae's internal controls, including the

Internal Audit function.

78.     KPMG violated Statement of Audit Standards ("SAS") No. 1, AU § 230, by

failing to plan and perform its audit work for Fannie Mae with due professional care, including

by failing to exercise appropriate professional skepticism.

79.     KPMG violated its duties to Fannie Mae and applicable standards in the

profession by certifying that its audits of Fannie Mae's financial statements for fiscal years 2001

to 2003 had been conducted in accordance with GAAS.

80.     KPMG violated GAAS when it failed to abstain from issuing, or failed to qualify

or modify, audit opinions for Fannie Mae's financial reports for fiscal years 2001 through 2003.

81.     KPMG's violations of professional audit standards also included, but were not

limited to, the following, as well as predecessor, successor, and related standards in effect during

the applicable years:

82.     KPMG violated AU § 410 by stating in its reports that all of Fannie Mae's

financial statements were presented in accordance with GAAP.

83.     KPMG violated AU §§ 411 and 420 by, among other things, failing to ascertain

whether the accounting principles used in Fannie Mae's financial statements had general

acceptance and were otherwise appropriate.

84.     KPMG violated GAAS Standard of Reporting No. 4, which requires audit reports

to state whether financial statements are presented in accordance with GAAP, and AU § 411 by

27

providing unqualified opinions that Fannie Mae's financial statements were presented fairly and in conformity with GAAP.

85.     KPMG violated AU § 312 by failing to give proper consideration to audit risk and materiality when planning and performing its audits of Fannie Mae's financial statements.

86.     KPMG violated AU § 342 by failing to obtain and evaluate sufficient competent evidential matter to support significant accounting estimates in its audits of Fannie Mae's financial statements.

87.     KPMG violated AU § 380 by failing to provide the Audit Committee with adequate information regarding the scope and results of the audits that would assist the Audit Committee in overseeing the financial reporting, including, but not limited to, failing to adequately advise the Audit Committee of internal control issues, significant accounting policies and their application, management's accounting estimates and basis for KPMG's conclusions regarding the reasonableness of those estimates, and judgments about the quality of Fannie Mae's accounting principles as applied to financial reporting.

88.     KPMG violated AU § 326 by failing to obtain sufficient competent evidential matter through inspection, observation, inquiries, and confirmations in order to afford a reasonable basis for an opinion regarding the financial statements under audit.

89.     KPMG violated AU § 329 by failing to develop and apply appropriate analytical procedures in planning its audits of Fannie Mae and to be used in its overall review and in testing during the audit process.

90.     KPMG violated GAAS and its standards set forth in AU §§ 310 and 311 by, among other things, failing to adequately plan and supervise the work of its staff and to establish

and carry out procedures reasonably designed to search for and detect the existence of material misstatements.

91.    KPMG violated AU § 210 by failing to ensure that its audits of Fannie Mae were performed by persons having adequate technical training and proficiency as auditors.

92.    KPMG violated AU § 220 by failing to ensure that its audit team was independent in mental attitude in all matters relating to the Fannie Mae audits.

93.    KPMG violated AU § 325 by failing to report to the Audit Committee significant deficiencies concerning Fannie Mae's internal controls.

94.    KPMG violated AU § 722 by, among other things, failing to communicate to the Audit Committee whether KPMG was aware of any material modifications that should have been made to Fannie Mae's interim financial information in order for it to conform with GAAP.

95.    KPMG violated AU §§ 312, 319, and 332 by, among other things, failing to plan and perform proper auditing procedures relating to derivative instruments, hedging activities, and investments in securities.

96.    KPMG violated AU § 508 by, among other things, incorrectly determining whether the effects of departures from GAAP were sufficiently material to require either a qualified or adverse opinion, and by failing to properly consider qualitative judgments in its determination of materiality.

97.    KPMG violated AU § 311 by failing to properly consider the computer processing systems of Fannie Mae as part of the planning and performance of the KPMG audits.

98.    KPMG failed to adequately test Fannie Mae's internal controls, including, but not limited to, Internal Audit controls. KPMG violated AU §§ 312 and 319 by failing to obtain an

adequate understanding of Fannie Mae's internal controls sufficient to allow KPMG to plan an effective audit.

99.    KPMG violated GAAS, including AU § 342, by failing to develop adequate audit procedures with respect to accounting involving premium and discount amortization.

100.    KPMG failed to use such skill, prudence, and diligence that other reasonable and competent members of the accounting and audit profession acting under the same or similar circumstances commonly possess and exercise, by failing to determine and report to the Audit Committee that Fannie Mae's accounting policies and practices departed from the requirements of GAAP in multiple areas, including, but not limited to, derivatives and commitments, investments in securities, mortgage-backed-security trust consolidations, financial guaranties, amortization of cost-basis adjustments, and other areas identified above. KPMG violated GAAS by failing to identify departures from multiple GAAP requirements, including, but not limited to, FAS 133, FAS 149, Emerging Issues Task Force No. 96-11, FAS 91, FAS 115, and FAS 140.

**KPMG'S Pattern of Negligent Audits**

101.    Between June 2003 and December 2003, when KPMG was providing audit services for Fannie Mae, the Public Company Accounting Oversight Board ("PCAOB") conducted an inspection of KPMG. PCAOB released its *Report on 2003 Limited Inspection of KPMG LLP* on August 26, 2004. Although the PCAOB reviewed only selected KPMG engagements, it found significant audit and accounting issues that were missed by KPMG and expressed concerns about KPMG's quality-control systems. PCAOB's investigation included 16 KPMG engagements for fiscal years ending in 2002 or early 2003, the same period as a number of the accounting issues raised in this action. PCAOB found, among other things, that in performing its audits, KPMG had departed from GAAP as to FAS 91 (twice), FAS 115, and FAS

30

133 and had failed to perform or document the required analysis concerning consolidation of special purpose entities – four of the accounting standards at the center of Fannie Mae's restatement.

102.    In September 2005, PCAOB released its 2004 Inspection Report on KPMG audits. Among other flaws, PCAOB found that in audits KPMG performed of public companies during 2004, KPMG had again departed from GAAP as to accounting for derivative instruments under FAS 133. The PCAOB also found that KPMG had failed to evaluate sufficient evidential material in multiple audit engagements, and in other engagements had inappropriately identified audit risk as "low" without conducting a sufficient analysis of the audited company's internal controls.

103.    KPMG also has violated professional standards in its audits of other public companies during the same period as its flawed audits of Fannie Mae. Those audits include, but are not limited to, KPMG's audits of Gemstar and Xerox. In October 2004, the SEC concluded that KPMG had violated professional audit standards in connection with its audit of Gemstar, through repeated audit failures from 1999 to 2002, including unreasonably relying on the representations of Gemstar's management and making unreasonable materiality determinations that failed to consider qualitative materiality.

104.    In 2005, KPMG agreed to pay a $22 million SEC fine and to implement reforms in its audit practice, arising out of the SEC's charges involving KPMG's failed audits of Xerox. The audit deficiencies identified by the SEC included KPMG's failure to identify earnings management at Xerox and the failure to exercise proper care and professional skepticism.

## COUNT I
### (Malpractice/Negligence)

105.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

106.    By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a reasonable and competent independent auditor and provider of accounting services under the same or similar circumstances.

107.    KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care, as demonstrated by the failures and deficiencies described in this Complaint.

108.    KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with professional standards of care.  KPMG was negligent in its performance of accounting and audit services to Fannie Mae.

109.    KPMG violated its duty of care owed to Fannie Mae by, among other things, failing to advise the Audit Committee that Fannie Mae's financial statements from 2001 through 2003 were not free from material errors and did not present fairly, in all material respects, the financial position of the company in conformity with GAAP.

110.    KPMG failed to conduct audits in compliance with professional standards of care by failing to adhere to GAAS standards, as described in paragraphs 77 to 100 above.  KPMG violated professional standards of care by, among other things, failing to properly test and evaluate Fannie Mae's internal controls; failing to perform tests of the accounting records and such other procedures as necessary in the circumstances to provide a reasonable basis for its

32

opinions; failing to properly assess the accounting principles used and significant estimates made by management; failing to inform Fannie Mae management about material errors, including those that caused a material misstatement of Fannie Mae's financial statements; failing to properly consider Fannie Mae's internal controls in order to determine appropriate audit procedures; failing to obtain and evaluate sufficient competent evidential matter; failing to advise the Audit Committee of internal control deficiencies, including "reportable conditions"; failing to provide quarterly review services in compliance with professional standards, including AICPA standards; failing to ensure that its audits of Fannie Mae were performed by persons having adequate technical training and proficiency as auditors; and failing to ensure that its audit team was independent in mental attitude in all matters relating to the Fannie Mae audits.

111.    KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, more than $1 billion of costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, tens of millions of dollars of fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

## COUNT II
### (Breach of Contract for Audit Services)

112.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

113.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to

Fannie Mae. Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

114.    KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

115.    KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

116.    Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

117.    KPMG materially breached its obligations under the engagement agreements.

118.    KPMG's breaches, as more specifically described above, included, but were not limited to, failing to conduct the audits in accordance with GAAS; failing to properly test and evaluate Fannie Mae's internal controls; failing to perform tests of the accounting records and such other procedures as necessary in the circumstances to provide a reasonable basis for its opinions; failing to properly assess the accounting principles used and significant estimates made by management; failing to inform Fannie Mae management about material errors, including those that cause a material misstatement of Fannie Mae's financial statements; failing to properly consider Fannie Mae's internal controls in order to determine appropriate audit procedures; failing to obtain and evaluate sufficient competent evidential matter; failing to advise the Audit Committee of internal control deficiencies, including "reportable conditions"; failing to provide quarterly review services in compliance with professional standards, including AICPA standards; failing to ensure that its audits of Fannie Mae were performed by persons having adequate

technical training and proficiency as auditors; and failing to ensure that its audit team was independent in mental attitude in all matters relating to the Fannie Mae audits.

119.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, more than $1 billion of costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, tens of millions of dollars of fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

**COUNT III**
**(Breach of Contract as to Consulting Services for Derivative and Hedge Accounting)**

120.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

121.    KPMG agreed to provide consulting and other accounting advice to Fannie Mae, separate from KPMG's audit duties, relating to Fannie Mae's development and implementation of policies and practices concerning derivative and hedge accounting and compliance with FAS 133.

122.    Fannie Mae performed its contractual obligations relating to the FAS 133 review, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

123.    KPMG materially breached its contractual duties by approving of policies and practices relating to FAS 133 that departed materially from GAAP. KPMG failed to comply with applicable professional standards of care in approving Fannie Mae's FAS 133 policies and practices, including the AICPA Standards for Consulting Services.

35

124.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, fees paid to KPMG, costs and expenses of responding to investigations, lost profits, and other compensatory damages proximately caused by KPMG.

### COUNT IV
### (Malpractice/Negligence as to Derivative and Hedge Accounting and Mortgage Loan and Security Commitments)

125.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

126.    By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a competent independent auditor and provider of accounting services under similar circumstances.

127.    KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care with respect to accounting for derivative instruments, hedges, and mortgage commitments, including compliance with FAS 133 and FAS 149.

128.    KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with professional standards of care.  KPMG was negligent in its performance of accounting and audit services to Fannie Mae with respect to accounting for derivative instruments, hedges, and mortgage commitments, including compliance with FAS 133 and FAS 149.

36

129.    KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

## COUNT V
### (Malpractice/Negligence as to Accounting for Investments)

130.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

131.    By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a competent independent auditor and provider of accounting services under similar circumstances.

132.    KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care with respect to accounting for investments, including errors relating to the classification of Fannie Mae's investments in securities (including dollar rolls), errors relating to the incorrect valuation of investment securities, and errors relating to accounting for the impairment of investment securities.

133.    KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with professional standards of care. KPMG was negligent in its performance of accounting and audit services to Fannie Mae with respect to accounting for investments.

37

134.    KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

## COUNT VI
**(Malpractice/Negligence as to Accounting for the Amortization of Cost Basis Adjustments)**

135.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

136.    By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a competent independent auditor and provider of accounting services under similar circumstances.

137.    KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care with respect to accounting for the amortization of cost basis adjustments and the application of FAS 91, including the application of incorrect prepayment speeds to cost basis adjustments, the aggregation of dissimilar assets in computing amortization, and the incorrect recording of cumulative amortization adjustments.

138.    KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with professional standards of care.  KPMG was negligent in its performance of accounting and audit services to Fannie Mae with respect to Fannie Mae's accounting for the amortization of loan and

securities premiums, discounts, and other cost basis adjustments, including compliance with FAS 91.

139.   KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

## COUNT VII
### (Malpractice/Negligence as to Accounting for the Consolidation of Trusts)

140.   Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

141.   By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a competent independent auditor and provider of accounting services under similar circumstances.

142.   KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care with respect to accounting relating to the consolidation of trusts used for certain securitization transactions, including errors relating to QSPE's and other requirements of FAS 125 and FAS 140.

143.   KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with professional standards of care.  KPMG was negligent in its performance of accounting and audit

services to Fannie Mae with respect to accounting for the consolidation of trusts and securitization transactions.

144.    KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

<u>COUNT VIII</u>
**(Malpractice/Negligence as to Accounting for Financial Guaranties)**

145.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

146.    By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a competent independent auditor and provider of accounting services under similar circumstances.

147.    KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care with respect to accounting for financial guaranties, including errors relating to the recognition, valuation, and amortization of financial guaranties, such as errors relating to the amortization of guaranty fee buy-downs, errors relating to accounting for buy-ups, and the incorrect valuation of guaranty assets and guaranty obligations.

148.    KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with

40

professional standards of care. KPMG was negligent in its performance of accounting and audit services to Fannie Mae with respect to accounting for financial guaranties.

149.   KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

### COUNT IX
#### (Malpractice/Negligence as to Other Accounting Errors)

150.   Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

151.   By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a competent independent auditor and provider of accounting services under similar circumstances. KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care with respect to other accounting errors, including accounting for the allowance for loan losses and reserve for guaranty losses; errors in accounting for a portion of Low-Income Housing Tax Credits ("LIHTC") and other partnerships; and errors in loan-related accounting matters, including incorrect classification of certain loans held for sale into securitization trusts, errors relating to real estate owned ("REO") and foreclosed property expense, errors relating to accounting for troubled debt restructurings, errors relating to accrued interest on delinquent loans, and errors relating to accounting for reverse mortgages.

41

152.    KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with professional standards of care.  KPMG was negligent in its performance of accounting and audit services to Fannie Mae with respect to multiple accounting errors.

153.    KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

## COUNT X
### (Malpractice/Negligence as to Internal Control Deficiencies)

154.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

155.    By agreeing to provide audit and other professional services to Fannie Mae, KPMG owed a duty to Fannie Mae to use the skill and care ordinarily used by a competent independent auditor and provider of accounting services.

156.    KPMG breached its duty to provide auditing and other professional services to Fannie Mae at the required level of skill and care by failing to conduct an adequate review of Fannie Mae's internal controls, failing to identify problems with the design and operation of Fannie Mae's internal controls, placing excessive reliance on Fannie Mae's internal controls, and failing to plan and execute appropriate audits based on a proper assessment of Fannie Mae's internal controls.

42

157.    KPMG violated its duty of care owed to Fannie Mae by failing to conduct the terms of its engagement in accordance with GAAS and otherwise in accordance with professional standards of care.  KPMG was negligent in its performance of accounting and audit services to Fannie Mae with respect to identifying internal control deficiencies and planning and executing appropriate audits based on a proper assessment of internal control deficiencies.

158.    KPMG's violations of its duty of care owed to Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG's breaches of duty.

## COUNT XI
### (Breach of Contract as to Audit Services Relating to Derivative and Hedge Accounting and Mortgage Loan and Security Commitments)

159.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

160.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to Fannie Mae.  Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

161.    KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

162.    KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

43

163.    Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

164.    KPMG materially breached its obligations under the engagement agreements with respect to audit services relating to Fannie Mae's derivative and hedge accounting, and accounting for mortgage loan and security commitments, including compliance with FAS 133 and FAS 149.

165.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

## COUNT XII
### (Breach of Contract for Audit Services Relating to Accounting for Investments)

166.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

167.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to Fannie Mae. Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

168.    KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

44

169.    KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

170.    Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

171.    KPMG materially breached its obligations under the engagement agreements with respect to audit services relating to Fannie Mae's accounting for investments, including errors relating to the classification of Fannie Mae's investments in securities (including dollar rolls), errors relating to the incorrect valuation of investment securities, and errors relating to accounting for the impairment of investment securities.

172.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

## COUNT XIII
### (Breach of Contract for Audit Services Relating to Accounting for Amortization of Cost Basis Adjustments)

173.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

174.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to

45

Fannie Mae. Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

175. KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

176. KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

177. Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

178. KPMG materially breached its obligations under the engagement agreements with respect to audit services relating to Fannie Mae's accounting for the amortization of cost basis adjustments and the application of FAS 91, including the application of incorrect prepayment speeds to cost basis adjustments, the aggregation of dissimilar assets in computing amortization, and the incorrect recording of cumulative amortization adjustments.

179. KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

## COUNT XIV
### (Breach of Contract for Audit Services Relating to
### Accounting for the Consolidation of Trusts)

180.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

181.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to Fannie Mae. Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

182.    KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

183.    KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

184.    Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

185.    KPMG materially breached its obligations under the engagement agreements with respect to audit services relating to Fannie Mae's accounting relating to the consolidation of trusts used for certain securitization transactions, including errors relating to QSPE's and other requirements of FAS 125 and FAS 140.

186.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs

47

for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

## COUNT XV
### (Breach of Contract for Audit Services Relating to Accounting for Financial Guaranties)

187.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

188.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to Fannie Mae. Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

189.    KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

190.    KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

191.    Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

192.    KPMG materially breached its obligations under the engagement agreements with respect to audit services relating to Fannie Mae's accounting for financial guaranties, including the recognition, valuation and amortization of financial guaranties, such as errors relating to the amortization of guaranty fee buy-downs, errors relating to accounting for buy-ups, and the incorrect valuation of guaranty assets and guaranty obligations.

193.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

## COUNT XVI
### (Breach of Contract as to Audit Services Relating to Other Accounting Errors)

194.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

195.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to Fannie Mae. Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

196.    KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

197.    KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

198.    Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

199.    KPMG materially breached its obligations under the engagement agreements with respect to numerous additional accounting errors, including accounting for the allowance for

49

loan losses and reserve for guaranty losses; errors in accounting for a portion of Low-Income Housing Tax Credits ("LIHTC") and other partnerships; and errors in loan-related accounting matters, including incorrect classification of certain loans held for sale into securitization trusts, errors relating to real estate owned ("REO") and foreclosed property expense, errors relating to accounting for troubled debt restructurings, errors relating to accrued interest on delinquent loans, and errors relating to accounting for reverse mortgages.

200.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

## COUNT XVII
### (Breach of Contract as to Audit Services Relating to Internal Control Deficiencies)

201.    Fannie Mae incorporates herein by reference all statements made in paragraphs 1 through 104 as if fully rewritten herein.

202.    Through a series of audit engagement agreements entered into between October 2000 and November 2002, KPMG offered to provide audit and other professional services to Fannie Mae. Fannie Mae accepted each offer, thereby entering into contracts and establishing a continuing professional relationship with KPMG.

203.    KPMG was contractually obligated to comply with the promises in each of the engagement letters, included the promises and agreements described in paragraphs 35 to 41 above.

50

204.    KPMG was required to abide by professional standards of care, which included its national and local expertise in the financial services industry.

205.    Fannie Mae performed its obligations under the engagement agreements, including by providing required access to information, cooperating with KPMG, and making payment of fees to KPMG.

206.    KPMG materially breached its obligations under the engagement agreements with respect to internal control deficiencies by failing to conduct an adequate review of Fannie Mae's internal controls, failing to identify problems with the design and operation of Fannie Mae's internal controls, placing excessive reliance on Fannie Mae's internal controls, and failing to plan and execute appropriate audits based on a proper assessment of Fannie Mae's internal controls.

207.    KPMG's breaches of contract with Fannie Mae have proximately caused Fannie Mae to suffer damages in an amount to be proven at trial, including, but not limited to, costs as part of Fannie Mae's restatement investigation and analysis and related activities, increased costs for preparing and auditing Fannie Mae's subsequent financial statements, costs and expenses of responding to investigations, fees paid to KPMG for its services, lost profits, and other compensatory damages proximately caused by KPMG.

## PRAYER FOR RELIEF

WHEREFORE, Fannie Mae demands this Court enter judgment in its favor and against KPMG LLP as follows:

A.  Compensatory damages to be determined at trial in an amount not less than $2,000,000,000 (Two Billion Dollars);

B.  Prejudgment and post-judgment interest;

51

C. An award of costs and expenses incurred in this action; and

D. Any further relief that the Court may deem just and proper in light of all the circumstances of this case.

## JURY DEMAND

Fannie Mae demands a trial by jury on its Complaint against KPMG on all issues so triable.

Respectfully submitted,

*[signature]*

JENNER & BLOCK LLP

Jerome L. Epstein (DC Bar #412824)
Ian Heath Gershengorn (DC Bar #448475)
Jenner & Block LLP
601 13th Street, N.W.
Suite 1200
Washington, D.C. 20005
202-639-6062 (voice)
202-639-6066 (fax)
jepstein@jenner.com

Ronald L. Marmer
C. John Koch
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL 60611-7603
312-222-9350

# EXHIBIT B

JENNER&BLOCK

Jerome L. Epstein
Partner

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
Tel 202 639-6000
Direct 202 639-6062
Direct Fax 202 661-4837
jepstein@jenner.com
www.jenner.com

Received
DEC 12 2006
F. Joseph Warin

LAW OFFICES

JENNER & BLOCK

601 THIRTEENTH STREET, N.W.

WASHINGTON, DC 20005

No. N265370

F. Joseph Warin
Gibson Dunn & Crutcher LLP
1050 Connecticut Ave, NW
Washington, DC. 20036

BY MESSENGER

501-010-0500

LIGHTNING
COURIER

EXPRESS
SERVICE

JENNER&BLOCK

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005