UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639 |
| | Judge Richard J. Leon |

**THIRD PARTY OFHEO'S OPPOSITION TO DEFENDANT FRANKLIN D. RAINES'S MOTION FOR AN ORDER TO SHOW CAUSE WHY OFHEO SHOULD NOT BE HELD IN CONTEMPT OF THE COURT'S NOVEMBER 6, 2006, ORDER**

**I. Introduction**

As can be seen from the haste with which Mr. Franklin Raines has sought this Court's intervention, he failed to confer in good faith with third-party OFHEO regarding purported deficiencies in OFHEO's privilege log. In regard to disputes concerning OFHEO's privilege log, the parties agreed that Mr. Raines's counsel would provide OFHEO a list of entries in the privilege log which he claims are deficient with a detailed explanation of purported deficiencies (such as those Mr. Raines's counsel has now articulated to the Court)[1]. This agreement reflected no more than the usual practice regarding such disputes and embodied the requirements of Local Rule 7(m). Nevertheless, counsel for Mr. Raines then filed an unripe motion with the Court, which has only increased an already heavy burden imposed upon OFHEO as a result of its ongoing and extensive subpoena compliance. In response to Mr. Raines's Motion, OFHEO has reviewed his detailed concerns about OFHEO's privilege log and is in the process of producing a

---

[1] *See e.g.* Defendant Franklin D. Raines's Motion for an Order to Show Cause Why OFHEO Should Not Be Held in Contempt of the Court's November 6, 2006 Order ("Raines Mot.") at fns. 8, 11, and 12.

revised privilege log responsive to some issues raised by Mr. Raines. Regarding the issues of OFHEO's deliberative process privilege and examination privilege, Mr. Raines's analysis is flawed. Nevertheless, due to OFHEO's production of a revised privilege log, these issues may not yet be ripe for judicial review. For these reasons, OFHEO requests that the Court deny Mr. Raines's Motion and instruct counsel for Mr. Raines to adopt the "cooperative spirit" that the Court urged upon <u>all</u> parties and third-party OFHEO. Hr'g Tr. at 43:24-25, Nov. 3, 2006.

## II. BACKGROUND

On November 17, 2006, OFHEO began producing documents responsive to Mr. Raines's subpoena in accordance with the Court's guidance given during the November 3, 2006, hearing and the Court's November 6, 2006, Order. *See* Gov. Exh. A. Thereafter, OFHEO continued to produce documents responsive to Mr. Raines's first priority request for documents. *See* Gov. Exh. B.

In Defendants' first priority request, Defendants' counsel explained that they sought all workpapers related to OFHEO's annual examinations from 1995 through 2005. The documents responsive to Defendants' request were non-public, privileged documents. Nevertheless, within the confines of the Protective Order, OFHEO produced 179,134 pages of documents[2] that are privileged as examination work papers.[3] Because such documents normally come within the recognized ambit of the examination privilege, OFHEO marked such documents as "confidential." OFHEO designated only its more recent documents with the greatest continuing

---

[2]    On November 17, 2006, OFHEO produced 8,371 pages of documents. *See* Gov. Exh. A. Thereafter, OFHEO produced another 170,763 pages of documents by December 12, 2006. The page-count was provided by BDS, a copying vendor for this production.

In OFHEO's cover letter with the produced documents, OFHEO expressly reserved all applicable privileges either by OFHEO or Fannie Mae. Gov. *See* Exh. A.

2

impact on its current examination work as privileged. This amounted to approximately 198 documents.

For each of the privileged documents on the privilege log, a description of the document and the privilege(s) that protect it, together with other identifying data, were entered on the log. These privilege determinations were reviewed and the logs checked for completeness and accuracy. Documents to be produced were also reviewed to ensure that all documents were properly scanned and that no privileged materials were inadvertently included. This is a time-consuming and difficult process, for which OFHEO has no dedicated staff.

OFHEO began its rolling production almost a month prior to the first production date ordered by the Court. During the production of Defendants' first priority request, OFHEO accelerated its ongoing work by temporarily transferring all twelve attorneys and paralegals working on discovery production on another case to the instant matter, authorizing overtime of its in-house staff, negotiating a separate contract line item to allow contract personnel to work overtime at premium rates and utilizing three additional temporary contract attorneys. In sum, OFHEO utilized approximately 20 full-time staff, many of whom worked through weekends and evenings to produce 104 boxes of documents responsive to the first priority requests. On December 12, 2006, OFHEO produced a working copy of a privilege log to Defendants.

On December 15, 2006, counsel for OFHEO met with counsel for both Mr. Raines and Mr. Howard. In that meeting, counsel for OFHEO and the Defendants agreed that they would provide OFHEO an enumerated list of questioned entries on OFHEO's privilege log and an explanation of the purported shortcomings. Thereafter, however, on December 18, 2006 (the day the Notice of Charges was issued against Mr. Raines), counsel for Mr. Raines failed to comply with the agreement and sent what is best described as a combative letter to OFHEO, which

identified some issues Mr. Raines had with the privilege log. *See* Raines Mot. at Exh. 3. In response, OFHEO requested that Mr. Raines specify the entries on the privilege log for which he desired additional information – as agreed upon by the parties at the December 15th conference. Specifically, OFHEO's letter to Mr. Raines states:

> The [December 18th] letter does not, as Defendants committed to do in our December 15th meet and confer session, specify only those privilege log entries for which Defendants seek additional descriptive information to determine whether to challenge the privilege assertion. This is standard procedure and similar to protocols OFHEO has reached with your firm in other cases.
>
> At present, the December 18th letter does not specify the entries on the privilege log for which Defendants seek further information. We urge that Defendants comply with the agreement reached by the parties at the meeting. More particularly, we ask that Defendants specify the entries on the privilege log for which Defendants need more information. This process will greatly limit or eliminate the need for any judicial involvement in this matter.

*See* Truong's Dec. 20, 2006 Letter to Romain (Gov. Exh. C). Mr. Raines rejected OFHEO's overture and reneged on the parties' agreement. *See* Raines Mot. at Exh. 5. On the same day that Mr. Raines filed this Motion, OFHEO again reached out to Mr. Raines to resolve their differences without unnecessarily involving the Court. OFHEO's December 22nd letter to Mr. Raines states:

> As you should recall, at the meeting on December 15, 2006, Defendants agreed to specify the entries on OFHEO's privilege log as to which Defendants require additional explanations to make a decision on whether to challenge the privilege assertion. We then sought clarification that Defendants would not require OFHEO to provide explanations for every single entry on the privilege log. In response, Defendants assured OFHEO that they would highlight or point out only certain entries on the privilege log.
>
> In short, OFHEO agreed to review the specific entries so identified and provide more detail if it believed the request was appropriate. In this way, the parties could attempt to resolve any issues amicably without unnecessary court intervention. Even assuming that court intervention was necessary, this interactive methodology would at least clarify and simplify the issue for Judge Leon and expedite resolution. This methodology is both common practice and reasonable in application. This interactive methodology is contemplated under

4

> Rule 45(c)(1), which requires Defendants (as the requesting parties) to "take reasonable steps to avoid imposing undue burden or expense on [OFHEO] the subject of the subpoena." Fed. R. Civ. P. 45(c)(1).
>
> We urge Defendants to reconsider their position and follow through on the agreement reached by the parties on December 15, 2006.

*See* Truong's December 22, 2006 Letter to Romain (Gov. Exh. D).

Mr. Raines's Motion was the first time that he identifies the specific entries on the Privilege Log that he believes are inadequate and need additional information. *See* Raines Mot. at fns. 8, 11 and 12 (identifying – for the first time – the specific entries on the Privilege Log for which Mr. Raines wants additional information). If Mr. Raines had presented any of the detail (as requested by OFHEO) that he has set forth for the Court in footnotes 8, 11 and 12 of his Motion, this matter might have been settled amicably without Court intervention.

### III. ARGUMENT

**A. Mr. Raines Has Not Shown By Clear and Convincing Evidence That OFHEO Violated a Definite and Specific Order.**

Mr. Raines has not demonstrated by clear and convincing evidence that OFHEO violated the Court's November 6, 2006 Order as required to warrant a finding that OFHEO is in contempt of Court.

Civil contempt is a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance. *American Rivers v. Army Corps of Engineers*, 274 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *NLRB v. Blevins Popcorn, Co.*, 659 F.2d 1173, 1184 (D.C.Cir.1981). The principal purpose of civil contempt is vindication of judicial authority. *Blevins Popcorn,* 659 F.2d at 1185 n. 73.

A party is in contempt of court when he "violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of

5

that order." *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678 (D.D.C.1995) (quoting *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir.1987)). As the party seeking a finding of contempt, Mr. Raines bears the initial burden of showing, by clear and convincing evidence, that (1) a court order is in effect, (2) the order requires certain conduct by OFHEO, and (3) OFHEO fails to comply with the order. *See SEC v. Bilzerian,* 112 F. Supp. 2d 12, 16 (D.D.C. 2000) (citing *Bankers Alliance Corp.*, 881 F. Supp. at 678).

Here, the Court's November 6, 2006 Order requires OFHEO to provide "a detailed privilege log of those documents for which privilege is being asserted." *See* Nov. 6, 2006 Order. The Court, however, does not identify what specific information must be in the privilege log. In compliance with the Court's November 6th Order, OFHEO produced a privilege log as part of its document production in response to Mr. Raines's first priority request for documents. The privilege log contains 11 columns. These columns describe (1) document entry number; (2) the date; (3) the year; (4) the specific binder where the document(s) come from; (5) the document number; (6) the author; (7) the recipients; (8) the copyees; (9) the document description; (10) the specific privilege asserted; and (11) the basis for the privilege. *See* Raines Mot. at Exh. 2 (OFHEO's Privilege Log).[4]

---

[4] OFHEO notes that it has provided more than explicitly required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(5) "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work production protection." *See* Advisory Commt. Notes 1993 Amendments, subdivision (b). In fact, in cases such as this one where the materials being produced are voluminous, the Rule explicitly contemplates describing items withheld by category, rather than document-by-document. Thus, the Committee Notes suggest that requiring more may be unduly burdensome on OFHEO. This is particularly true here where OFHEO is not a party but only a recipient of a third-party subpoena. Regardless, by providing a document-by-document privilege log, OFHEO has provided more than Rule 26 explicitly requires.

In short, OFHEO has provided a "detailed privilege log" to Mr. Raines along with its document production. Although Mr. Raines disagrees with the level of detail that OFHEO has provided in its privilege log, this disagreement is not "clear and convincing evidence" that OFHEO failed to provide a "detailed privilege log." Furthermore, given that OFHEO has provided a privilege log – with 11 columns of information – OFHEO has not violated " a definite and specific court order." *Bankers Alliance Corp.*, 881 F. Supp. at 678. Therefore, there is no basis for a finding of contempt under the circumstances presented here.

### B. Counsel for Mr. Raines Failed to Confer in Good Faith with OFHEO prior to Filing His Motion to Hold OFHEO in Contempt

Counsel for Mr. Raines failed to confer in good faith with OFHEO prior to filing his motion. On December 15, 2006, counsel for OFHEO met with counsel for both Mr. Raines and Mr. Howard. In that meeting, counsel for OFHEO and Mr. Raines agreed that Mr. Raines would provide OFHEO an enumerated list of those documents with a detailed explanation of the purported shortcomings in OFHEO's privilege log.[5] This agreement reflected nothing more than the usual, ordinary practice regarding privilege log disputes. Moreover, it embodied the principles set forth in Local Rule 7(m).

Thereafter, however, counsel for Mr. Raines failed to comply with the agreement and failed to articulate his position to OFHEO. For these reasons, counsel for Mr. Raines does not appear to be acting in good faith and this matter is unripe and needlessly before the Court. *See Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006) ("[B]asic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

---

[5] The agreement was consistent with Mr. Raines's duty to "take reasonable steps to avoid imposing undue burden or expense" on OFHEO. Fed.R.Civ.P. 45(c).

7

disagreements...") (*quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149, 87 S. Ct. 1507 (1967)).

Despite Mr. Raines's provocation, OFHEO has treated the information contained in Mr. Raines's Motion as if it were disclosed to OFHEO as part of the meet and confer process contemplated in the parties' agreement. *See e.g.*, Mr. Raines Mot. at fns. 8, 11, and 12. Accordingly, OFHEO is revising its privilege log to incorporate some changes sought by Mr. Raines. To that end, OFHEO will clarify the references for "date" and "year." To address Mr. Raines's complaint of OFHEO's use of the "Freddie Mac Privilege" (Raines Mot. at 14-15), OFHEO will begin to produce redacted versions of documents identified on the privilege log when appropriate to remove privileged material or irrelevant material pertaining only to Freddie Mac. In addition, OFHEO will include the number of pages of each privileged document listed on the privilege log. Finally, OFHEO agrees, at the conclusion of the meet and confer process, to produce an affidavit from a "head of a department" attesting to OFHEO's appropriate designation of the privileged documents and setting forth an explanation in support of the privilege.

OFHEO opposes the remainder of Mr. Raines's Motion. This, however, should not excuse Mr. Raines's failure to confer in good faith with OFHEO regarding Mr. Raines's objections. Counsel for Mr. Raines may not argue that the requirement to confer in good faith is moot because OFHEO opposes some of the relief sought. *See Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999)("[Rule 7(m)] would be meaningless if a party could...file any nondispositive motion they chose without meeting and conferring, and later argue that a [Local Rule 7(m)] argument is moot simply because the motion is later opposed."). For his failure to comply with

8

the requirements of Rule 7(m), and for the reasons discussed below, Mr. Raines's Motion should be denied.

### C. OFHEO Has Provided Sufficient Information regarding Documents Identified on the Privilege Log as Protected by the Deliberative Process Privilege

The Court's November 6, 2006 Order requires that OFHEO provide "a detailed privilege log of those documents for which a privilege is being asserted." *See* Nov. 6, 2006 Order. While the Court did not specify the type of information the log should contain, OFHEO has endeavored to produce a Privilege Log that it believes gives Mr. Raines sufficient information to challenge the asserted privileges, including the deliberative process privilege.

OFHEO has asserted the deliberative process privilege over documents that reflect the agency's decision making processes. These deliberative materials are neither source materials that OFHEO receives from the regulated Enterprises nor public statements by the agency. The deliberative process privilege is fundamental to maintaining the efficacy and institutional competence of OFHEO in its mission to ensure the safety and soundness of Fannie Mae and Freddie Mac.

Mr. Raines, however, miscomprehends the nature of the deliberative process privilege and the predicate facts OFHEO has established to assert the privilege. An agency need not identify a final agency decision taken, if any, in connection with a pre-decisional, deliberative document. Rather, the document's role within the deliberative process provides its protection. *See Costal States Gas Corp. v. United States Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980); *Judicial Watch, Inc. v. United States Dep't of Commerce*, 90 F. Supp. 2d 9, 13-15 (D.D.C. 2000).

The types of information meriting protection under the deliberative process privilege include "'advisory opinions, recommendations, and deliberations comprising part of a process by

9

which governmental decisions and policies are formulated.'" *Judicial Watch*, 90 F. Supp. 2d at 13-15 (*quoting NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, at 150, 95 S.Ct. 1504.). Drafts, analyses, recommendations, proposals, internal deliberations and discussions, commentary, candid personal comments and the like are included within the protection of the deliberative process. *See Sierra Club v. United States Dep't of Interior*, 384 F. Supp. 2d 1, 18-19 (D.D.C. 2004). Factual material from deliberative documents must be disclosed unless it is inextricably intertwined with the deliberative material, *Defenders of Wildlife v. United States Dep't of Interior*, 314 F. Supp. 2d 1, 17-18 (D.D.C. 2004), or unless disclosure of the factual material may itself disclose agency deliberations. *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.*, 844 F. Supp. 770, 782 (D.D.C. 1993)(*citing Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)).

Mr. Raines also complains that OFHEO asserts the deliberative process privilege over materials produced and maintained internally by OFHEO in contemplation of OFHEO's eventual response to congressional inquiries. *See* Raines Mot. at 11. In support of his contentions, Mr. Raines points to Document 12 on the original privilege log, which is described as a "[p]redecisional draft response to congressional inquiry sent to OFHEO's Director." *See* Raines Mot. at 11; *see also* Entry No. 12 of Privilege Log (Raines Mot. at Exh. 2).

Mr. Raines's position is illogical and puzzling. OFHEO agrees that it may not claim the deliberative process privilege over materials produced by the agency in response to a congressional inquiry,[6] but Document 12 was not sent by the agency to Congress in response to a

---

[6] Contrary to Mr. Raines's allusions otherwise, in *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571 (D.C. Cir. 1990), the letter at issue was sent from the Department of Justice to Congress. The Court makes clear that had the document been used merely for internal purposes, then the document would have been protected by the deliberative process privilege. *Id.* at 575.

congressional inquiry. The description of the document is rather explicit in this regard — indicating that the document was a draft provided to the Director rather than a document provided by the Director to Congress. *See* Entry No. 12 of Privilege Log (Raines Mot. at Exh. 3). In this case, Document 12 reflects OFHEO's deliberative process on how to respond to a congressional inquiry – the document was not a response sent to Congress. *See Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571 ("This ancient [deliberative process] privilege is predicated on the recognition 'that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl.'") (*quoting Wolfe v. Department of Health and Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988)). As such, Document 12 and similar documents are protected under the deliberative process privilege. *See Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571; *Formaldehyde Institute v. Department of Health and Human Servs.*, 889 F.2d 1118 (D.C. Cir. 1989); *Ryan v. Department of Justice*, 617 F.2d 781 (D.C. Cir. 1980).

### D. The Examination Privilege Extends to Documents Prepared, Created and Used by OFHEO Examiners in the Course of their Examination Work

Mr. Raines now claims that he does not understand the nature of OFHEO's examination privilege. *See* Raines Mot. at 12. While OFHEO has set forth the scope and nature of the examination privilege in previous filings in this action,[7] it will again articulate the nature of the examination privilege for Mr. Raines and the convenience of the Court.

The examination privilege protecting the documents identified on the privilege log is both well-established and long-standing. *In re Subpoena upon Comptroller of Currency*, 967 F.2d

---

[7] *See e.g.,* Third Party OFHEO's Reply Memorandum In Support Of OFHEO's Motion To Quash Howard's And Raines's Subpoenas Duces Tecum, Docket Entry #232, p. 20 fn. 10.

630, 633 (D.C. Cir. 1992)(*citing Bank of America Nat'l Trust & Sav. Ass'n v. Douglas*, 105 F. 2d 100, 104-06 (D.C. Cir. 1939) and *In re Franklin Nat'l Bank Securities Litig.*, 478 F. Supp. 577, 580-582 (E.D. N.Y. 1979)). The purpose of the privilege is to "preserve candor in communications between [the regulated entity] and examiners, which those parties consider essential to the effective supervision of [the regulated entity]. The privilege is firmly grounded in practical necessity." *In re: Bankers Trust Company*, 61 F.3d 465, 471 (6th Cir. 1995)(*citing In re Subpoena upon Comptroller of Currency*, 967 F.2d at 633). In that case, the Court described the rationale behind the privilege as follows:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communications between the regulated banking firm and the bank regulatory agency.... Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*In re Subpoena upon Comptroller of Currency*, 967 F.2d at 633-34.

The examination privilege is "a close cousin of the deliberative process privilege." *In re: Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1423 (D.C. Cir. 1998). Workpapers that reflect examiners' opinions, recommendations, analyses, reflections and processes are all protected by the examination privilege. *In re Midlantic Corp. Shareholder Litig.*, Misc. Docket No. 92-99, 1994 U.S. Dist. LEXIS 21514, *12-17 (D.D.C. October 24, 1994). Factual material from deliberative documents must be disclosed unless it is inextricably intertwined with the deliberative material, *Defenders of Wildlife*, 314 F. Supp. 2d at 17-18, or unless disclosure of the factual material may itself disclose

agency deliberations. *Cleary, Gottlieb, Steen & Hamilton.*, 844 F. Supp. at 782 (*citing Mead Data Central, Inc.*, 566 F.2d at 256).

As stated above, OFHEO will produce redacted copies of documents identified on the privilege log to the extent that the factual portions of those documents were not inextricably intertwined with OFHEO's examination and deliberative processes. Because Mr. Raines did not confer in good faith with OFHEO before filing his motion to hold OFHEO in contempt, these issues have not been narrowed by the parties. As a result, OFHEO suggests that these issues are not yet ripe for the Court's attention. Consequently, the Court should deny Mr. Raines's motion to hold OFHEO in contempt.

## IV. CONCLUSION

Mr. Raines's contention that he is not interested in putting "OFHEO through its paces" or "consuming the Court's time with unnecessary discovery litigation" is belied by the actions of his counsel. *See* Raines Mot. at 2. Cooperation is a two-way street. OFHEO has acted in good faith with its best efforts to respond appropriately to Mr. Raines's requests. Nevertheless, Mr. Raines has taken an unnecessary and increasingly hostile and aggressive posture in regard to OFHEO, especially since OFHEO filed a Notice of Charges against Mr. Raines on December 18, 2006. Mr. Raines appears to be using procedural mechanisms in this action to subvert the rules and regulations applicable in the administrative action against him. This tactic is inappropriate and should not be countenanced by the Court.[8] *See Wilk v. American Medical Association*, 635

---

[8] Similarly, Mr. Raines's proposed sanction—the compelled waiver of all of OFHEO's privileges—is inappropriate and bespeaks the haste and recklessness of Mr. Raines's Motion. *See* Raines Mot. at 18. OFHEO has made a good faith effort to produce a privilege log that fairly allows Mr. Raines to contest assertions of privilege. In developing the privilege log (which has approximately 198 documents identified (3,300 pages)) -- compared to 179,134 pages of documents produced), OFHEO sought to work with all defendants to identify any ambiguity in
(Continued…)

F.2d 1295, 1300 (7th Cir. 1980)(referring to "the principle that federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding"); *see generally* 8 Charles Alan Wright et al., Wright, Miller & Kane Federal Practice and Procedure: Civil 3d § 2040.

For all of the foregoing reasons, OFHEO respectfully requests the Court to deny Mr. Raines's Motion to hold OFHEO in contempt.

Dated: January 19, 2007.                    Respectfully Submitted,


   /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406


Attorneys for the Office of Federal Housing Enterprise Oversight

---

(Continued…)

the log and provide additional information if appropriate.  Mr. Raines disavowed such a procedure and now seeks a drastic remedy that could impair the ability of OFHEO to regulate Fannie Mae and Freddie Mac without any coordinate benefit in this civil action.  Accordingly, the Court should not consider the relief Mr. Raines seeks.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation** | **MDL No. 1668** |
| **In re Fannie Mae Securities Litigation** | **Consolidated Civil Action No. 1:04-cv-01639** |
| | **Judge Richard J. Leon** |

**ORDER**

Upon consideration of Defendant Franklin D. Raines's Motion for an Order to Show Cause Why OFHEO Should Not Be Held In Contempt of the Court's November 6, 2006 Order (Dkt. No. 316), OFHEO's Response thereto, and the entire record herein, it is this _____ day of _____ 2007,

ORDERED that Defendant Franklin D. Raines's Motion for an Order to Show Cause Why OFHEO Should Not Be Held In Contempt of the Court's November 6, 2006 Order (Dkt. No. 316) is and be hereby DENIED.

SO ORDERED.

_____
U.S. District Judge