**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In Re Fannie Mae Securities Litigation** | **Consolidated Civil Action**<br>**No. 1:04-cv-1639 (RJL)** |
| **Evergreen Equity Trust,** *et al,* **v. Federal National Mortgage Association,** *et al.*<br><br>**and**<br><br>**Franklin Managed Trust,** *et al.* **v. Federal National Mortgage Association,** *et al.* | **Case No. 1:06-cv-00082 (RJL)**<br><br><br>**Case No. 1:06-cv-00139 (RJL)** |

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES  IN SUPPORT OF THE MOTION BY RADIAN GUARANTY INC. TO DISMISS THE SECOND AMENDED COMPLAINTS**

Radian Guaranty Inc. ("Radian") submits this supplemental memorandum in further support of its motion to dismiss the *Evergreen* and *Franklin* plaintiffs' second amended complaints in accordance with the Court's instruction at the conclusion of the argument on March 1, 2007.  We briefly address five points.

*First*, the E&F plaintiffs' counsel's arguments made clear that the E&F plaintiffs did not adequately allege scienter.  When the Court asked counsel what allegations, if any, are in the second amended complaints concerning Radian's scienter, counsel forthrightly conceded that the only allegations are that no risk was transferred and that so-called finite insurance policies are profitable, *see* Transcript of March 1, 2007 Argument ("Transcript") at 74:20-77:24, to which

the Court appropriately observed that there is nothing to indicate that this particular policy was profitable, *see* Transcript at 74:20-75:25.  As the Court further noted, nothing in the second amended complaints or, indeed, in the investigation reports cited to the Court by counsel for the E&F plaintiffs, indicates in any way that Radian had any knowledge at all of any fraud or any improper intent with respect to the accounting treatment for its one transaction with Fannie Mae. *See* Transcript at 77:25-78:15.

Counsel for the E&F plaintiffs also argued that the complaints contain boilerplate averments of knowledge.  *See* Transcript at 76:1-12.  However, such boilerplate allegations are insufficient.  *In re U.S. Office Prods Sec. Litig.*, 326 F. Supp. 2d 68, 73 (D.D.C. 2004); *see also In re Ikon Office Solutions*, 277 F.3d 658, 667 (3d Cir. 2002).   The same deficiency obviously infects the E&F plaintiffs' efforts to state common law claims for aiding and abetting a fraud, where actual knowledge is a requirement in jurisdictions that recognize such a cause of action. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006) (affirming dismissal of aiding and abetting fraud claim where conclusory allegations of actual knowledge failed to meet heightened pleading requirement of Rule 9(b)).

***Second***, the arguments by counsel for the E&F plaintiffs confused the issue of what is a sham transaction under *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005) and similar cases with the much different accounting issue of whether a particular contract is to be treated as insurance or as a loan.  *See* Transcript at 80:4-8.  Under *Parmalat* and similar cases, a transaction is not a sham when there is ***any*** appropriate accounting characterization for the transaction.  *Simpson v. AOL Time Warner*, 452 F.3d 1040, 1053 (9th Cir. 2006); *Parmalat*, 376 F. Supp. 2d at 505.  Thus, for example, in *Parmalat*, Citibank's investment interest in a Parmalat subsidiary, in hindsight, properly should have been accounted as a loan rather than as a

purchase. *Id*. at 483.  Because the transaction could properly be accounted as a loan, the court

found that the transaction was not a sham.  *Id*.  By contrast, also in the *Parmalat* case, when

Citibank and BNL factored and securitized phony invoices, the transaction was sham because the

underlying invoices did not exist and the transactions could not have been reported properly by

Parmalat.  *Id*. at 504.

Contrary to the E&F plaintiffs' assertions at argument, the reclassification of the

single transaction between Radian and Fannie Mae from insurance to loan does not make that

transaction a "sham" or establish that Radian undertook "no risk."  *See* Transcript at 72:9-73:25.

Rather, it means only that the relationship between the amount of the premium and the amount of

the risk transferred made the transaction reportable as a loan rather than as insurance under

FASB Statement No. 113.  Indeed, under the *Parmalat* line of cases, the ability to reclassify

establishes that the transaction is *not* a sham.

***Third***, the E&F plaintiffs' counsel made no effort to remedy or explain away the

utter failure in the second amended complaints to identify any financial statement impact at all of

the recharacterization of the Radian-Fannie Mae contract from insurance to loan.  There will

only be a financial statement impact to the limited extent that Fannie Mae's actual loan

experience differs from Fannie Mae's amortization of the $35 million premium.  There is no

indication whatsoever that there was or is any material difference.  Thus, the E&F plaintiffs'

second amended complaints fail to aver materiality, which is yet another reason why they should

be dismissed.

***Fourth***, counsel for the E&F plaintiffs failed to establish at the argument that

their purported aiding and abetting claim against Radian survives the preemptive effect of the

3

Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. § 78bb(f)(1) and (f)(5)(B)(ii).

Counsel offered only three substantive arguments that SLUSA preemption does not apply, none

of which has merit:

**a.**  Counsel argued that "the only way that we could be characterized as covered

class actions is to say, well, our cases, together with the [main] class action, form a group which

is pending in the same court and they have been consolidated."  Transcript at 49:7-11.  As

Radian has explained in previous briefing, counsel's characterization is perfectly correct:  the

plain text of SLUSA makes clear that the E&F plaintiffs' action and the main class action

together constitute a "covered class action," triggering the preemption of any state law claims.

Significantly, counsel for the E&F plaintiffs did *not* dispute that the main class action, standing

alone, *is* a "covered class action" for purposes of SLUSA preemption and implicitly

acknowledged that the E&F plaintiffs could never have asserted their purported aiding and

abetting claim against Radian had they been a part of that class action.  Thus, counsel's argument

boils down to the contention that simply by the contrivance of *opting out* of the main class action

and bringing a separate parallel suit in the same Court on the same alleged facts, the E&F

plaintiffs can evade the preemptive effective of SLUSA.  But the prospect of parallel actions

"with different standards governing claims asserted on identical facts" -- *i.e.,* SLUSA preemption

applying to the main class action, while the E&F plaintiffs' individual claims somehow escape

that fate -- is precisely what SLUSA was supposed to avoid.  *Merrill Lynch, Pierce, Fenner &*

*Smith, Inc. v. Dabit,* 547 U.S. 71, 126 S. Ct. 1503, 1514 (2006).  Plaintiffs cannot make an end

run around SLUSA by opting out of what they concede is a "covered class action."

**b.**  Counsel argued that if the E&F plaintiffs' purported state law claims are

preempted, "then you can never have a legitimate individual action in the same court with a class

action and have them consolidated for Discovery or any other purpose.  And I don't think there is any evidence that that's what Congress intended."  Transcript at 49:12-16.  But contrary to counsel's assertion, that is precisely what Congress intended.  Indeed, the very passage from the legislative history on which counsel relied at the argument "underscores congressional intent to preempt state court litigation [and state law claims] whenever separately filed suits are consolidated, *even where the suits are 'bona fide individual actions.'*"  *In re Worldcom, Inc.,* 308 F. Supp. 2d 236, 247 (S.D.N.Y. 2004) (emphasis added) (quoting S. Rep. 104-182 at 7-8).

> **c.**  Lastly, counsel argued that the E&F plaintiffs filed suit in this Court "to be responsible . . . so that we could have some coordination," *i.e.,* to benefit from the efficiency of proceeding in conjunction with the main class action (which counsel concedes is a "covered class action" under SLUSA) and that they "shouldn't be required to give up [their] state law claims" as a result of this choice.  Transcript at 50:16-17, 22-24.  Counsel asserted that if the E&F plaintiffs were "required to give up [their] state law claims," it purportedly would "set up an incentive for individual plaintiffs to try to find a Court where they can't be consolidated with the class action because that's just going to promote inefficiency."  *Id.* at 50:18-20.  This argument merely is an attempt to sidestep SLUSA's carefully crafted framework.  SLUSA envisions that plaintiffs will meticulously balance their interests *before* filing suit -- a process in which the E&F plaintiffs are unwilling to engage.  To the extent plaintiffs, as here, desire to benefit from the efficiency of proceeding in coordination with other federal securities actions arising out of the same alleged facts, then SLUSA does indeed mandate that they "give up [their] state laws claims," if those actions as a group exceed the 50 plaintiff threshold, as here, because this achieves "the congressional preference for 'national standards for securities class action lawsuits involving nationally traded securities."  *Merrill Lynch,* 126 S. Ct. at 1514 (quoting SLUSA § 2(5), 112

Stat. 3227)).  Plaintiffs' protestations that they somehow have a "right" to bring these state law

claims, Transcript at 50:14, however that might conflict with the federal policy of uniformity in

securities litigation -- simply is a refusal to abide by SLUSA's scheme.  The choice is clear:

plaintiffs cannot bring state law claims and remain in this Court.

And finally, *fifth,* the recent decision by Pennsylvania's intermediate appellate

court in *Sovereign Bank v. Valentino,* 2006 Pa. Super. LEXIS 4130 (Nov. 27, 2006), does not

stand for the proposition that Pennsylvania recognizes a civil tort claim for aiding and abetting

under Section 876 of the Restatement.  To begin with, if *Sovereign Bank* had so held, it would

directly conflict with controlling authority by Pennsylvania's highest court in *Morrow v. Wilson,*

109 A. 632, 634 (Pa. 1920), in which the Pennsylvania Supreme Court held that a trust company

that provided mortgage insurance and settlement services in the ordinary course of business for

real estate transactions it allegedly knew were fraudulent could not be liable for aiding and

abetting the fraud.

Furthermore, *Sovereign Bank* could not have recognized aiding and abetting as a

theory of tort liability under Pennsylvania law because it did not involve aiding and abetting,

such as is alleged here.  Rather, *Sovereign Bank* involved a *conspiracy* in which two defendants,

one inside the bank and one outside, actively worked together to "misappropriate and convert"

the bank's money "for the[ir] *mutual pecuniary gain.*"  2006 Pa. Super. LEXIS 4130 at *20

(emphasis added).  *Both* defendants committed wrongful acts.  This contrasts sharply with the

theory of aiding and abetting liability asserted here -- which the Pennsylvania Supreme Court

flatly rejected in *Morrow* -- in which only one defendant is alleged to have engaged in wrongful

acts, while another defendant (Radian) is alleged to have offered legitimate services in the

ordinary course of business that it supposedly knew would aid the tortfeasor in that alleged

wrongful conduct. *Cf. Morrow,* 109 A. at 634.

Counsel for the E&F plaintiffs argued that "*Sovereign Bank* expressly held that

concerted action, as defined in Section 876 of the Restatement, is a recognized civil cause of

action under Pennsylvania law," Transcript at 89:16-18, as if such a holding could support the

theory of liability that the E&F plaintiffs assert against Radian here.  Counsel's argument fails to

clearly distinguish the very different theories of liability described under Restatement of Torts

Section 876.  Only one of these -- concerted tortious action -- was supported in *Sovereign Bank.*

But that is not theory the E&F plaintiffs assert against Radian.

Section 876 provides:

> For harm resulting to a third person from the tortious conduct of another,
> one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common
> design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives
> substantial assistance to encouragement to the other so to conduct himself;
>
> . . . .

Restatement (Second) of Torts § 876.

The contrast between these two subsections is clear:  Section 876(a) requires, as

in *Sovereign Bank,* an illegitimate agreement in which all defendants improperly participate. *See*

Restatement § 876 cmt. a ("Parties are acting in concert [under Section 876(a)] when they act in

accordance with an agreement to cooperate in a particular line of conduct or to accomplish a

particular result.").  "In order for this cause of action to be viable, there must be acts of a tortious

character pursuant to a common design or plan." *Cummins v. Firestone Tire & Rubber Co.,* 495

A.2d 963, 969 (Pa. Super. Ct. 1985) (discussing Section 876(a)).  "[I]t is essential that the

conduct of [each alleged conspirer] be *in itself tortious*."  Restatement § 876 cmt. b (emphasis

added).

By contrast, aiding and abetting under Section 876(b) -- the theory which the E&F

plaintiffs assert against Radian -- presupposes conduct in itself legitimate that the alleged aider

and abettor knows will assist a third party in *that* party's tortious endeavor.  *Morrow* makes clear

that Pennsylvania law recognizes no such theory.  Under *Morrow,* allegations that a defendant

provided services in the ordinary course of business, *even with the alleged knowledge that those*

*services are being utilized by a third party to perpetrate a fraud,* fails to state a tort claim unless

the defendant's conduct breaches an independent duty it owes directly to the plaintiff.  Thus,

mere aiding and abetting is not a basis for tort liability in Pennsylvania.

*Sovereign Bank* does not -- and could not -- contradict the holding of *Morrow.*

Far from providing services "incidental and in the course of business," *Morrow,* 109 A. at 634,

the defendants in *Sovereign Bank* actively participated in a money laundering scheme in which

they both illicitly profited.  2006 Pa. Super. LEXIS 4130 at *20.  The conduct of each defendant

was "in itself tortious."  Restatement § 876 cmt. b.  This describes conduct under Section 876(a),

*not* 876(b).[1]

---

[1]    In *dicta, Sovereign Bank* stated that the plaintiff's allegations "purport[ed] to raise" a
Section 876(b) claim.  *Sovereign Bank,* 2006 Pa. Super. LEXIS 4130, at *21.  But the
court never cited Section 876(b) in its *holding* that "Sovereign presented sufficient,
circumstantial evidence to demonstrate concerted tortious conduct on the part of
[defendants]."  Thus, consistent with its facts, *Sovereign Bank* must be understood to *hold*
that the plaintiff had presented sufficient evidence of concerted tortious conduct under
Section 876(a), *not* 876(b).

For the reasons set forth above, and in its Initial Papers and Reply Memorandum,

Radian respectfully requests that its motion to dismiss be granted and that the Second Amended

Complaints be dismissed with prejudice as against Radian.


Dated:  March 14, 2007                      Respectfully submitted,

                                            RADIAN GUARANTY INC.
                                            By Counsel

SCHNADER HARRISON SEGAL & LEWIS LLP


By:  /s/ Jonathan M. Stern
        Jonathan M. Stern (DC Bar No. 412689)
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006-1825
Telephone:  (202) 419-4200

Of Counsel:

David Smith
Jonathan S. Liss
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
Telephone:  (215) 751-2000