# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639 |
| | Judge Richard J. Leon |
| Evergreen Equity Trust, *et al.* v. Federal National Mortgage Association, *et al.* | |
| | Case No. 1:06CV00082 (RJL) |
| and | |
| Franklin Managed Trust, *et al.* v. Federal National Mortgage Association, *et al.* | Case No. 1:06CV00139 (RJL) |

**DIRECTOR DEFENDANTS' SECOND SUPPLEMENTAL BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS
<u>EVERGREEN AND FRANKLIN SECOND AMENDED COMPLAINTS</u>**

Since the filing of Director Defendants' Supplemental Brief in Support of Their Motion to Dismiss Evergreen and Franklin Second Amended Complaints, the U.S. Supreme Court has issued a decision in *Tellabs v. Makor*, 2007 WL 1773208, No. 06-484 (U.S. June 21, 2007), clarifying the requirements for pleading scienter under the Private Securities Litigation Reform Act ("PSLRA"). The *Tellabs* decision provides further grounds why this case against the Director Defendants should be dismissed.

I. ***Tellabs* Requires Plaintiffs to Plead Cogent and Compelling Inferences of Scienter that are At Least As Compelling As Competing Inferences**

On June 21, 2007, the Supreme Court in *Tellabs* ruled that district courts must consider competing inferences in determining whether a plaintiff's pleadings support a "strong inference" of scienter. *Tellabs v. Makor*, 2007 WL 1773208, No. 06-484, slip. op. p. 11 (U.S. June 21, 2007). The Court first noted that the PSLRA "strong inference"

standard has made pleading scienter more difficult. *Id.* at 10. It observed that "[t]he strength of an inference cannot be decided in a vacuum" and thus the inquiry is "inherently comparative." *Id.* at 12. A district court must ask "How likely is it that one conclusion, as compared to others, follows from the underlying facts?" *Id.* A district court in this regard must consider "plausible nonculpable explanations of the defendant's conduct" in addition to inferences favoring the plaintiff. *Id.* The Court articulated the specific standard as follows:

> [T]he inference of scienter must be more than merely "reasonable" or "permissible"— it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id.* at 12-13.

This standard, which clarifies a circuit split that had developed over the twelve years since the PSLRA became law, essentially is a two-part test. First, the inference of scienter must be cogent and compelling. Second, the inference of scienter must be at least as compelling as opposing inferences.

In addition, the *Tellabs* Court commented on the so-called "group pleading" doctrine upon which Plaintiffs rely. The group pleading doctrine is the notion that plaintiffs may satisfy the PSLRA "scienter" requirement simply by pleading that defendants collectively were responsible as part of the group that issued the allegedly misleading statements. The Seventh Circuit in *Tellabs* rejected this argument as inconsistent with the PSLRA, agreeing with the Fifth and Eleventh Circuits on this point. *Tellabs*, 437 F.3d at 602-3, citing *Southland Securities Corp. v. Inspire Insurance Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004); *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d

2

1015, 1018 (11th Cir. 2004). As the Eleventh Circuit pointed out, "the most plausible reading in light of the congressional intent is that a plaintiff . . . must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations." *Phillips*, 374 F.3d at 1018.

The Seventh Circuit's rejection of group pleading was not challenged in the Supreme Court, which specifically stated, "we do not disturb it." *Tellabs*, slip op. p. 15 n. 6. While the Supreme Court did not decide the issue, it did remand the *Tellabs* case to the lower courts for decisions based on individual scienter. Indeed, allowing group pleading of scienter would appear inconsistent with the Supreme Court's holding that the complaint must plead facts creating a "cogent and compelling" inference of scienter. *Tellabs*, slip op. p. 12. If plaintiffs could satisfy the PSLRA merely by pleading defendants' membership in a "group," the Supreme Court's insistence in *Tellabs* that the PSLRA's heightened pleading requirement be enforced in a meaningful manner would be undermined.

As discussed below, Plaintiffs here fail to raise any cogent and compelling inferences of scienter. Furthermore, any purported inferences of scienter contained in the complaints clearly are outweighed by more compelling inferences of nonculpable conduct. The complaints fail to meet the pleading standard articulated in *Tellabs* and thus should be dismissed.

## II. Plaintiffs' Allegations Here Fail the *Tellabs* Standard Because Inferences of Scienter Are Not Cogent and Compelling.

As noted above, under the pleading standard pronounced by the U.S. Supreme Court in *Tellabs*, a complaint will survive only if the inference of scienter is cogent and compelling. Scienter is a "state of mind embracing intent to deceive, manipulate, or

3

defraud." *Ernst & Ernst v. Holchfelder*, 425 U.S. 185, 193 (1976). Thus, to survive the complaint must present cogent and compelling inferences of a state of mind embracing intent to deceive, manipulate, or defraud, or at least "extreme recklessness or a conscious disregard of known problems or risks."[1] Here the complaints do not meet this exacting standard.

The Evergreen and Franklin Plaintiffs fail to assert a cogent and compelling claim of scienter because they allege merely that the Defendants *should have known* certain facts or *should have taken* certain actions. As such, at best they allege negligence on the part of the Director Defendants. *See* Director Def.'s Reply at 7. This, however, is insufficient.

Plaintiffs allege that the Audit Committee Defendants were aware of an audit difference for 1998, and therefore *should have* paid closer attention to management's activities. Evergreen Second Amended Complaint ¶ 714; Franklin Second Amended Complaint ¶ 806. They allege that the Audit Committee Defendants were aware of accounting concerns raised by an employee, Roger Barnes, in August 2003, and that this knowledge *should have* raised a "red flag" in their minds. Evergreen Second Amended Complaint ¶ 715; Franklin Second Amended Complaint ¶ 807. They allege that numerous structural problems *should have* been readily obvious to the Audit Committee Defendants. Evergreen Second Amended Complaint ¶ 718, 722; Franklin Second Amended Complaint ¶ 810, 814. They allege that the Audit Committee Defendants *should have* investigated their own accounting practices when accounting irregularities at Freddie Mac came to light. Evergreen Second Amended Complaint ¶ 717; Franklin Second Amended Complaint ¶ 809. Finally, they allege that the Audit Committee

---

[1] *See, e.g., Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195-97 (1st Cir. 1999).

4

Defendants *should have* known about the implications of derivative accounting and *should have* scrutinized the accounting for derivative instruments more closely. Evergreen Second Amended Complaint ¶ 716; Franklin Second Amended Complaint ¶ 808. None of these allegations gives rise to any cogent or compelling inference of a state of mind embracing intent to deceive, manipulate, or defraud. At best, they support an inference of negligence.

Furthermore, these allegations do not identify with requisite specificity who among the Audit Committee Defendants knew certain information or failed to act. No individual Audit Committee Defendant is alleged to have the requisite culpable mind. *See* Director Def.'s Memo. of Law in Support of Mot. to Dismiss at 5-16; Director Def.'s Reply at 3-10. Such vague and indeterminate group pleading is impermissible. Because Plaintiffs here fail to assert facts giving rise to cogent or compelling inferences of scienter as to individual Defendants, their complaints must be dismissed.

### III. Plaintiffs' Allegations Fail the *Tellabs* Standard Because Competing Inferences Outweigh Any Inference of Scienter

If any inferences of scienter are raised by the allegations here, they are readily outweighed by competing inferences of nonculpable conduct by the Defendants.

This Court already has observed that allegations virtually identical to the ones that Plaintiffs raise here were insufficient to support a claim for breach of fiduciary duty. On May 31, 2007, the Court dismissed the Second Amended Complaint in the shareholder derivative lawsuits against all defendants, including many of the current and former Officer and Director Defendants named in this action. *In Re Fannie Mae Derivative Litigation*, No. 04-1783, Mem. Op. (D.D.C. May 31, 2007) (hereinafter, "Memo. Op."). Plaintiffs here simply cannot show that their own allegations, discussed more fully below,

5

all of which are nearly identical to those found insufficient to support a claim for fiduciary breach, are sufficient to support a strong inference of fraud.

        1)     *Audit Differences Regarding Catch-Up Expenses*

Plaintiffs allege that Audit Committee should have been more scrupulous in its oversight after KPMG informed it of an audit difference regarding 1998 catch-up expenses (Evergreen Second Amended Complaint at ¶ 714; Franklin Second Amended Complaint at ¶ 806), and contend that this shortcoming somehow shows the requisite scienter.[2] However, there is a more persuasive competing inference of nonculpable conduct. As the Plaintiffs allege, the Audit Committee was assured by KPMG that these audit differences were no cause for alarm. Franklin Second Amended Complaint at ¶ 92; Paul Weiss Report at 33, 57. KPMG was aware of the concern, brought it to the attention of the Audit Committee, and issued a clean audit opinion for 1998. *Id.*

Moreover, the Court in the derivative lawsuit found that "the Amended Complaint demonstrates that the directors and the Audit Committee met and discussed any audit differences with management and KPMG, who then issued 'unqualified opinions' as to their legitimacy." Mem. Op. at 17 (citations omitted). In the immediate case, the most compelling inference from the similar factual allegations (Evergreen Second Amended Complaint at ¶ 714; Franklin Second Amended Complaint at ¶ 92, ¶ 806; Paul Weiss Report at 33, 57)[3] is that the Audit Committee acted reasonably, and without culpability, upon the opinions of its financial management and its outside auditor.

---

[2] Even if the Court finds that this allegation supports a strong inference of scienter, which it does not, it is insufficient to support a claim because it falls outside of Plaintiffs' proposed loss period and clearly is time-barred.

[3] In evaluating a 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference." *Tellabs*, Slip op. p. 11. As observed, Plaintiffs' complaints rely heavily upon the Paul Weiss Report. See, *e.g.*, Evergreen Second Amended Complaint at ¶¶ 116, 130, 145, 146, 154, and 163; Franklin Second Amended Complaint at ¶¶ 155, 170, 171, 178, 185, and 187.

6

2)  *Barnes's Concerns*

Plaintiffs next allege that the Audit Committee Defendants ignored concerns raised by Roger Barnes. But Plaintiffs admit in their respective complaints that the Audit Committee was informed that both Fannie Mae's legal department and KPMG had determined that Barnes's concerns "posed no obstacles" to signing Sarbanes-Oxley certifications. Evergreen Second Amended Complaint at ¶ 389; Franklin Second Amended Complaint at ¶ 419. Thus, Plaintiffs' own allegations raise a compelling competing inference of proper conduct when they allege that these two entities informed the Audit Committee that Barnes's concerns posed no obstacles. That inference outweighs any purported inference of scienter that might arise from allegations relating to the Audit Committee's non-investigation of Barnes's concerns.

Moreover, in the derivative action, the Court found that the Second Amended Complaint alleged that "during an Audit Committee meeting attended by KPMG, the company's controller, general counsel, and head of internal audit all reported to the directors that the issues raised by Barnes had been investigated and resolved." Mem. Op. at 17. This allegation in part led the Court to determine that the derivative complaint's allegations did not support a reasonable inference that the Outside Directors consciously failed to monitor and oversee the company's accounting oversight system. In the same fashion, the similar allegations here provide a compelling inference of nonculpable conduct that easily overrides any inference of scienter.

3)  *Improper Accounting at Freddie Mac*

Plaintiffs allege that the Audit Committee Defendants were "reckless in failing to investigate and discover similarities between Freddie Mac's improper accounting and

7

Fannie Mae's." Evergreen Second Amended Complaint at ¶ 717; Franklin Second Amended Complaint at ¶ 809. But Plaintiffs also allege that Fannie Mae's financial management was "inspired . . . to conceal their ongoing fraud at all costs" based upon "the fact that Freddie Mac made significant concessions to OFHEO and the SEC in December 2003 which led to the ruination of several of that company's officers." Evergreen Second Amended Complaint at ¶ 93; Franklin Second Amended Complaint at ¶ 116. Moreover, this Court in the derivative case expressly rejected the notion that the well-known reports about Freddie Mac "provided a basis for the outside directors to question Fannie Mae's accounting practices." Mem. Op. at 17. For this reason and others, the Court there determined that the pleadings did not sufficiently raise a substantial likelihood that the directors would be personally liable for failure to exercise proper oversight. Mem. Op. at 17-18.

The overriding inferences here from the complaints' allegations are twofold: (1) the Freddie Mac reports in the circumstances did not cause the Audit Committee Defendants to question the conduct of Fannie Mae's financial management, and (2) the Audit Committee Defendants did not know about any purported misdeeds because financial management concealed them.

    4)  *Deficient Internal Controls*

Plaintiffs assert that certain structural problems should have been obvious to the Audit Committee Defendants, and that, consequently, those Directors were responsible for deficient internal controls. Evergreen Second Amended Complaint at ¶¶ 718, 722; Franklin Second Amended Complaint at ¶¶ 810, 814. They conclude from this that the requisite scienter was present as to such matters (Evergreen Second Amended Complaint

8

at ¶ 718; Franklin Second Amended Complaint at ¶ 810). But Plaintiffs also allege that the Internal Audit Division was discouraged from communicating directly with the Audit Committee. Evergreen Second Amended Complaint at ¶ 411; Franklin Second Amended Complaint at ¶ 441. Moreover, the Paul Weiss Report, heavily cited by the Plaintiffs, affirms that the Board "had every reason" to trust that its governance system was effective, and concludes that the Audit Committee received presentations from financial management assuring it that the internal controls were adequate. Paul Weiss Report at 413-4, 417.

In its Memorandum Opinion dismissing the derivative action, the Court observed that the Paul Weiss Report praises the Board's oversight efforts. Mem. Op. at 4. The Court noted that, according to the Paul Weiss Report, the Board endeavored to uphold its fiduciary obligations, to be responsive to concerns, and to scrutinize its own policies and practices. Mem. Op. at 4, n.2. The Memorandum Opinion further notes that former U.S. Senator Warren Rudman, who led the investigation resulting in the Report, determined that the Board acted consistently with its fiduciary duties. *Id.* at 4, 24-25.

Plaintiffs allegations regarding internal controls, and the Court's own observations, demonstrate quite clearly that the overriding inference from the alleged facts is that the Audit Committee Defendants acted with propriety, not with intent to deceive, manipulate or defraud.

        5)    *Implementation of Derivative Accounting and FAS 133*

Despite their allegations that Fannie Mae's use of derivative accounting and FAS 133 should have raised red flags (Evergreen Second Amended Complaint at ¶ 716; Franklin Second Amended Complaint at ¶ 808), Plaintiff also alleged that KPMG

9

approved Fannie Mae's implementation of FAS 133. Franklin Second Amended Complaint at ¶¶ 193, 195, 203. *See also* Paul Weiss Report at 102. Moreover, this Court relied upon a similar allegation in finding that the derivative action complaint did not adequately state a claim for breach of duty of oversight, noting that "the issues relating to hedge accounting were discussed with management and KPMG, and KPMG reported to the audit committee that the auditing firm would pay attention to the company's hedge accounting and compliance with FAS 133." Mem. Op. at 17 (citations omitted). The persuasive inference here is that the Audit Committee acted properly, having been assured of the integrity of the company's hedge accounting methods because KPMG approved them and promised to monitor the company's hedge accounting and compliance with FAS 133.

### IV. Conclusion

For all of the reasons set forth above, and for the reasons previously advanced by the Director Defendants, the Court should grant the Director Defendants' Motion to Dismiss the Evergreen and Franklin Second Amended Complaints.

Dated: June 29, 2007                                   Respectfully submitted,


/s/ Jeffrey W. Kilduff
Jeffrey W. Kilduff (D.C. Bar No. 426632)
Robert M. Stern (D.C. Bar No. 478742)
Natasha Colton (DC Bar No. 479647)
Michael J. Walsh, Jr. (D.C. Bar No. 483296)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC  20006
T:  202/383-5300
F:  202/383-5414

**Counsel for Defendants Kenneth Duberstein, William R. Harvey, Taylor C. Segue III, H. Patrick Swygert, and Manuel Justiz**

/s/ Earl J. Silbert
Earl J. Silbert (D.C. Bar No. 053132)
Cristen Sikes Rose (D.C. Bar No. 473461)
DLA Piper US LLP
1200 19th Street, NW
Washington, DC  20036
T:  202/861-3900
F:  202/223-2085
-and-
John J. Clarke, Jr.
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY  10020-1104
T:  212/335-4500
F:  212/884-8520

**Counsel for Defendants Stephen B. Ashley, Ann Korologos, and Donald B. Marron**


/s/ Carolyn M. Welshhans
Carolyn M. Welshhans (D.C. Bar No. 489120)
Dechert LLP
1775 I Street, N.W.
Washington, DC 20006
T:  202/261-3300
F:  202/261-3333
-and-
William K. Dodds
Neil A. Steiner
Dechert LLP
30 Rockefeller Plaza
New York, New York 10112
T:  212/698-3500
F:  212/698-3599

**Counsel for Defendant Tom Gerrity**

/s/ Julia E. Guttman
Julia E. Guttman (D.C. Bar No. 412912)
Nicholas A. Brady (D.C. Bar No. 484612)
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
T:  202/639-7700
F:  202/639-7890

**Counsel for Defendant Jamie S. Gorelick**


/s/ Barbara Van Gelder
Barbara Van Gelder (D.C. Bar No. 265603)
Wiley Rein LLP
1776 K Street, N.W.
Washington, D.C.  20006
T:  202/719-7000
F:  202/719-7207

**Counsel for Defendants Frederic V. Malek and Anne Mulcahy**

11

_____/s/ James D. Wareham_____
James D. Wareham (D.C. Bar No. 411799)
James Anklam (D.C. Bar No. 414122)
Carolyn W. Morris (D.C. Bar No. 463865)
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, NW
Washington, DC 20005
T: 202/551-1700
F: 202/551-1705

***Counsel for Defendant Daniel H. Mudd***

_____/s/ Rhonda D. Orin_____
Rhonda D. Orin (D.C. Bar No. 439216)
Daniel J. Healy (D.C. Bar No. 476233)
Anderson Kill & Olick, P.C.
2100 M Street, NW
Suite 650
Washington, DC 20037
T: 202/218-0049
F: 202/218-0055
-and-
John H. Doyle, III
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
T: 212/278-1000
F: 212/272-1733

***Counsel for Defendant Leslie Rahl***

_____/s/ James Hamilton_____
James Hamilton (D.C. Bar No. 108928)
Nader H. Salehi (D.C. Bar No. 458816)
Allison L. Phair (D.C. Bar No. 476061)
David I. Ackerman (D.C. Bar No. 482075)
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006
T: 202/373-6000
F: 202/373-6001

***Counsel for Defendant Joe K. Pickett***

***Of-Counsel for Defendant Manuel J. Justiz:***
Shannon H. Ratliff
Texas Bar No. 16573000
Michael L. Navarre
Texas Bar No. 00792711
Ratliff Law Firm, P.L.L.C.
600 Congress Avenue, Suite 3100
Austin, Texas 78701
T: 512/493-9600
F: 512/493-9625

## CERTIFICATE OF SERVICE

I certify that on June 29, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF.

                                              /s/ David Ackerman
                                                David Ackerman