UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In Re Fannie Mae Securities Litigation | ) ) ) | Consolidated Civil Action No. 1:04-cv-1639 (RJL) |
| Evergreen Equity Trust, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:06-cv-00082 (RJL) |
| v. | ) ) | |
| Federal National Mortgage Association, *et al.*, | ) ) | |
| Defendants. | ) ) | |
| Franklin Managed Trust, *et al.*, | ) ) | |
| Plaintiffs, | ) ) | No. 1:06-cv-00139 (RJL) |
| v. | ) ) | |
| Federal National Mortgage Association, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**THE EVERGREEN PLAINTIFFS' AND THE FRANKLIN PLAINTIFFS' JOINT MEMORANDUM OF LAW IN RESPONSE TO THE DIRECTOR DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE EVERGREEN AND FRANKLIN SECOND AMENDED COMPLAINTS**

GRANT & EISENHOFER P.A.
Stuart M. Grant (DC Bar ID #450895)
Megan D. McIntyre
Christine M. Mackintosh
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
*Counsel for Plaintiffs Evergreen Equity Trust, et al.
and Plaintiffs Franklin Managed Trust, et al.*

Dated: July 10, 2007

The Supreme Court's decision in *Tellabs v. Makor Issues & Rights, Ltd.,* 2007 WL 1773208, No. 06-484 (U.S. June 21, 2007) supports the denial—not the granting—of the Director Defendants' Motion to Dismiss the Evergreen Plaintiffs' and the Franklin Plaintiffs' (collectively, the "Plaintiffs") Second Amended Complaints (collectively, the "Complaints"). As discussed below, Plaintiffs' Complaints give rise to an inference of the Director Defendants' scienter that is cogent and at least as compelling as any opposing inference that rationally could be drawn from the facts alleged, and as such Plaintiffs' allegations are sufficient under the test announced in *Tellabs*.

## I.     Plaintiffs' Complaints Meet The Standard For Pleading Scienter Announced In *Tellabs*

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires plaintiffs to allege facts giving rise to a "strong inference" that the defendant acted with scienter. 15 U.S.C. §78u-4(b)(2). In *Tellabs*, the Supreme Court clarified the standard for pleading the required "strong inference" of scienter, holding that a complaint will survive if, viewing the allegations in their totality, "a reasonable person would deem the inference of scienter cogent and *at least as compelling* as any plausible opposing inference one could draw from the facts alleged." *Tellabs*, 2007 WL 1773208, at *10 (emphasis added). The Court took care to note that "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking gun' genre, *or even the 'most plausible of competing inferences*.'" *Id.* (quoting *Fidel v. Farley,* 392 F.3d 220, 227 (6th Cir. 2004)) (internal quotation omitted) (emphasis added). Accordingly, Defendants' Motion to Dismiss should be denied if Plaintiffs' Complaints give rise to an inference of scienter that is cogent and at least as compelling as any opposing inference that can be drawn from the allegations. Plaintiffs have met this standard.

**A.      Plaintiffs' Inference Of Scienter Is Cogent**

Defendants erroneously contend that, because Plaintiffs allege that the Audit Committee Defendants "should have" known certain facts or taken certain actions, those allegations support an inference of nothing more than negligence.  Defs.' Br. at 3-5.  That semantical argument should be rejected, because failure to do what one "should" do, or failure to know what one "should" know, can constitute either negligence, recklessness, or even intentional misconduct, depending on the circumstances.  To illustrate, consider an airport employee whose job is to de-ice the wings of the airplanes when the temperature dips below freezing.  Suppose that one day this individual concludes – without bothering to check the thermometer – that it is not cold enough for ice to form on the wings, so he does not perform his de-icing duties.  Suppose that, in fact, the temperature is twenty degrees below freezing, and a plane crashes on take-off as a result of ice on the wings.  Surely, one can say that this individual "should have" done his job, checked the thermometer (or realized without even checking that the temperature was below freezing), and de-iced the plane.  But does the use of the words "should have" render his failure merely negligent?  Clearly not.  Given the importance of his job, the severity of the risk inherent in his failure to do that job, and the obviousness of the danger, one can readily conclude that his conduct amounts to recklessness.  Likewise, given the importance of the Audit Committee Defendants' jobs, the severity of the risk that failure to do their jobs would result in fraud going undetected, and the fact that they ignored (or failed to detect) glaring and obvious problems that created conditions conducive to fraud (and enabled an $8 billion in misstatements to occur), Plaintiffs' allegations of the Audit Committee Defendants' failure to perform their duties raise a strong inference of recklessness.

As set forth at length in Plaintiffs' Joint Memorandum of Law in Opposition to the Motions to Dismiss by Fannie Mae, the Director Defendants, Radian Guaranty, and Defendants Howard, Raines and Spencer (the "Plaintiffs' Opp'n") and in Plaintiffs' Supplemental Submission in Opposition to the Motions to Dismiss by Fannie Mae, the Director Defendants, Radian Guaranty, and Defendants Howard, Raines and Spencer (the "Plaintiffs' Supplemental Opp'n"), Plaintiffs have pleaded facts giving rise to a strong inference that the Audit Committee Defendants were reckless in the performance of their duties and in approving the Company's materially false financial statements. The allegations supporting this inference include that the Audit Committee Defendants were specifically charged with the responsibility of overseeing and monitoring the Company's accounting, internal controls, and financial reporting, and yet a massive, multi-billion dollar fraud occurred due to severe deficiencies in those very areas, including:

- twenty-two separate GAAP violations resulting in misstatements exceeding $8 billion in the Company's financial statements (Evergreen Compl. ¶¶ 110-358, 664, 666; Franklin Compl. ¶¶ 133-388, 701, 703);

- a "corporate climate . . . in which employees actually joked about improper income management because it was such a regular occurrence," and where greater emphasis was placed on achieving specific numbers than on reporting accurate results (Evergreen Compl. ¶¶ 391, 398; Franklin Compl. ¶¶ 421, 428);

- inadequate staffing and expertise in the Controller's Office and internal audit department (Evergreen Compl. ¶¶ 401, 403-05, 413-416; Franklin Compl. ¶¶ 431, 433-35, 443-46);

- a severe lack of independence in the internal audit department, due (among other reasons) to the background and reporting structure of the department head and a compensation system for the department's employees that gave them incentives to look the other way in the face of earnings management (Evergreen Compl. ¶¶ 401, 410-12; Franklin Compl. ¶¶ 431, 440-42);

- limitations on the internal audit department's ability to communicate with the Audit Committee Defendants (Evergreen Compl. ¶ 411; Franklin Compl. ¶ 441);

3

- the absence of formal written policies and procedures to support critical accounting functions (Evergreen Compl. ¶¶ 406-407; Franklin Compl. ¶¶ 436-437);

- the lack of formally documented accounting policy development procedures, or of a centralized database of Fannie Mae's accounting policies (*id.*); and

- a management structure that minimized opportunities for independent checks and balances to prevent fraud (Evergreen Compl. ¶¶ 417-418; Franklin Compl. ¶¶ 447-448).

In fact, after conducting an extensive review of Fannie Mae's documents and interviewing numerous witnesses, OFHEO concluded that "Fannie Mae's internal control system was grossly inadequate and contravened OFHEO supervisory standards." (Evergreen Compl. ¶¶ 398-99, 403-08, 425, 429; Franklin Compl. ¶¶ 428-29, 433-38, 457, 461).

Plaintiffs also allege that the Audit Committee Defendants were aware of Roger Barnes' allegations of rampant earnings manipulation, yet never investigated those allegations or spoke with Mr. Barnes or the Company's auditors, choosing instead to rely blindly on the representation by the Company's internal auditors that the allegations had been thoroughly investigated. (Evergreen Compl. ¶¶ 388, 715; Franklin Compl. ¶¶ 418, 807). The Audit Committee Defendants should have known that this representation was completely implausible, however, given the short three-day duration of the "investigation." (Evergreen Compl. ¶¶ 386, 388, 390; Franklin Compl. ¶¶ 416, 418, 420). Like the airplane de-icer who did not bother to check the thermometer before concluding that there was no risk of ice forming, the Audit Committee Defendants' failure to make any independent inquiries before summarily dismissing Barnes' allegations presents a compelling case of recklessness.

In light of these and other detailed allegations which are discussed in Plaintiffs' previous submissions, the Audit Committee Defendants' approval of the Company's financial statements for dissemination to investors in the face of severe deficiencies within their areas of oversight

raises a strong, and cogent, inference of their reckless disregard for the accuracy of those statements.

### B. The Inference Of The Audit Committee Defendants' Scienter Is At Least As Compelling As Any Competing Inference That Rationally Could Be Drawn From The Facts Alleged In The Complaints

Defendants assert that Plaintiffs' Complaints give rise to an inference that they "reasonably, and without culpability" relied "upon the opinions of its financial management and its outside auditors" (Defs.' Br. at 6) in certifying Fannie Mae's false and misleading financial statements. They further contend that this "competing inference" is more compelling than the inference of the Audit Committee Defendants' scienter. Defendants' argument simply is not supported by the allegations of the Complaints.[1]

As discussed above and in Plaintiffs' prior submissions, the Audit Committee Defendants had an independent duty to monitor and oversee the Company's financial reporting, accounting, and internal controls. The Audit Committee's existence would be meaningless if it were required to do nothing other than rely blindly on management and KPMG – the very parties it was supposed to be monitoring – to report any problems in those areas. Accordingly, to overcome an inference of scienter, the Audit Committee Defendants' reliance on those parties would have to be reasonable in light of the other information they knew or would have known had they performed their duties appropriately.[2] Moreover, to warrant dismissal, *Tellabs*

---

[1] In evaluating Plaintiffs' pleading of scienter, the Court must take the allegations of the Complaints as true, and may only credit inferences that can reasonably be drawn from those allegations. *See Tellabs*, 2007 WL 1773208, at *4 (court must consider "competing inferences rationally drawn *from the facts alleged*") (emphasis added).

[2] *See S.E.C. v. Yuen*, No. CV 03-4376MRP(PLAX), 2006 WL 1390828, at **39-40 (C.D. Cal. Mar. 16, 2006) ("[R]eliance on a professional is not an affirmative defense but merely one factor that a court may consider, along with the rest of the evidence presented, when evaluating whether a defendant acted with scienter."); *S.E.C. v. Softpoint, Inc.*, 958 F. Supp. 846, 864 (S.D.N.Y. 1997) (where defendant had a "well-defined obligation to ensure the accuracy of the information filed with the SEC," his claim of reliance on the company's auditor did not negate his scienter); *In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1257-58 (S.D.N.Y. 1996) (assurances by outside auditor did not preclude a finding of recklessness by audit committee members).

establishes that the inference of reasonable reliance would have to be *more compelling* than the inference of scienter.  Here, Plaintiffs' allegations do not support a compelling inference of the Audit Committee Defendants' *actual* reliance upon KPMG and management, much less their reasonable reliance.[3]  In fact, the Complaints expressly allege that any such reliance would have been unreasonable:

> In light of their specific responsibilities for overseeing the Company's financial reporting process, and in light of the adverse information … which was known to (or recklessly disregarded by) the Audit Committee Defendants, any purported reliance by the Audit Committee Defendants upon KPMG or the Officer Defendants with respect to the accuracy of the Company's financial statements and/or the integrity of its internal controls was inherently unreasonable.  The Audit Committee Defendants merely rubber-stamped what was brought to them by KPMG and management, without bringing to bear the critical eye and independent judgment which investors legitimately expected them to apply.

Evergreen Compl. ¶ 732; Franklin Compl. ¶ 825.    Accordingly, the Audit Committee Defendants' claims of reasonable reliance are not supported by the allegations in the Complaints, and are certainly not more compelling than the inference of their scienter.

In an effort to bolster their contention that they acted reasonably, Defendants suggest that this Court's dismissal of the derivative action somehow compels the conclusion that Plaintiffs' allegations are insufficient to plead the Audit Committee Defendants' scienter.  Defs.' Br. at 5-10.  As an initial matter, Defendants' assertion that the allegations of the derivative complaint

---

[3] To support their proposed inference of their reliance on management and KPMG, the Audit Committee Defendants cite to allegations regarding KPMG's issuance of an unqualified opinion in 1999.  *See* Defs.' Br. at 6 (citing Evergreen ¶ 714; Franklin ¶¶ 92, 806)  However, on the very same page of their brief, the Audit Committee Defendants contend that such allegations are irrelevant to the scienter analysis because they pre-date the loss period.  Defs.' Br. at 6 n.2.  In any event, these allegations do not support an inference of non-scienter, because they state merely that KPMG informed defendant Gerrity of its disagreement with management regarding an accounting issue, and that KPMG later issued an unqualified opinion.  *See* Franklin ¶¶ 92, 806.  There is no allegation that Gerrity relied on KPMG's opinion, much less that he did so reasonably.  Indeed, without more information regarding what Gerrity knew about the reasons for KPMG's decision to issue an unqualified opinion despite this disagreement, it is impossible to say that any inference of non-scienter is more compelling than the inference of scienter.

were "found insufficient to support of claim for fiduciary breach" is wrong. Defs.' Br. at 6. The Court never reached the merits of the derivative plaintiffs' claims, because it dismissed the action due to the plaintiffs' failure to plead demand futility. *In re Fannie Mae Derivative Litig.*, No. 04-1783, Mem. Opinion (D.D.C. May 31, 2007) ("Op.") at 6. The Court's examination of the merits of the derivative plaintiffs' allegations was for the limited purpose of determining whether "a majority of the directors lack[ed] independence because of a *substantial likelihood of personal liability* for accounting violations," such that demand would be deemed futile. *Id.* at 14 (emphasis added). That "substantial likelihood" standard is, of course, far more onerous than the *Tellabs* pleading standard which requires only a "cogent" inference of scienter that is at least as compelling as any opposing inference.

Moreover, the Court's evaluation of whether there was a "substantial likelihood" of the directors' liability in the derivative case was based on different legal claims and factual allegations from those in the instant case. In the derivative case, that evaluation was in the context of a claim alleging the board's failure to exercise proper oversight, which this Court noted is "one of, if not the most, difficult theories upon which to prevail" under Delaware law (Op. at 15), requiring proof that a company's directors "*utterly fail[ed] to implement* any reporting or information system or controls, or … having implemented such a system or controls, *consciously* fail[ed] to monitor or oversee its operations …"  Op. at 16 (emphasis added) (quoting *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)). The Court found that there was no "substantial likelihood" of the derivative plaintiffs meeting that strict standard, given their acknowledgment in the complaint that a control system existed and was monitored, to some extent, by the outside directors. Op. at 16-17. In the instant case, by contrast, Plaintiffs are not required to allege the complete absence of any reporting or information system or controls, or a

conscious failure to monitor such a system. Rather, in a Section 10(b) case Plaintiffs need only allege facts supporting a "strong inference" that the Audit Committee Defendants were reckless with respect to the accuracy of the Company's financial statements. As the Supreme Court held in *Tellabs*, "courts must consider the complaint in its entirety" when making this assessment, and the inference need not be "of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" 2007 WL 1773208, at **9, 10. Plaintiffs' allegations of the Audit Committee Defendants' reckless oversight of severely deficient internal controls and reporting systems, together with the other allegations of the Complaints, are sufficient to plead their scienter even if they are not sufficient to state a claim for breach of the duty of oversight under Delaware law.

Finally, while Defendants make much of the fact that Paul Weiss—a law firm retained by the Board itself to investigate Fannie Mae's fraud—found that "the Board endeavored to uphold its fiduciary obligations, to be responsive to concerns, and to scrutinize its own policies and practices" (Defs.' Br. at 9), the conclusion reached by OFHEO was far different. OFHEO found that the Audit Committee had fallen short in a number of respects, and devoted fourteen single-spaced pages of its Final Report to the "Failures of the Audit Committee." That Paul Weiss and OFHEO reached such disparate conclusions concerning the Audit Committee Defendants' culpability suggests that the inference of recklessness is at least as plausible as the inference of nonfraudulent intent.

In sum, *Tellabs* supports denial of Defendants' Motion to Dismiss because Plaintiffs' factual allegations give rise to a strong inference of scienter that is at least as compelling as any inference of nonfraudulent intent posited by Defendants.

## II.     Plaintiffs Have Not "Group Pleaded" Scienter

Defendants assert that *Tellabs* warrants dismissal of the Complaints for the further reason that Plaintiffs improperly have "group pleaded" the Audit Committee Defendants' scienter. This is a red herring for several reasons. First, Defendants concede that the Court in *Tellabs* did not rule on the Seventh Circuit's rejection of group pleading. Defs.' Br. at 3. Accordingly, *Tellabs* adds nothing to the argument the Audit Committee Defendants have already made on this point in their prior briefs. Second, what the Seventh Circuit rejected in *Tellabs* was the use of scienter allegations against one defendant to impute scienter to all other defendants in the case.[4] *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588 (7th Cir. 2006). Plaintiffs have not attempted to plead the Audit Committee Defendants' scienter by imputation. Indeed, Plaintiffs acknowledged at oral argument that their allegations must give rise to a strong inference of *each* defendant's scienter. But this does not mean—as Defendants suggest—that Plaintiffs are forbidden from using the term "Audit Committee Defendants" for convenience to refer to Messrs. Gerrity, Malek, Segue, Harvey and Pickett and Ms. Mulcahy in those allegations that are equally applicable to all of them. For example, many allegations relate to all of them because the entire committee learned information, or failed to act, as a group. Those allegations raise a strong inference of each individual Audit Committee Defendant's scienter, irrespective of whether they mention each defendant by name.

---

[4] This is different from the "group pleading" doctrine addressed in Plaintiffs' Opposition Brief, which has nothing to do with scienter, and instead creates a presumption that certain corporate documents were prepared collectively (and thus constitute statements by) a company's senior management.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons as well as those set forth in Plaintiffs' brief in opposition to the Defendants' motions to dismiss, at oral argument, and in Plaintiffs' supplemental submission in opposition to Defendants' motions to dismiss, the Evergreen Plaintiffs and the Franklin Plaintiffs respectfully request that the Court deny the Defendants' motions to dismiss in their entirety.

Dated:  July 10, 2007

_/s/ Stuart M. Grant_
Stuart M. Grant (D.C. Bar # 450895)
Megan D. McIntyre
Christine M. Mackintosh
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market St.
Wilmington, DE 19801
(302) 622-7000
(302) 622-7100 (facsimile)
_Attorneys for the Evergreen Plaintiffs and the Franklin Plaintiffs_

## CERTIFICATE OF SERVICE

I certify that on July 11, 2007, the attached Evergreen Plaintiffs' And Franklin Plaintiffs' Joint Memorandum of Law in Response To The Director Defendants' Second Supplemental Brief In Support Of Their Motion To Dismiss The Evergreen and Franklin Second Amended Complaints were served on the following counsel of record by the method noted.

### VIA U.S. MAIL:

Fred F. Fielding
Barbara Van Gelder
WILEY REIN & FIELDING LLP
1776 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendants Frederic V. Malek*
*and Anne Mulcahy and for Defendant Thomas*
*Gerrity in the Evergreen Action*

Jonathan S. Liss
Dionna K. Litvin
David Smith
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, 36th Floor
Philadelphia, PA 19103
*Counsel for Radian Guaranty Inc.*

William K. Dodds
Neil A. Steiner
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Defendant Thomas Gerrity*

Phyllis E. Brown, Esq.
LAW OFFICE OF PHYLLIS BROWN
119 East Court Street
Cincinnati, OH 45202
*Counsel for State Teachers Retirement System*
*of Ohio and Ohio Public Employees*
*Retirement Systems*

### VIA CM/ECF NOTIFICATION

Jeffrey C. Block
Kathleen M. Donovan-Maher
Julie A. Richmond
Joseph C. Merschman
BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO
One Liberty Square
Boston, MA 02169
*Counsel for State Teachers Retirement System*
*of Ohio and Ohio Public Employees*
*Retirement Systems*

James R. Cummins
Melanie S. Corwin
Jean M. Geoppinger
WAITE, SCHNEIDER, BAYLESS
& CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
*Counsel for State Teachers Retirement System*
*of Ohio and Ohio Public Employees*
*Retirement Systems*

Jeffrey William Kilduff
Seth Aronson
Michael J. Walsh, Jr.
O'MELVENY & MYERS L.L.P.
1625 I Street, N.W.
Washington, D.C. 20006
*Counsel for Fannie Mae, Taylor Segue,*
*William Harvey, Kenneth Duberstein, Manuel*
*Justiz, and H. Patrick Swygert*

James D. Wareham
PAUL, HASTINGS, JANOFSKY &
WALKER L.L.P.
875 15th Street, N.W.
Washington, D.C. 20005
*Counsel for Daniel Mudd*

John H. Doyle, III
Rhonda D. Orin
ANDERSON KILL & OLICK, LLP
2100 M Street, NW, Suite 650
Washington, DC 20037
*Counsel for Leslie Rahl*

Steven Mark Salky
Eric R. Delinsky
Ellen D. Marcus
Holly Ann Pal
Tammy Gershoni
Richard Miles Clark
Caroline Reid
ZUCKERMAN SPAEDER, LLP
1800 M Street, NW Suite 1000
Washington, DC 20036
*Counsel for Timothy Howard*

Alex Giscard Romain
2842 S. Columbus St
Arlington, VA 22206
*Counsel for Franklin Raines*

Francis J. Warin
Andrew S. Tulumello
Melanie L. Katsur
Henry Charles Whitaker
Claudia M. Osorio
Scott A. Fink
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
*Counsel for KPMG LLP*

Julia E. Guttman
Nicholas A. Brady
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
*Counsel for Jamie Gorelick*

David S. Krakoff
Eldad Zvi Malamuth
Christopher F. Regan
Adam B. Miller
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, NW
Washington, DC 20006
*Counsel for Leanne Spencer*

Kevin M. Downey
Michelle D. Schwartz
Joseph Marshall Terry, Jr.
Daniel N. Marx
Matthew L. Fore
John E. Clabby
Ilana T. Buschkin
Laura J. Hildner
WILLIAMS & CONNOLLY, LLP
725 12th Street, NW
Washington, DC 20005
*Counsel for Franklin Raines*

Cristen Sikes Rose
DLA PIPER RUDNICK, GRAY CARY US
LLP
1200 19th Street, NW, Suite 700
Washington, DC 20036
*Counsel for Stephen Ashley, Donald Marron,
and Ann Korologos*

James Hamilton
David I. Ackerman
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
*Counsel for Joe Pickett*

Jonathan M. Stern
SCHNADER HARRISON SEGAL & LEWIS
LLP
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006-1825
*Counsel for Radian Guaranty Inc.*

Daryl A. Libow
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006
*Counsel for Goldman, Sachs & Co*

Richard H. Klapper
Michael T. Tomaino, Jr.
Jeremy C. Bates
Patrice A. Rouse
SULLIVAN  & CROMWELL LLP
125 Broad Street
New York, NY 10004
*Counsel for Goldman, Sachs & Co.*

John C. Truong
U.S. Attorney's Office
for the District of Columbia
Civil Division
555 Fourth Street, NW, E4206
Washington, DC 20530
*Counsel for Interested Party OFHEO*

Aaron Futch
Alex Young K. Oh
Robert P. Parker
1615 L. Street, NW, Suite 1300
Washington, DC 20036-5694
*Counsel for Paul, Weiss, Rifkind, Wharton &
Garrison LLP*

Carolyn M. Welshhans
DECHERT LLP
1775 I. Street, N.W.
Washington, DC 20006
*Counsel for Thomas Gerrity*

Ian Health Gershengorn
Jerome L. Epstein
David W. DeBruin
JENNER & BLOCK, LLP
601 13th Street, N.W., Suite 1200S
Washington DC  20005
*Counsel for Fannie Mae*

*/s/ Megan D. McIntyre*
Megan D. McIntyre