**McGuireWoods LLP**
Washington Square
1050 Connecticut Avenue N.W.
Suite 1200
Washington, DC 20036-5317
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**Charles Wm. McIntyre**
Direct: 202.857.1742

# McGuireWoods

cmcintyre@mcguirewoods.com

August 17, 2007

**Via Hand Delivery**

Deloitte & Touche USA LLP
555 12th Street N.W., Suite 500
Washington, DC 20004-1207

*In Re Fannie Mae Securities Litigation*
**Consolidated Civil Action No. 1:04-CV-01639**

To Whom It May Concern:

We represent Defendant KPMG LLP ("KPMG") in the above-captioned action. Enclosed is KPMG's subpoena *duces tecum* for the production of documents in accordance with Attachment A to the subpoena.

As noted in the Instructions to Attachment A, KPMG's requests contain document requests duplicated in the subpoenas *duces tecum* already served upon Deloitte & Touche in this and other related litigation. KPMG serves this subpoena *duces tecum* on Deloitte & Touche knowing that documents that may be responsive to some of KPMG's requests will also be responsive to these other requests. To the extent that is the case, Deloitte & Touche need merely identify the request and state that all responsive documents have been previously produced. If all responsive documents have not been previously produced, identify the request to which the response is not complete and the date on which such documents will be produced.

Please feel free to contact me should you have any questions.

Sincerely,

Charles Wm. McIntyre

enc.

**EXHIBIT**

*tabbies*

B

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

In Re Fannie Mae Securities Litigation

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    Cons. Action No. 1:04-CV-01639

TO: Deloitte & Touche USA LLP
555 12th St., N.W., Suite 500
Washington, D.C. 20004-1207

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE    McGuireWoods LLP, 1050 Connecticut Avenue, N.W., Suite 1200, Washington, D.C. 20036 | DATE AND TIME 9/7/2007 5:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  *(Attorney for defendant KPMG)* | DATE 8/17/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles Wm. McIntyre, McGuireWoods LLP, 1050 Connecticut Avenue, N.W., Suite 1200
Washington, D.C. 20036, (202) 857-1742

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT A**
**TO SUBPOENA DUCES TECUM TO DELOITTE & TOUCHE USA LLP**

**INSTRUCTIONS**

1.       KPMG's requests contain document requests duplicated in the subpoenas duces tecum and discovery requests already served upon Deloitte & Touche in this Litigation (defined below) and other related litigation. KPMG serves this subpoena duces tecum on Deloitte & Touche knowing that documents that may be responsive to some of KPMG's requests will also be responsive to these other requests. To the extent that is the case, Deloitte & Touche need merely identify the request and state that all responsive documents have been previously produced. If all responsive documents have not been previously produced, identify the request to which the response is not complete and the date on which such documents will be produced.

2.       If you object to producing any document (in whole or in part) based on any privilege, you should state the nature of the privilege claimed and the basis thereof; identify and describe the document and the reason for which it was created; identify the creator of the document and all persons named on it, to whom the document was sent, for whose use it was prepared, and state the date of the document. This information should be set forth separately in a privilege list.

3.       If you claim that any request is beyond the scope of permissible discovery, specify each and every ground on which such claim rests.

4.       If you find any document request or term used in a request to be vague, ambiguous, subject to varying interpretations, or unclear, state what portion of the request or term you find to be vague, ambiguous, subject to varying interpretations, or unclear, state your understanding of the request or term, and respond in accordance with that understanding.

5.       Draft or non-identical copies are to be considered separate documents for purposes of these requests.

6.       If any responsive document is no longer in existence, cannot be located or is not in your possession, custody or control, identify it, describe its subject matter and describe its disposition (including without limitation identifying the person or persons (a) having knowledge of the contents of the document and/or its destruction, deletion or disposition and (b) responsible for its destruction, deletion or other disposition.

7.       To the extent you believe that any responsive document is not within your possession, but rather, is within the possession of a separate Deloitte & Touche entity (defined below), either produce the responsive document or identify the entity

1

that may possess the responsive document and identify the responsive document that you believe that entity may possess.

## DEFINITIONS

1. "All" includes the term "each" or "any," and vice versa. The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

2. "Communication" is used in the comprehensive sense and means every conceivable manner or means of disclosure, transfer, or exchange of oral, electronic, digital or written information between or among one or more persons or entities, including but not limited to writings, correspondence, meetings, conferences, conversations, dialogues, discussions, interviews, consultations, agreements, inquiries, and any other expressions or understandings, whether made face-to-face, by telephone, mail, facsimile, computer or otherwise.

3. "Concerning" means, in whole or in part with respect to, in connection with, referring to, relating to, describing, evidencing, constituting, substantiating, purporting, embodying, establishing, identifying, listing, stating, comprising, connected with, memorializing, recording, commenting on or upon, responding to, showing, demonstrating, analyzing, reflecting, representing, supporting, explaining, consisting of, regarding, discussing, containing, setting forth, disclosing, explaining, summarizing, pertaining to, or otherwise having any logical or factual connection to the subject matter, of the document request.

4. "Deloitte & Touche" means any member firm of Deloitte Touche Tohmatsu, including but not limited to Deloitte & Touche USA LLP; its predecessors, parents, affiliates, subsidiaries (including Deloitte & Touche LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, and Deloitte Tax LLP, and their subsidiaries), officers, directors, board members, managers, attorneys, employees, agents, representatives, consultants, or any other person or entity acting for, at the direction of, or on behalf of Deloitte & Touche.

5. "Department of Justice" means the United States Department of Justice and any of its divisions and departments, including the Office of the United States Attorney for the District of Columbia, and any of its former or present officers, employees, contract employees, accountants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

6. "Document" is synonymous with the usage of that term in Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, writings, e-mails, reports, papers, notes, accounts, memoranda, correspondence, communications, worksheets, workpapers, analyses, contracts, charts, schedules, agreements, working papers, corporate records, minutes of meetings, books of account, ledger books, notebooks, desk calendars, photographs, films, slides, audiotape, videotape, appointment

2

books, diaries, drafts, memoranda of meetings or conversations, graphs, telephone records, computer tapes, computer discs, optical discs, laser discs, computer cards and computer printouts and other data compilations from which information can be obtained or translated all electronic, mechanical, magnetic, optical or electric data, records or representations of any kind (including computer data, computer files, computer programs, hard drives, floppy disks, compact disks, tapes and cards existing on desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, backup tapes or any other medium), and any other form of physical media.

7.      "Fannie Mae" means the Federal National Mortgage Association and any of its predecessors, successors, parents, subsidiaries, divisions, departments, affiliates, its Board of Directors, and all current or former employees, officers, directors, accountants, and other agents, representatives, advisors or consultants, including but not limited to Wilmer Cutler & Pickering LLP or WilmerHale.

8.      "Government Investigation" means collectively: (1) OFHEO's (defined below) investigation of or inquires into the activities, policies and procedures of Fannie Mae during the Relevant Period; (2) the SEC's (defined below) investigation of or inquiries into (i) the activities, policies and procedures of Fannie Mae during the Relevant Period, (ii) the termination, resignation or retirement of any of the Individual Defendants, and (iii) the Restatement (defined below); and (3) the Department of Justice's investigation of or inquiries into the activities, policies and procedures of Fannie Mae during the Relevant Period.

9.      "KPMG" means KPMG LLP (United States) its predecessors, parents, affiliates or subsidiaries worldwide; its officers, directors, board members, managers, attorneys, employees, agents, representatives or consultants.

10.      "Litigation" means the lawsuits filed in the United States District Court for the District of Columbia and consolidated into *In re Fannie Mae Securities Litigation*, Case No. 1:04-cv-01639 and *Franklin Managed Trust, et al. v. Federal National Mortgage Association, et al.*, Case No. 1:06-cv-00139, including *Fannie Mae v. KPMG LLP*, Case No. 1:06-cv-02111 (consolidated for pretrial purposes) (collectively, the "Complaints"). The terms defined in the Complaints are incorporated herein.

11.      "LPR No."[1] means Lead Plaintiff Request and refers to Lead Plaintiff's Subpoena Duces Tecum to Deloitte & Touche USA LLP, *In re Fannie Mae Securities Litigation*, No. 1:04-cv-1639, United States District Court for the District of Columbia, Apr. 7, 2006.

12.      "MRR No." means Modified Raines Request and refers to the Franklin D. Raines Subpoena Duces Tecum to Deloitte & Touche USA LLP, *In re Fannie Mae Securities Litigation*, No. 1:04-cv-1639, United States District Court for the District of Columbia, Sept. 28, 2006, as modified by KPMG.

---

[1] This definition, as well as the ones that follow for "MLPR," "MRR" and "RR," are used to identify, by party, previously served requests.

13.    "MLPR No." means Modified Lead Plaintiff Request and refers to Lead Plaintiff's Subpoena Duces Tecum to Deloitte & Touche USA LLP, *In re Fannie Mae Securities Litigation*, No. 1:04-cv-1639, United States District Court for the District of Columbia, Apr. 7, 2006, as modified by KPMG.

14.    "OFHEO" means the Office of Federal Housing Enterprise Oversight and any of its divisions or departments, or any of its current or former officials, employees, accountants, examiners, agents, attorneys, or any other person or entity acting for, at the direction of, or on behalf of OFHEO.

15.    "Paul Weiss" means collectively Senator Warren B. Rudman and the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP and any of its predecessors, successors, parents, subsidiaries, divisions, departments or affiliates, and any of its former or present shareholders, members, officers, directors, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities, including but not limited to Huron Consulting Group Inc. ("Huron").

16.    "RR No." refers to the Franklin D. Raines Subpoena Duces Tecum to Deloitte & Touche USA LLP, *In re Fannie Mae Securities Litigation*, No. 1:04-cv-1639, United States District Court for the District of Columbia, Sept. 28, 2006.

17.    "Restatement" means Fannie Mae's restatement of its publicly reported financial statements and/or financial results for 2002, 2003 and the first two quarters of 2004 and all restatement items relating to 2001 included in the cumulative retained earnings balance.

18.    "SEC" means the United States Securities and Exchange Commission and any of its divisions, departments or affiliates, or any of its former or present officers, employees, contract employees, accountants, agents, attorneys, or any other person or entity acting for, at the direct of, or in concert with any such persons or entities.

19.    "Special Examination" means the investigation begun by OFHEO in 2003 into Fannie Mae's accounting policies and practices.

## RELEVANT PERIOD

Unless otherwise specifically indicated, these requests seek documents created, dated, prepared, generated, sent, received or otherwise used during the time period January 1, 2000 to the present (the "Relevant Period") or that refer or relate to all or any portion of the Relevant Period, or to events or circumstances during the Relevant Period, even though created, dated, prepared, generated, sent, received or otherwise used prior to or after the Relevant Period.

### DOCUMENTS TO BE PRODUCED

Please produce the following documents or things in your actual or constructive possession:

1.    All documents, including but not limited to any engagement letters, whether in final or draft form, concerning OFHEO's engagement, proposed engagement or contemplated engagement of Deloitte & Touche in connection with OFHEO's Special Examination of Fannie Mae. (RR No. 1).

2.    All documents concerning Communications between Deloitte & Touche and OFHEO regarding OFHEO's engagement, proposed engagement or contemplated engagement of Deloitte & Touche in connection with OFHEO's Special Examination of Fannie Mae. (MRR No. 2).

3.    All documents, including but not limited to any workpapers, that Deloitte & Touche prepared, created or reviewed in connection with OFHEO's Special Examination of Fannie Mae. (RR No. 3).

4.    Documents sufficient to identify all individuals who provided services on behalf of Deloitte & Touche in connection with OFHEO's Special Examination of Fannie Mae. (RR No. 4).

5.    All documents concerning any fees, payments, time records or other compensation received by Deloitte & Touche for services provided in connection with OFHEO's Special Examination of Fannie Mae. (RR No. 5).

6.    All documents concerning Communications between or among Deloitte & Touche, OFHEO, KPMG and/or Fannie Mae regarding OFHEO's Special Examination of Fannie Mae. (MRR No. 6).

7.    All documents, including but not limited to any engagement letters, whether in final or draft form, concerning Fannie Mae's engagement, proposed engagement or contemplated engagement of Deloitte & Touche as Fannie Mae's independent auditor. (RR No. 7).

8.    All documents concerning Communications between or among Deloitte & Touche and OFHEO and/or Fannie Mae regarding Fannie Mae's engagement, proposed engagement or contemplated engagement of Deloitte & Touche as Fannie Mae's independent auditor. (MRR No. 8).

9.    All documents, including but not limited to any workpapers, that Deloitte & Touche prepared, created or reviewed in connection with services provided as Fannie Mae's independent auditor, including any services provided in connection with Fannie Mae's Restatement. (MRR No. 9).

5

10. Documents sufficient to identify all individuals who provided services on behalf of Deloitte & Touche as Fannie Mae's independent auditor, including any services in connection with Fannie Mae's Restatement. (MRR No. 10).

11. All documents concerning any fees, payments or other compensation received by Deloitte & Touche for services provided to Fannie Mae, including but not limited to fees for audit services and fees for consulting services. (MRR No. 11).

12. All documents concerning Communications between or among Deloitte & Touche, OFHEO, KPMG and/or Fannie Mae regarding services provided by Deloitte & Touche as Fannie Mae's independent auditor, including any services provided in connection with Fannie Mae's Restatement. (MRR No. 12).

13. All documents concerning Fannie Mae's dismissal, proposed dismissal or contemplated dismissal of KPMG as Fannie Mae's independent auditor. (MRR No. 13).

14. All documents concerning Communications between Deloitte & Touche and KPMG regarding Fannie Mae. (RR No. 14).

15. All manuals, guidelines, policies, directives, or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche, regardless of date, concerning SFAS 133 including but not limited to exposure drafts, comment letters on the exposure drafts, draft and actual amendments to the standards and proposed or actual interpretations issued by the Derivatives Implementation Group ("DIG") or other authoritative accounting bodies. (MRR No. 15).

16. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche, regardless of date, concerning SFAS 91. (MRR No. 16).

17. All subpoenas duces tecum or other requests for production of documents Deloitte & Touche received from OFHEO, the SEC or the Department of Justice in connection with the Government Investigation. (LPR No. 1).

18. All documents, regardless of date, made available or provided, whether in response to any subpoena duces tecum or otherwise, by Deloitte & Touche or on its behalf to OFHEO, the SEC or the Department of Justice in connection with the Government Investigation. (MLPR No. 2).

19. All documents sufficient to identify any person who has been interviewed by, deposed by or otherwise testified before OFHEO, the SEC or the Department of Justice in connection with the Government Investigation. (LPR No. 3).

20.    All documents concerning any witness interviews, depositions or other testimony conducted by or in the presence of OFHEO, the SEC or the Department of Justice in connection with the Government Investigation, including, but not limited to any transcripts (including exhibits and attachments thereto) of such interviews, depositions or other testimony. (LPR No. 4).

21.    All documents concerning any witness interviews or other testimony conducted by or in the presence of Paul Weiss in connection with the Rudman Investigation, including, but not limited to, any transcripts (including exhibits and attachments thereto) of such interviews, depositions or other testimony. (LPR No. 5).

22.    All requests for production of documents Deloitte & Touche received from Paul Weiss in connection with the Rudman Investigation. (MLPR No. 6).

23.    All documents, regardless of date, made available or provided by Deloitte & Touche or on its behalf to Paul Weiss in connection with the Rudman Investigation. (MLPR No. 7).

24.    All documents, regardless of date, concerning Fannie Mae that Deloitte & Touche created, received or reviewed in connection with its work on the Government Investigation. (MLPR No. 8).

25.    All documents concerning Communications between or among Deloitte & Touche, Fannie Mae, any Individual Defendant, OFHEO, the SEC, the Department of Justice and/or Paul Weiss concerning the Government Investigation. (MLPR No. 9).

26.    All documents concerning Communications between or among Deloitte & Touche, Fannie Mae, any Individual Defendant, OFHEO, the SEC, the Department of Justice and/or Paul Weiss concerning the Rudman Investigation. (MLPR No. 10).

27.    All documents concerning Communications between Deloitte & Touche and KPMG concerning Fannie Mae, the Government Investigation, the Rudman Investigation or any engagement to provide professional services of any kind to Fannie Mae by either KPMG or Deloitte & Touche. (MLPR No. 11).

28.    All documents, regardless of date, made available or provided by Deloitte & Touche or on its behalf to any federal, state or local regulatory or governmental entity, other than OFHEO, the SEC and the Department of Justice, in connection with such entity's investigation of or inquiries into the activities, policies and procedures of Fannie Mac during the Relevant Period. (MLPR No. 12).

29.    All documents, regardless of date, made available or provided by Deloitte & Touche or on its behalf in connection with any civil litigation initiated against Fannie Mae, KPMG, or any of the Individual Defendants concerning the Restatement or any of the activities, policies or procedures at issue in the Restatement. (MLPR No. 13).

30.    All engagement agreements, consulting agreements or other agreements between Fannie Mae and Deloitte & Touche pursuant to which Deloitte & Touche agreed to perform services for Fannie Mae, regardless of date, including any documents concerning conditions or limitations placed upon any engagement. (MLPR No. 14).

31.    All engagement agreements, consulting agreements or other agreements between the Fannie Mae Foundation and Deloitte & Touche pursuant to which Deloitte & Touche agreed to perform services for Fannie Mae, regardless of date, including any documents concerning conditions or limitations placed upon any engagement. (MLPR No. 15).

32.    All documents concerning any engagement to provide professional services to Fannie Mae, including, but not limited to:

(a)    working papers, including, but not limited to all planning documentation, audit programs or other documents concerning the procedures used in any engagement to provide professional services to Fannie Mae, including any additions, deletions, substitutions or amendments thereto and the reason for any such additions, deletions, substitutions or amendments, as well as an index and legend that describe the referencing system and abbreviations used in the working papers;

(b)    management letters or representations concerning Fannie Mae's internal controls or any other matter;

(c)    charts of accounts with a description of the use of each account;

(d)    point sheets, findings, memoranda or any other Communications that highlight or analyze points that arose during any engagement to provide professional services to Fannie Mae;

(e)    schedules or listings of adjusting entries, both proposed and accepted;

(f)    calendar or diary entries concerning any engagement to provide professional services to Fannie Mae;

(g)    memoranda that summarize, review or analyze specific problems or areas of any engagement to provide professional services to Fannie Mae; and

(h)    review notes or memoranda, quality control review notes or memoranda, and any other document concerning the evaluation of any engagement to provide professional services to Fannie Mae.

(MLPR No. 16).

33.    All documents concerning any proposed, contemplated or implemented change in Fannie Mae's accounting practices, policies, or procedures, whether or not recommended by Deloitte & Touche, including, but not limited to memoranda, correspondence or other documents prepared by either Fannie Mae's or Deloitte &

8

Touche's firm-designated experts and/or national or global office personnel. (MLPR No. 18).

34.    All documents, including but not limited to internal control questionnaires and evaluations, concerning Fannie Mae's internal controls, including but not limited to: segregation of duties; key person dependencies; the maintenance of, or failure to maintain, audit trails, written procedures and required documentation; procedures for preparing, reviewing, validating, authorizing and recording journal entries related to amortization adjustment; reliance on software applications and systems for portfolio accounting; controls concerning database modifications a/k/a "DB mods"; and controls concerning the falsification of signatures. (MLPR No. 21).

35.    All documents concerning exceptions to (approved or not approved) or Fannie Mae's compliance or non-compliance with, Fannie Mae's stated accounting practices, policies or procedures, GAAP, or any other auditing, accounting or professional standard. (LPR No. 22).

36.    All documents concerning exceptions to (approved or not approved) or KPMG's compliance or alleged non-compliance with, KPMG's stated auditing practices, policies or procedures, GAAS or any other auditing, accounting or professional standard.

37.    All documents, from June 1, 1998 through the present, concerning Communications between Deloitte & Touche and Fannie Mae concerning any engagement for professional services, including, but not limited to, Communications with the Audit Committee of Fannie Mae's Board of Directors or any individual members thereof. (MLPR No. 23).

38.    All documents concerning the employees, including but not limited to the quantity or quality of employees, in any department of Fannie Mae, including but not limited to its financial reporting, accounting, internal audit and controller departments. (MLPR No. 24).

39.    All documents, from June 1, 1998 through the present, concerning Communications between Deloitte & Touche and any Individual Defendants. (MLPR No. 25).

40.    All financial statements and restated financial statements of Fannie Mae, including but not limited to all drafts, accompanying footnotes, exhibits and auditor's reports or opinions. (MLPR No. 26).

41.    All documents, from June 1, 1998 through the present, concerning audit differences, disagreements or possible disagreements between Deloitte & Touche and Fannie Mae concerning Fannie Mae's accounting practices, policies, or procedures, internal controls, financial statements or results of the Restatement. (MLPR No. 27).

42. All documents concerning accounting differences, disagreements or disputes between or among Deloitte & Touche, KPMG, PricewaterhouseCoopers, Ernst & Young and/or any other accounting firm regarding Fannie Mae's accounting practices, policies, or procedures, internal controls, financial statements or results of the Restatement.

43. All documents concerning Deloitte & Touche's analysis or consideration of the reliability, trustworthiness or credibility of representations or statements by any officers, directors or employees of Fannie Mae. (MLPR No. 28).

44. All documents, from June 1, 1998 through the present, concerning Fannie Mae's efforts to meet or its projected failure to meet the expectations of Wall Street, analysts and investors for any of Fannie Mae's quarterly or year ending financial results. (LPR No. 29).

45. All documents concerning the possible or actual inaccuracy of Fannie Mae's financial statements, financial results or other public statements. (LPR No. 30).

46. All documents, from June 1, 1998 through the present, concerning the setting of or efforts to achieve Fannie Mae's earnings per share targets. (LPR No. 31).

47. All documents, from June 1, 1998 through the present, concerning earnings volatility, earnings smoothing, earnings management or earnings manipulation at Fannie Mae. (LPR No. 32).

48. All documents concerning any falsification of signatures by any Fannie Mae officer, director or employee. (LPR No. 33).

49. All documents and Communications, regardless of date, concerning Fannie Mae's development, implementation and application of SFAS 133, *Accounting for Derivative Instruments and Hedging Activities*, SFAS 138, *Accounting for Certain Derivative Instruments and Certain Hedging Activities*, and Amendment of Statement No. 133, and SFAS 149, Amendments of Statement 133 on Derivative Instruments and Hedging Activities including but not limited to exposure drafts, comment letters on the exposure drafts, draft and actual amendments to the standards and proposed or actual interpretations issued by the DIG or other authoritative accounting bodies. (MLPR No. 19).

50. All documents and Communications, regardless of date, concerning Fannie Mae's use of and accounting for derivative and hedge transactions, including, but not limited to documents concerning (i) perfect hedges, (ii) effective hedges, (iii) ineffective hedges, (iv) the Fannie Mae carve-out, (v) term-outs, (vi) relinkage, (vii) redesignations, (viii) swaptions, (ix) hedge documentations, (x) match terms accounting, (xi) derivatives having a fair value equal to zero at the inception of the hedge relationship, (xii) time value of options, (xiii) seven day test, (xiv) duration matching, and (xv) de-minimus test. (MLPR No. 20).

51.    All documents, regardless of date, concerning Fannie Mae's implementation and application of SFAS 91, *Accounting for Nonrefundable Fees and Costs Associated with Originating or Acquiring Loans and Initial Direct Costs of Leases.* (MLPR No. 34).

52.    All documents concerning Fannie Mae's: (i) amortization of purchase premiums and discounts on securities and loans; (ii) amortization of other deferred charges; (iii) accounting treatment of Real Estate Mortgage Investment Conduit securities; (iv) deferral of $200 million of estimated expense in 1998 related to fluctuations in the rate of prepayment of mortgages or other loans; (v) calculation known as "catch-up"; (vi) premium discount amortization audit differences; (vii) "on-top" and other discretionary adjustments to Fannie Mae's general ledger, accounting results or financial statements; (viii) deferred price adjustments and deferred price amortization; (ix) "cushion," "warchest," "piggybank," or "cookie jar" reserves; (x) capitalization and amortization of reconciliation differences a/k/a "realignments"; (xi) thresholds of recognizing, not recognizing or deferring amortization income or expense; (xii) modeling or the modeling of multiple sensitivity runs; and/or (xiii) amortization factor anomalies. (MLPR No. 35).

53.    All documents concerning Fannie Mae's development, implementation and application of SFAS 115, *Accounting for Certain Investments in Debt and Equity Securities*, including, but not limited to documents concerning the designation of mortgage-backed securities as either "held-to-maturity" or "available-for-sale." (LPR No. 36).

54.    All documents concerning Fannie Mae's development, implementation and application of SFAS 140, *Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities*, including, but not limited to documents concerning the designation of securities as "substantially similar" to securities sold under SFAS 140 and the subsequent monitoring of such securities, and the designation of transactions as either secured financing or sales and the monitoring of collateral in such transactions. (LPR No. 37).

55.    All documents concerning Fannie Mae's use of and accounting for dollar roll transactions. (LPR No. 38).

56.    All documents concerning Fannie Mae's development, implementation and application of SFAS 65, *Accounting for Certain Mortgage Banking Activities*, including, but not limited to documents concerning the designation of loans as either "held-for-investment" or "held-for-sale." (LPR No. 39).

57.    All documents concerning Fannie Mae's use of and accounting for the allowance for loan losses, including but not limited to Fannie Mae's development, implementation and application of SFAS 114, *Accounting by Creditors for Impairment of a Loan*, and SEC Staff Accounting Bulletin No. 102 ("SAB 102"), its loss allowance

11

model, charge-offs, waterfall accounting, recoveries in excess of principal balances written off, and overstatement of allowance for loan losses. (LPR No. 40).

58.    All documents concerning Fannie Mae's use of Special Purpose Entities to issue mortgage-backed securities. (LPR No. 41).

59.    All documents concerning Fannie Mae's practice, policies and procedures for recording interest expense on short-term debt instruments and interest income on liquid investments. (LPR No. 42).

60.    All documents concerning Fannie Mae's use of and accounting for interest income and expense based on a method other than in accordance with the actual terms of the underlying instruments. (MLPR No. 43).

61.    All documents concerning Fannie Mae's accounting for other-than-temporary impairment of manufactured housing bonds. (LPR No. 44).

62.    All documents concerning Fannie Mae's accounting for other-than-temporary impairment of aircraft asset-backed securities. (LPR No. 45).

63.    All documents concerning Fannie Mae's use of and accounting for investments in interest-only mortgage-backed securities. (LPR No. 46).

64.    All documents concerning Fannie Mae's use of and accounting for securitization of wholly-owned mortgage-backed securities. (LPR No. 47).

65.    All documents concerning Fannie Mae's use of and accounting for income tax reserves, legal reserves, and all other reserves used by Fannie Mae. (LPR No. 48).

66.    All documents concerning Fannie Mae's use of and accounting for Synfuel tax-advantaged transactions. (LPR No. 49).

67.    All documents concerning Fannie Mae's use of and accounting for short-term investment securities ("STIS") transactions. (MLPR No. 50).

68.    All documents concerning Fannie Mae's use of and accounting for insurance products. (LPR No. 51).

69.    All documents concerning Fannie Mae's development, implementation and application of SFAS 113, *Accounting and Reporting for Reinsurance of Short Duration and Long Duration Contracts*, including, but not limited to documents concerning transfer of risk sufficient to qualify for insurance for accounting purposes. (LPR No. 52).

70.    All documents concerning Fannie Mae's development, implementation and application of SFAS 5, *Accounting for Contingencies*, and SFAS 109, *Accounting for*

12

*Income Taxes*, including but not limited to documents concerning the recognition of liability for tax-related contingencies, the amount of taxes payable or refundable in the current year, and deferred tax liabilities and assets. (LPR No. 53).

71.    All documents concerning Fannie Mae's use of and accounting for out-of-portfolio securitization. (LPR No. 54).

72.    All documents concerning Fannie Mae's use of debt repurchases to affect its earning per share for any period. (MLPR No. 55).

73.    All documents concerning Fannie Mae's accounting for the amortization of callable debt expense, including, but not limited to treating callable debt and non-callable debt differently at the outset and end date amortization charges. (LPR No. 56).

74.    All documents concerning Fannie Mae's development, implementation and application of Accounting Principles Board Opinion No. 21, *Interest on Receivables and Payables* ("APB 21") including, but not limited to accounting for premium or discount associated with debt amortized over the life of that debt. (LPR No. 57).

75.    All documents concerning Fannie Mae's accounting for payments to Resource Bancshares Mortgage Group, Inc. including, but not limited to all documents concerning the compliance with SFAS 91 in relation to said payment. (LPR No. 58).

76.    All documents concerning Fannie Mae's accounting for realignments and the security master project including, but not limited to accounting for realignments as part of catch-up. (LPR No. 59).

77.    All documents concerning Fannie Mae's development, implementation and application of Accounting Principles Board Opinion No. 20 ("APB 20"), *Accounting Changes*, including, but not limited to documents concerning Fannie Mae treating accounting charges as other than a correction of an error. (LPR No. 60).

78.    All documents concerning Fannie Mae's use of and accounting for investments in affordable housing partnerships. (LPR No. 61).

79.    All documents concerning Fannie Mae's accounting for real estate-owned and foreclosed property.

80.    All documents concerning Fannie Mae's accounting for financial guaranties, including but not limited to the amortization of guaranty fee buy-downs, buy-ups and the valuation of guaranty assets and guaranty obligations.

81.    All documents concerning the quantification of the impact of each item restated in Fannie Mae's Restatement.

82.    All organization charts for any Deloitte & Touche office that performed services in connection with any engagement to provide professional services to Fannie Mae. (LPR No. 62).

83.    All Deloitte & Touche accounting and auditing policy and procedure manuals including, but not limited to accounting and auditing manuals, reports, directives, SEC Practice Manual and all other auditing guidance materials utilized and/or published by Deloitte & Touche, including, but not limited to any and all periodic updates thereto. (MLPR No. 63).

84.    All documents concerning Deloitte & Touche's filing and record keeping system including, but not limited to its policy regarding the preservation or destruction of documents. (MLPR No. 64).

85.    All documents concerning policies, procedures or guidelines related to Deloitte & Touche's computers, computer systems, electronic data and electronic media. (MLPR No. 65).

86.    Organization charts for all Deloitte & Touche information technology or information services departments or divisions. (MLPR No. 66).

87.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 115.

88.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 140.

89.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning use of and accounting for dollar roll transactions.

90.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 65.

91.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 114.

92.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of Special Purpose Entities to issue mortgage-backed securities.

93.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the recording of interest expense on short-term debt instruments and interest income on liquid investments.

94.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for interest income and expense based upon a method other than in accordance with the actual terms of the underlying instruments.

95.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning accounting for other-than-temporary impairment of manufactured housing bonds.

96.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning accounting for other-than-temporary impairment of aircraft asset-backed securities.

97.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for investments in interest-only mortgage-backed securities.

98.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for securitization of wholly-owned mortgage-backed securities.

99.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for income tax reserves, legal reserves, and all other reserves used by Fannie Mae.

100.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for Synfuel tax-advantaged transactions.

101.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for STIS transactions.

102.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for insurance products.

103.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 113.

104.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 5.

105.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 109.

106.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for out-of-portfolio securitization.

107.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of debt repurchases to affect earnings per share.

108.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for the amortization of callable debt expense, including, but not limited to treating callable debt and non-callable debt differently at the outset and end date amortization charges.

109.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning APB 21.

110.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for realignments.

111.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning APB 20.

112.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for investments in affordable housing partnerships.

113.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for real estate-owned and foreclosed property.

114.    All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for financial guaranties, including but not limited to the amortization of guaranty fee buy-downs, buy-ups and the valuation of guaranty assets and guaranty obligations.

115.    All documents concerning Deloitte & Touche's ability to be independent in the OFHEO investigation and as Fannie Mae's independent auditor, and all documents concerning any analyses regarding Deloitte & Touche's ability to participate in the OFHEO investigation and as Fannie Mae's independent auditor.

16

116.    All PricewaterhouseCoopers and/or Ernst & Young documents reviewed or relied on by Deloitte & Touche during the course of its work for Fannie Mae on the Restatement or in the course of its work during the OFHEO investigation.

117.    All documents concerning Deloitte & Touche's comments and/or analyses regarding revisions, either implemented or considered, to Fannie Mae's Derivatives Accounting Guidelines ("DAG").

118.    All documents concerning KPMG's work for Fannie Mae.

119.    All Communications between Deloitte & Touche, or anyone on its behalf, and any of the parties to this Litigation concerning the subject matter of the Litigation.

120.    All Communications between Deloitte & Touche, or anyone on its behalf, and PricewaterhouseCoopers or Ernst & Young concerning the subject matter of the Litigation.

121.    All Communications between Deloitte & Touche, or anyone on its behalf, and anyone concerning the subject matter of the Litigation.

122.    All subpoenas duces tecum received by Deloitte & Touche in the Litigation.

123.    All affidavits or opinion letters, including but not limited to drafts, Deloitte & Touche prepared or signed, or was asked to prepare or sign by Fannie Mae in connection with any professional accounting services provided as Fannie Mae's independent auditor, including any services provided in connection with Fannie Mae's Restatement.

124.    All documents concerning any opinions of or analyses by Deloitte & Touche concerning KPMG's work for Fannie Mae.

125.    All documents concerning any opinions of or analyses by PricewaterhouseCoopers, Huron and/or Ernst & Young concerning KPMG's work for Fannie Mae.

126.    All documents concerning any opinions of or analyses by PricewaterhouseCoopers, Huron and/or Ernst & Young concerning Fannie Mae's accounting practices, policies, procedures, internal controls, financial statements or the Restatement.

127.    All presentations by Deloitte & Touche to Fannie Mae's Board of Directors or Audit Committee.

128.    All documents concerning the evaluation and/or acceptance of Fannie Mae as a Deloitte & Touche client.

17

129.    All documents, including but not limited to manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche, regardless of date, concerning testing or calculating the effectiveness of a hedge pursuant to SFAS 133.

130.    All documents concerning Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.

131.    All documents concerning the matters discussed in the October 5, 2004 Report of Investigation SID-04-0034-1.

132.    All subpoenas duces tecum or other requests for production of documents Deloitte & Touche received from the Office of Inspector General, the Office of Investigation, the Special Investigation Division, the Department of Housing and Urban Development, or anyone else in connection with Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.

133.    All documents, regardless of date, Deloitte & Touche provided to the Office of Inspector General, the Office of Investigation, the Special Investigation Division, the Department of Housing and Urban Development, or anyone else in connection with Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.

134.    All documents sufficient to identify any person who has been interviewed by, deposed by or otherwise testified before the Office of Inspector General, the Office of Investigation, the Special Investigation Division, the Department of Housing and Urban Development, or anyone else in connection with Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.