## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Federal National Mortgage Association Securities Derivative and "ERISA" Litigation | MDL No. 1668 |
| IN RE FANNIE MAE SECURITIES LITIGATION | Consolidated Civil Action No. 1:04CV01639 (RJL)<br><br>Judge Richard J. Leon |
| FRANKLIN MANAGED TRUST *et al.*, *Plaintiffs,*<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*, *Defendants.* | No. 1:06CV00139 (RJL) |
| FANNIE MAE, *Plaintiff,*<br><br>v.<br><br>KPMG LLP, *Defendant.* | No. 1:06CV02111 (RJL) |

## KPMG LLP'S REPLY TO FANNIE MAE'S OPPOSITION TO KPMG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM FANNIE MAE

Two days after KPMG filed its Motion to Compel, Fannie Mae announced that it had decided to produce roughly 140,000 of the estimated 151,500 documents that are the subject of KPMG's Motion.[1]  Fannie Mae did not explain, however, why it had made its decision only *now*:

---

[1] Email from Fannie Mae to all Counsel (Feb. 8, 2008) (attached as Exhibit V).

(1) two years after Lead Plaintiffs requested the documents; (2) more than nine months after KPMG requested them; (3) nearly two months after this Court's deadline for production; and (4) after 41 depositions had already been taken.  Rather, Fannie Mae has repeatedly acknowledged that its decisions regarding when and whether to produce these documents have solely been a matter of its discretion.[2]

Fannie Mae still is withholding the remaining 11,500 documents that are the subject of KPMG's Motion (the "Withheld Documents").  In April 2007, Fannie Mae first offered to produce roughly 11,000 of the 11,500 Withheld Documents (along with the 140,000 documents it recently produced) in exchange for Lead Plaintiffs' agreement not to pursue the other 600.[3]  Now, nearly a year later, Fannie Mae refuses to produce *any* of the Withheld Documents, even though, by its own admission, it produced them all to OFHEO.  Fannie Mae argues that its production of the Withheld Documents to OFHEO was not a waiver of privilege because that production was "involuntary."  Fannie Mae also argues that consideration of the privilege issues with respect to those documents is *still* "premature."[4]

As set forth below, by producing the Withheld Documents to OFHEO, Fannie Mae has waived any claims to privilege over those documents and should not be permitted to delay its

---

[2] See Email from Fannie Mae to Lead Plaintiffs (Jan. 10, 2008) ("Fannie Mae has not reached a final decision regarding the privileged documents that were produced to the regulators pursuant to a non-waiver agreement.  We hope to have a decision from Fannie Mae within the next *fortnight*.") (emphasis added) (attached as Exhibit W); Letter from KPMG to Fannie Mae at 1-2 (Jan. 16, 2008) (expressing concern that "Fannie Mae has still not made a final decision as to whether it will produce them or not" and requesting that Fannie Mae "confirm whether [it] will produce or log these documents") (Ex. J to KPMG's Motion); Letter from Fannie Mae to Lead Plaintiffs at 1 (Jan. 30, 2008) (stating, "The issue for Fannie Mae has never been whether these documents were privileged.  Instead, the issue for Fannie Mae is whether it is willing to release these documents in the civil litigation . . . .") (Ex. L to KPMG's Motion); Letter from Fannie Mae to KPMG at 1 (Jan. 31, 2008) (Ex. M to KPMG's Motion).

[3] See Letter from Fannie Mae to Lead Plaintiffs (Apr. 6, 2007) (Ex. C to KPMG's Motion).

[4] See Fannie Mae's Opposition to Lead Plaintiffs' Motion to Compel Production of Documents by Fannie Mae and KPMG LLP's Motion to Compel Production of Documents by Fannie Mae ("Response") at 10.

production any longer.[5]  Moreover, even if Fannie Mae had not produced the Withheld

Documents to OFHEO, its recent production of 140,000 other "privileged" documents

constitutes a waiver of all Withheld Documents on the same subject matter as any of the

documents Fannie Mae produced.  To rule otherwise would be to authorize Fannie Mae's

practice of producing the privileged documents it wishes to disclose to the other parties, while

withholding the privileged documents it wishes to conceal.  ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

## I.    **Fannie Mae Waived Any Protections Over the Withheld Documents By Voluntarily Producing Them to OFHEO.**

In its Response, Fannie Mae argues that its production of the 11,500 Withheld

Documents to OFHEO was not a waiver of privilege because: (1) that production was

"involuntary;" and (2) the documents were produced pursuant to a non-waiver agreement.  Under

the law of this Circuit, both arguments fail.

### A.    **Fannie Mae's Production of the Withheld Documents to OFHEO Was Voluntary.**

#### 1.    **Fannie Mae's Production of the Withheld Documents to OFHEO Was Neither Judicially Compelled nor Outside the Control of Fannie Mae.**

A party's disclosure of a privileged document is deemed voluntary unless it was

judicially compelled or made "where a party had no real control over the disclosure or non-

---

[5] KPMG respectfully disagrees with Fannie Mae's assertion that it has "continuously acted in good faith to resolve the dispute . . . ." Response at 4 n.3.  As set forth in KPMG's Motion and this Reply, Fannie Mae has misused the attorney-client privilege and work product doctrine.

████████████████████████████████████████████

disclosure of documents." <u>SEC v. Lavin</u>, 111 F.3d 921, 930 (D.C. Cir. 1997); <u>see also</u> <u>Cobell v.</u>

<u>Norton</u>, 213 F.R.D. 69, 74 (D.D.C. 2003) ("[V]oluntary disclosure means the documents at issue

were not judicially compelled.") (quoting <u>Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.</u>,

103 F.R.D. 52, 63 n.2 (D.D.C. 1984)).  Moreover, even where a party's disclosure is not

"voluntary" under this standard, the party can preserve privilege only if it has pursued "all

reasonable means of preserving the confidentiality of the privileged matter." <u>Lavin</u>, 111 F.3d at

930 (quoting <u>United States v. de la Jara</u>, 973 F.2d 746, 749 (9th Cir. 1992)).[7]

The issuance of a subpoena does not render "involuntary" a production of privileged

documents.  In <u>In re Vitamin Antitrust Litig.</u>, a decision upon which Fannie Mae purports to rely,

this Court rejected a definition identical to the one Fannie Mae advances. 2002 U.S. Dist.

LEXIS 26490 at *103-06 (D.D.C. Jan. 23, 2002).[9]  The Court relied upon <u>Westinghouse Elec.</u>

---

[7] Although the D.C. Circuit considered in <u>Lavin</u> a waiver of privilege over marital communications, the Court noted the general applicability of its analysis to other circumstances where privilege has been waived. <u>See</u> 111 F.3d at 929.

[9] The two other cases upon which Fannie Mae principally relies are also easily distinguishable.  In <u>Lavin</u>, the D.C. Circuit refused to find a waiver of a married couple's marital privilege because the communications at issue were memorialized, apparently unbeknownst to the Lavins, on audio tapes that were, at all times, in the possession of a third party who had produced the tapes to the Federal Reserve in response to a request made pursuant to its examination powers. <u>See Lavin</u>, 111 F.3d at 924.  Upon learning of this disclosure, the Lavins immediately took reasonable measures to protect the confidentiality of the communications. <u>Id.</u> at 931-32.  In these circumstances, the Lavins "had no real control over the disclosure or non-disclosure" of the communications and therefore, the disclosure was involuntary. <u>Id.</u> at 930.  Here, unlike <u>Lavin</u>, Fannie Mae's privilege was embodied in documents that it possessed and it alone decided to disclose to OFHEO.

Another case cited by Fannie Mae, <u>Boston Auction Co. v. Western Farm Credit Bank</u>, 925 F. Supp. 1478 (D. Haw. 1996), in addition to being decided in a different Circuit, was dependent on a regulation in effect at the time that granted the examiner "federal authority to access *all of WFCB's records and files*." <u>Id.</u> at 1482 (emphasis added).  The Court held that because the examiner's "access cannot be refused, . . . compliance is not voluntary." <u>Id.</u>  OFHEO has no similar right to access, as evidenced by the correspondence attached to Fannie Mae's Response, which shows OFHEO's attempt to negotiate with Fannie Mae over the disclosure of its privileged documents.

Corp. v. Republic of the Philippines, a Third Circuit decision that considered whether a party's disclosure of privileged documents to the Department of Justice ("DOJ") was voluntary even though it was prompted by a grand jury subpoena. 951 F.2d 1414 (3d Cir. 1991). The court in Westinghouse stated: "Although Westinghouse originally moved to quash the subpoena, it later withdrew the motion and produced the documents pursuant to [a] confidentiality agreement. Had Westinghouse continued to object to the subpoena and produced the documents *only after being ordered to do so*, we would not consider its disclosure of those documents to be voluntary."[10] Id. at 1427 n.15 (emphasis added).

Accordingly, courts generally find that a party's production of privileged documents in response to a subpoena from a government agency is a voluntary disclosure resulting in a waiver. See, e.g., Vitamin, 2002 U.S. Dist. LEXIS 26490, at *105; Haines v. Liggett Group, Inc., Civ. A. No. 84-678, 2000 U.S. Dist. LEXIS 22491, at *17-29 (D.N.J. Sept. 12, 2000).

The subpoena here makes that point expressly. According to Fannie Mae, it produced documents in response to a subpoena from OFHEO, dated June 28, 2004 (the "Subpoena") (Ex. B to Response).[12] Yet, that Subpoena explicitly exempted privileged documents: "Disclosure of the information to the agency is mandatory, *subject to the valid assertion of any legal right or privilege you may have*."[13] The Subpoena also stated: "If you withhold from production any electronic mail message, in whole or in part, under a claim of privilege or for any reasons . . .

---

[10] Fannie Mae's voluntary disclosure here is underscored by its failure even to file a motion to quash or seek a protective order, unlike the disclosing party in Westinghouse.

[12] See Response at 2 & n.2.

[13] Subpoena at 4.

state the particular privilege(s) or reason(s) you assert for withholding each such electronic mail message and the basis for asserting such privilege or "reason."[14]



Fannie Mae does not state when, during this timeline, it produced the Withheld Documents. However, regardless of when Fannie Mae produced the Withheld Documents, it is plain that Fannie Mae did so not under judicial compulsion.



---

[14] Id. at 3.

[16] Id.

[19] Id. at 4.



Whatever strategic or tactical reasons Fannie Mae may have had to produce privileged

documents to OFHEO, those reasons do not make its production involuntary – just the

contrary. To rule otherwise would be to adopt a definition of voluntariness that

contradicts this Circuit's precedent. See In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir.

1989) ("Short of court-compelled disclosure, or other equally extraordinary

circumstances, we will not distinguish between various degrees of 'voluntariness' in

waivers of the attorney-client privilege.") (internal citation omitted).[21]

### 2.    There is Nothing Unique About Fannie Mae's Production to OFHEO That Justifies an Exception to the Law of Voluntary Disclosure.

In the face of precedent holding that voluntary production of privileged materials to

government agencies like the SEC and DOJ results in a waiver, Fannie Mae attempts to

distinguish OFHEO from such agencies. In support of its argument, Fannie Mae points to

OFHEO's statutory and regulatory power over Fannie Mae, including its "explicit statutory

authority to conduct examinations" under 12 U.S.C. § 4517, and to "issue subpoenas in

connection with such examinations" under 12 U.S.C. § 4641.[22]

---

[20] Ex. X at 4 (emphasis added).

[21] Notably, Fannie Mae apparently concedes that if the Court concludes Fannie Mae's disclosure of privileged documents to OFHEO was voluntary, then it has waived its privilege claims. See Response at 6 n.5 ("Hence, where Fannie Mae *voluntarily* released privileged documents to the DOJ, SEC and PCAOB, it has released those same documents to the Movants.") (emphasis added).

[22] Response at 7. OFHEO's subpoena also cites 12 U.S.C. § 4513, which provides the general duties and authorities of OFHEO to, among other things, conduct examinations of the enterprises and perform administrative and enforcement actions relating to safety and soundness.

Yet, for purposes of the waiver analysis, OFHEO's statutory authority is no different than the authority of the DOJ and the SEC. The DOJ has the authority to conduct investigations and subpoena witnesses and documents for the purpose of conducting its investigation. See, e.g., 18 U.S.C. § 3486 (criminal investigations); 15 U.S.C. §§ 1312 and 1314 (Antitrust); 18 U.S.C. § 1968 (RICO). To enforce the subpoena, the DOJ may invoke the aid of the applicable district court to enter an order enforcing the subpoena. See id. Likewise, the SEC has the authority to conduct investigations of violations and subpoena witnesses and documents for the purpose of any such investigation. 15 U.S.C. §§ 78u(a)(1), (b). The SEC "may invoke the aid of any court of the United States" to issue an order requiring such party to comply. 15 U.S.C. § 78u(c). The "failure to obey such order of the court may be punished by such court as contempt thereof." 15 U.S.C. § 78u(c).

Consequently, Fannie Mae's efforts to claim that the production to OFHEO is entirely different from production to the DOJ or production to the SEC cannot succeed. In Boston Auction, relied on by Fannie Mae, the District Court for the District of Hawaii found no waiver in a production from a bank to its bank examiner, the Farm Credit Administration ("FCA"). The Court based its decision on a regulation in effect at the time that provided that the FCA "shall have free access to all information, records and files" of the bank. 12 CFR § 602.215(a) (1995); Boston Auction, 925 F. Supp. at 1482. OFHEO has no comparable regulation.[23] Rather, like the DOJ and SEC, OFHEO's access to Fannie Mae's documents is constrained by its ability to issue a subpoena and to seek the aid of a court to enforce that subpoena if needed. Those subpoena powers do not override valid privileges, as the subpoena itself recognized. In short, there is no

---

[23] Indeed, if there were even a plausible legal basis for allowing OFHEO access to Fannie Mae documents without waiver of privilege, presumably OFHEO would have a strong interest in asserting that legal basis here, and Fannie Mae would have obtained OFHEO's assistance in advancing that interest. Yet, OFHEO has remained silent on the issues. That is not surprising given the language in OFHEO's Subpoena to Fannie Mae and their subsequent correspondence, discussed in more detail herein.

special relationship between OFHEO and Fannie Mae such that Fannie Mae's production to

OFHEO was somehow involuntary.

**B.     Fannie Mae's "Non-waiver Agreement" Does Not Salvage Its Privilege Claims.**

In the D.C. Circuit, a non-waiver agreement is never, on its own, sufficient to prevent the

waiver that results from a voluntary production of protected materials.  See In re Vitamin

Antitrust Litig., 2002 U.S. Dist. LEXIS 26490, at *118 n.60; Chubb Integrated Sys., Ltd. v. Nat'l

Bank of Wash., 103 F.R.D. 52, 67 (D.D.C. 1984).  Rather, a non-waiver agreement is effective,

if at all, only to the extent that it actually establishes a reasonable expectation of

confidentiality.[24]  See In re Subpoenas Duces Tecum; Fulbright & Jaworski, 738 F.2d 1367,

1370-73 (D.C. Cir. 1984).

---

[24] None of the cases cited by Fannie Mae in support of its argument on non-waiver agreements are on point. Permian Corp. v. United States, 665 F.2d 1214, 1216-17 (D.C. Cir. 1981) is factually dissimilar. As the D.C. Circuit noted in Fulbright, in Permian the documents at issue had "first been produced in private litigation in which both a stipulation between the parties and a judicial protective order stated that inadvertent production of a privileged document would not be a deemed waiver." Fulbright, 738 F.2d at 1374 n.12. Boston Auction, as noted above, involved a situation where the government agency had legal authority to access *all* of the disclosing party's "records and files." 925 F. Supp. at 1482. In In re Cardinal Health Sec. Litig., Civ. A. No. 2:04-cv-575, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007), the disclosures at issue were made in the context of parties sharing a "common interest." Id. at *1-2.  The portion of In re Leslie Fay Cos. Securities Litigation, 161 F.R.D. 274 (S.D.N.Y. 1995), upon which Fannie Mae relies is irrelevant to the instant matter as the disclosures at issue there were produced pursuant to a court *order* mandating that production of certain documents "'shall not be deemed to be a breach of any available attorney/client or work product privilege.'" Id. at 284.

In In re Steinhardt Partners, L.P., 9 F.3d 230 (2d Cir. 1993), there was no non-waiver agreement at issue. Rather, the Second Circuit held that when a party voluntarily disclosed privileged documents to the SEC, which was adverse, any privilege was waived. Id. at 234-36. The Second Circuit merely suggested, in dicta, that its case-specific analysis of privilege waiver may be different if the disclosing party shared a common interest with the Government or entered into an *explicit* agreement of confidentiality. Id. at 236.  And more recently, the Southern District of New York, interpreting Steinhardt, concluded: "Voluntary disclosure of attorney work product, regardless of the existence of a confidentiality agreement, will waive work product privilege absent special circumstances." In re Initial Pub. Offering Secs. Litig., No. 21 MC 92, 2008 U.S. Dist. LEXIS 11058, at *30-31 (S.D.N.Y. Feb. 14, 2008).

Finally, nothing in any of the three remaining cases suggests that the party relying upon a non-waiver agreement had engaged in conduct that undermined an expectation of confidentiality. See In re McKesson HBOC, Inc. Sec. Litig., No. C-99-20743, 2005 U.S. Dist. LEXIS 7098 (N.D. Cal. Mar. 31, 2005); Maruzen Co. v. HSBC USA, Inc., Nos. 00-cv-1079, 00-cv-1512, 2002 WL 1628782 (S.D.N.Y. July 23, 2002); Saito v. McKesson HBOC, Inc., Civ. A. No. 18553, 2002 WL 31657622 (Del. Ch. Nov. 13, 2002). In stark contrast here, because of the risk of waiver, Fannie Mae continued to withhold documents on the basis of privilege after the non-waiver agreement was executed and was still negotiating privilege claims with OFHEO more than *two years* later. See Ex. E to Response. In addition, other courts, in considering the same disclosures and factual background at issue in McKesson and Saito, found that McKesson's production of privileged documents to the SEC and U.S. Attorney's Office amounted

Here, the non-waiver agreement is deficient on its face. ██████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████ This

statement is hardly sufficient to prevent waiver. █████████████████

███████████████████████████████████████████████████

████████████████████████████████

Similarly, OFHEO's Subpoena to Fannie Mae stated that OFHEO would make the following "routine uses" of the documents that Fannie Mae produced, none of which is compatible with an expectation of confidentiality: "[d]isclose information to third parties during the course of an investigation or examination to the extent necessary to obtain information pertinent to the investigation or examination;" "[p]rovide information or records to any appropriate governmental entity or self-regulatory organization charged with the responsibility of investigating, monitoring, or overseeing the enterprise, or administering law or prosecuting violations of law;" "[d]isclose, when considered appropriate, information to a bar association or other trade or professional organization performing similar functions, for possible disciplinary action;" and "[d]isclose certain records, in the event of litigation or enforcement action, . . . to

---

to a waiver of privilege because the non-waiver agreements were conditional, like the one at issue here. See United States v. Bergonzi, 216 F.R.D. 487, 495-98 (N.D. Cal. 2003); McKesson HBOC, Inc. v. Superior Court, 9 Cal. Rptr. 3d 812, 819-20 (Cal. Ct. App. 2004); McKesson Corp. v. Green, 597 S.E.2d 447, 453-54 (Ga. Ct. App. 2004).

██████████████████████

[27] Subpoena at 4-5.

counsel or witnesses for the presentation of evidence in the course of discovery, to the extent permitted by law."[27]

Finally, Fannie Mae's correspondence with OFHEO removes any doubt about whether Fannie Mae had a reasonable expectation of confidentiality in the documents it produced to OFHEO. According to the correspondence in Fannie Mae's own exhibits, even after Fannie Mae entered into the Non-Waiver Agreement upon which it purports to rely, Fannie Mae continued to negotiate with OFHEO for more than two years regarding its production of privileged documents to OFHEO. At the conclusion of those negotiations, there were some documents that Fannie Mae would still not produce to OFHEO.[28] The simplest explanation for Fannie Mae's continued refusal to produce certain privileged documents, more than two years *after* it executed the non-waiver agreement, is that Fannie Mae did not expect OFHEO to keep confidential documents that Fannie Mae produced pursuant to that agreement. In short, the non-waiver agreement cannot salvage Fannie Mae's claims to privilege regarding the Withheld Documents.[29]

## II.    Fannie Mae Has Waived Any Protections With Respect to All Withheld Documents Relating to the Same Subject Matter as the Documents it Produced

Even if Fannie Mae had *not* produced the Withheld Documents to OFHEO and even if its "non-waiver" agreement could somehow salvage its privilege claims, Fannie Mae's production of 140,000 "privileged" documents to several government agencies and all parties in this litigation constitutes a waiver of any protections that might apply to all Withheld Documents of

---

[28] See generally Ex. C to KPMG's Motion; Letter from Fannie Mae to Lead Plaintiffs (Sept. 27, 2007) (attached as Exhibit Y).

[29] Fannie Mae's reliance on 12 C.F.R. 1703.11(b)(4) is also unavailing as nothing in this regulation requires OFHEO to maintain confidentiality over materials protected by the attorney-client privilege or the work product doctrine. This section deals with trade secrets and not attorney-client privilege or work product.

the same subject matter as the 140,000 documents over which Fannie Mae voluntarily waived

privilege.[30]

### A.    Fannie Mae's Strategic Use of the Attorney-Client Privilege Requires a Broad Subject Matter Waiver

Fannie Mae has produced 140,000 "privileged" documents to the DOJ, the SEC,

OFHEO, and now all parties to this litigation.  Under the law of this Circuit, this constitutes a

waiver of attorney-client privilege not only with respect to the documents themselves, but also as

to any of the 11,500 Withheld Documents that relate to the same subject matter as those

documents.  See In re Sealed Case, 877 F.2d at 980-81 ("[A] waiver of the privilege in an

attorney-client communication extends 'to all other communications relating to the same subject

matter.'") (quoting In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982); In re Sealed Case, 676

F.2d 793 at 818 (noting that implied waiver of attorney-client privilege is appropriate because

"[d]isclosure is inconsistent with confidentiality, and courts need not permit hide-and-seek

manipulation of confidences in order to foster candor"); Mergentime Corp. v. Wash. Metro. Area

Transp. Auth., 761 F. Supp. 1, 2 (D.D.C. 1991).

The scope of subject matter waiver of attorney-client privilege depends on the factual

circumstances in which the privilege is asserted.  See, e.g., In re Sealed Case, 877 F.2d at 981;

Mergentime, 761 F. Supp. at 2.  "'The scope of the waiver is governed by a rule of fairness.

Fairness dictates that a party may not use the attorney-client privilege as both a sword and a

shield.'"  Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001) (quoting

SNK Corp. v. Atlus Dream Entertainment, 188 F.R.D. 566, 571 (N.D. Cal. 1999)).  Thus, a party

"'may not selectively disclose privileged communications that it considers helpful while

---

[30] In fact, privileged documents that Fannie Mae has voluntarily produced may also relate to the same subject matter as *other* documents it continues to withhold.  KPMG reserves its right to compel production of these other documents.

claiming privilege on damaging communications relating to the same subject.'" Id.; see also In re Sealed Case, 676 F.2d at 818 (holding that an attempt to gain a tactical advantage through selective disclosure results in waiver of *all* documents relating to the same subject matter because "'the privilege of secret consultation is intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former'"); In re OM Sec. Litig., 226 F.R.D. 579, 593 (N.D. Ohio 2005) (holding that the fairness doctrine requires courts to examine "not only whether there is a tactical benefit, but whether it is fair to uphold the privilege considering the nature of the disclosure"). Generally, courts have found a narrow scope of waiver only in cases where the disclosure was inadvertent or the disclosure was so minimal that broad subject matter waiver would be unfair. See Mergentime, 761 F. Supp. at 2 (finding that inadvertent disclosure of notes did not justify broad waiver); Gen. Elec. Co. v. Johnson, Civ. A. No. 00-cv-2855, 2006 WL 2616187, at *19 (D.D.C. Sept. 12, 2006); Rowe Int'l Corp. v. Ecast, Inc., 241 F.R.D. 296, 301-02 (N.D. Ill. 2007) (holding that broad waiver was inappropriate given that disclosure amounted to no more than a single brief statement in a deposition in 1999).

Here, Fannie Mae's disclosures of the 140,000 documents were neither inadvertent nor minimal. Those documents constitute roughly 1.5 million pages, and Fannie Mae produced them to four government agencies and all parties to this litigation.

Moreover, the rule of fairness requires a broad subject matter waiver. Fannie Mae has repeatedly misused its privilege by seeking to gain tactical advantages in this litigation. First, for ten months, Fannie Mae has attempted to persuade Lead Plaintiffs and KPMG to accept a trade under which Fannie Mae would produce 150,000 "privileged" but unidentified documents, in

exchange for Lead Plaintiffs' and KPMG's agreement not to pursue 600 documents on the Miscellaneous Privilege Log. For example:

- "Pursuant to our prior discussions, if acceptable to you, we will produce to you the vast majority of privileged documents provided to the regulators in exchange for your agreement not to seek the documents listed on this log." [31]

- "Our offer to produce 99.96% of the privileged materials, or 150,000 documents, remains open. Otherwise we will be prepared to defend our privilege claims on all of these documents at the appropriate time."[32]

Second, Fannie Mae has already gained a major tactical advantage by using its assertions of "privilege" as a pretense for delaying production of the 140,000 documents until mid-February. Preliminary searches of those documents suggest that Fannie Mae's delay has substantially prejudiced the parties. Of the 41 witnesses who have already been deposed, the names of 39 appear in those documents. In fact, in the case of 12 such witnesses, their names appear on *more than 1,000 documents* that Fannie Mae only just recently produced.[33] In addition, other searches confirm the apparent relevance of these documents: the term "KPMG" appears on more than 16,900 of the documents; the term "FAS 133" appears on more than 11,000 documents; and the term "FAS 91" appears on more than 4,400. Therefore, Fannie Mae's unexplained "decision" to produce these documents in mid-February, years after it was able to do so, has forced the other parties to prepare for depositions without access to relevant documents.

Third, Fannie Mae has never identified 11,000 of the documents it continues to withhold. This has deprived the parties of the opportunity to determine whether any of the documents are relevant to depositions that have already been taken, as well as those that remain to be taken. As

---

[31] Ex. C to KPMG's Motion.

[32] Letter from Fannie Mae to Lead Plaintiffs (Oct. 19, 2007) (Ex. E to KPMG's Motion).

[33] See Affidavit of James Sherman (attached as Exhibit Z).

Fannie Mae states in its own Response: "[I]n the absence of . . . privilege logs, [KPMG and Lead Plaintiffs] cannot articulate specifically what need they might have to a particular document." See Response at 11.

Finally, worst of all, Fannie Mae has repeatedly acknowledged that its production of some privileged documents, as opposed to others, was purely a matter of its own discretion. For example, several weeks ago, in a letter to KPMG, Fannie Mae admitted:

> The issue for Fannie Mae has never been whether these [150,000] documents were privileged. . . Instead, the issue for Fannie Mae is whether it is willing to release these documents in the civil litigation, notwithstanding the privilege, in order to resolve or narrow this outstanding discovery dispute.[34]

In addition, in correspondence with OFHEO, Fannie Mae explained how it decided which documents to produce and which to withhold:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████[35]████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████
███████

---

[34] Ex. M to KPMG's Motion.
███████████████████

    **B.**    **Fannie Mae's Tactics Also Require a Subject Matter Waiver of Fannie Mae's Work Product Because Such a Waiver Would Promote the Adversarial System**

Although disclosure of attorney work product does not result in subject matter waiver in every case, this Court has held that subject matter waiver results where such waiver would be consistent with the underlying purposes of the work product doctrine – promoting the adversarial system. See Bowles v. Nat'l Ass'n of Home Builders, 224 F.R.D. 246, 258 (D.D.C. 2004); In re United Mine Workers of Am. Employee Benefit Plans Litig., 159 F.R.D. 307, 312 (D.D.C. 1994) (holding that "subject-matter waiver of the attorney work product privilege should only be found when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed"). The purpose of the subject matter waiver rule is to prevent a party from selectively disclosing documents to gain a tactical advantage against its adversary. Bowles, 224 F.R.D. at 257-58; see also In re Sealed Case, 676 F.2d at 818 (finding subject matter waiver for work product and noting that subject matter waiver of work product is appropriate when a party's discovery tactics "degenerate into 'sharp practices' inimical to a healthy adversary system"). The work product doctrine also does not permit a party to pick and choose the opponents to which it will disclose work product. See Fulbright, 738 F.2d at 1375 ("[T]he privilege does not protect against the manipulation of selecting a particular opponent for selective disclosure – most probably for the discloser's own benefit.")

This Court applied these standards in Bowles, and concluded that subject matter waiver is consistent with the work product doctrine so long as the documents at issue pertain to the underlying events that are "the topic of the present litigation, not to either party's litigation strategies or trial preparations for the present litigation." Bowles, 224 F.R.D. at 258-59 (finding subject matter waiver over work product relating to negotiations for license agreement, which

was the subject of the litigation).  The Court held that subject matter waiver does not frustrate the

purpose of the work product doctrine where it does not threaten to "reveal the 'fruits of an

attorney's trial preparations' in active litigation." Id. at 259 (quoting United Mine Workers, 159

F.R.D. at 312).  To the contrary, subject matter waiver in such a case "promote[s] the adversary

system by ensuring that the evidence in the record will not reflect only one side or a part of

privileged communications." Id.

 Here, as discussed above, Fannie Mae has repeatedly engaged in "sharp practices" that

are plainly not consistent with the purpose of work product protection, and are anathema to a

healthy adversarial system.  ████████████████████████

█████████████████████████████████████████

███████████  This is a classic case of subject matter waiver.  Under Bowles, that

waiver may not extend to litigation strategy and specific trial preparation materials, but it does

cover documents that relate to the topic of this litigation.  It appears that most if not all of the

Withheld Documents were generated years ago, and were produced to OFHEO well before this

litigation even commenced.  Fannie Mae has waived its claims of work product protection as to

all Withheld Documents that relate to the same subject matter as the work product documents it

has already produced.

## CONCLUSION

 WHEREFORE, KPMG respectfully requests that the Court grant the Motion to Compel.

Fannie Mae has waived any claims of privilege it may have had to the Withheld Documents.  In

addition, by selectively disclosing more than 140,000 privileged documents while attempting to

───────────────────────

████████████

17

withhold others, Fannie Mae has waived its protections with respect to all Withheld Documents

on the same subject matter as the privileged documents it has disclosed.


Date:  February 29, 2008                         Respectfully submitted,


                                                 /s/Charles Wm. McIntyre
                                                 Charles Wm. McIntyre (DC Bar No. 489302)
                                                 cmcintyre@mcguirewoods.com
                                                 C. Simon Davidson (DC Bar No. 490422)
                                                 cdavidson@mcguirewoods.com
                                                 Darren W. Stanhouse (DC Bar No. 494623)
                                                 dstanhouse@mcguirewoods.com
                                                 McGUIREWOODS LLP
                                                 Washington Square
                                                 1050 Connecticut Avenue, N.W.
                                                 Suite 1200
                                                 Washington, DC  20036-5317
                                                 202.857.1700 (phone)
                                                 202.857.1737 (fax)
                                                 *Counsel for KPMG LLP*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of KPMG LLP's Reply to Fannie Mae's Opposition to KPMG's Motion to Compel Production of Documents from Fannie Mae to be transmitted on February 29, 2008 by electronic mail to the following counsel:

James R. Cummins
Melanie S. Corwin
Jean Marie Geoppinger
Waite, Schneider, Bayless & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
*Counsel for Lead Plaintiffs*

Joshua S. Devore
Steven J. Toll
Matthew K. Handley
Daniel S. Sommers
Cohen, Milstein, Hausfeld & Toll P.L.L.C
West Tower, Suite 500
1100 New York Ave., N.W.
Washington, D.C. 20005
*Counsel for Plaintiffs Vincent Vinci; State Teachers Retirement System of Ohio; Anne E. Flynn; Robert L. Garber*

Alan J. Statman
Jeffery P. Harris
Statman, Harris & Eyrich LLC
3700 Carew Tower
441 Vine Street
Cincinnati, OH 45202
*Counsel for Lead Plaintiffs*

Frank J. Johnson
Brett M. Weaver
Law Office of Frank J. Johnson
402 W. Broadway 27th Floor
San Diego, CA 92101
*Counsel for Plaintiff Sassan Shahrokhinia*

Robert W. Liles
Liles Parker, PLLC
4400 MacArthur Blvd., N.W.
Suite 203
Washington, DC 20007
*Counsel for Plaintiff Sassan Shahrokhinia*

Stuart M. Grant
Megan D. McIntyre
Christine M. Mackintosh
Jeff A. Almeida
Grant & Eisenhofer, P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for the Franklin Templeton Plaintiffs*

Jeffrey W. Kilduff
Michael J. Walsh, Jr.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Fannie Mae, Thomas P.*
*Gerrity, Taylor C. Segue, III, William R.*
*Harvey, Joe Pickett, Kenneth M. Duberstein,*
*Manuel Justiz, H. Patrick Swygert, and Leslie*
*Rahl*

Kevin M. Downey
Alex G. Romain
Joseph M. Terry, Jr.
John E. Clabby
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5091
*Counsel for Defendant Franklin D. Raines*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W., Suite 12
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

Cristen Sikes Rose
Edward S. Scheideman III
John J. Clarke, Jr.
DLA Piper US LLP
1200 19th Street, N.W.
Washington, D.C. 20036
*Counsel for Defendants Stephen B. Ashley,*
*Donald B. Marron, and Ann Korologos*

John H. Doyle, III
Rhonda D. Orin
Anderson Kill & Olick LLP
2100 M Street, N.W. Suite 650
Washington, D.C. 20037
*Counsel for Defendant Leslie Rahl*

Steven M. Salky
Eric R. Delinsky
Ellen D. Marcus
Caroline E. Reid
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-2638
*Counsel for Defendant Timothy J. Howard*

David S. Krakoff
Christopher F. Regan
Adam B. Miller
Heather H. Martin
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
*Counsel for Defendant Leanne G. Spencer*

David I. Ackerman
James Hamilton
Bingham McCutchen, LLP
2020 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Joe Pickett*

William H. Jeffress
Julia E. Guttman
Nicholas A. Brady
Baker Botts LLP
The Warner; 1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

Ian H. Gershengorn
Jerome L. Epstein
Jenner & Block
601 13th Street, NW
Suite 1200S
Washington, DC 20005

Barbara Van Gelder
Morgan, Lewis & Bockius LLP
111 Pennsylvania Ave., NW
Washington, DC 20004
*Counsel for Defendants Anne M. Mulcahy and*
*Frederic v. Malek*

William K. Dodds
Neil A. Steiner
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Defendant Thomas P. Gerrity*

Seth Aronson
O'Melveny & Myers, LLP
400 South Hope Street
15th Floor
Los Angeles, Ca. 90071
*Counsel for Defendant Fannie Mae, Thomas P.*
*Gerrity, Taylor C. Segue, III, William R.*
*Harvey, Joe Pickett, Kenneth M. Duberstein,*
*Manuel Justiz, H. Patrick Swygert, and Leslie*
*Rahl*

Shannon Ratliff
Ratliff Law Firm
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

　　/s/ Darren W. Stanhouse　　
Darren W. Stanhouse

3